IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CNX MIDSTREAM DEVCO I LP,<br><br>            Plaintiff,<br><br>   v.<br><br>APPLIED CONSTRUCTION SOLUTIONS, INC.,<br><br>            Defendant. | CIVIL DIVISION<br><br>Docket No.: 2:20-CV-00290-AJS |

## **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

AND NOW, comes Plaintiff, CNX Midstream Devco I LP ("CNX"), by its attorneys Dickie, McCamey & Chilcote, P.C. and pursuant to L.C.v.R. 56(B)(2), files Plaintiff's Memorandum in Support of Motion for Partial Summary Judgment and in support thereof sets forth as follows:

### **I.**    **BACKGROUND**

Plaintiff, CNX, initiated this case by Complaint in the Court of Common Pleas of Allegheny County at GD20-001528 on January 29, 2020. (ECF #1-3 and Complaint). This action was removed to the United States District Court for the Western District of Pennsylvania on Motion of Defendant on February 26, 2020. (ECF #1-3). Defendant, Applied Construction Solutions, Inc. ("ACS") filed an Answer, Defenses and Counterclaim in this matter on March 4, 2020. (ECF #9).

CNX is in the business of, among other things, owning and operating natural gas compressor stations. (Complaint at ¶2, ECF #9 at ¶2). A portion of ACS's business is the construction of natural gas compressor stations. (ECF #9 at ¶4).

In October, 2018, CNX solicited bids for the construction of CNX's Morris Natural Gas Compressor Station ("Project"). (Complaint at ¶5, ECF #9 at ¶5). In November, 2018, ACS submitted its bid for the Project. (Complaint at ¶6, ECF #9 at ¶6). ACS was selected to construct the Project by CNX. (Complaint at ¶7, ECF #9 at ¶7).

On December 5, 2018, CNX, as owner, issued a purchase order No. 4700577626 ("Purchase Order") for the construction of the Project to ACS, as contractor. (Shumaker Affidavit at ¶3, Exhibit 1). The Purchase Order was issued electronically on December 5, 2018 at 9:56 p.m. by CNX to ACS through CNX's electronic purchasing system named HUBWOO. (Shumaker Affidavit at ¶3, Exhibits 1 and 2). ACS accepted the Purchase Order via HUBWOO's purchase order response on December 21, 2018 at 3:30 p.m. (Shumaker Affidavit at ¶4, Exhibit 3).

Pursuant to Article 2, the Purchase Order incorporated by reference several documents ("Contract Documents"), including "CNX Morris RFP Questions – November 5, 2018." (Shumaker Affidavit at ¶5, Exhibit 4). The CNX Morris Expansion RFP Questions dated November 5, 2018 that are part of the Contract Documents provide in relevant part as follows:

> [Question] Can you please clarify if this contract will be a T&M or a lump sum contract?
> [Answer] T&M.
> [Question] If it is T&M, is this T&M not to exceed amount based upon your submitted lump sum Budget?
> [Answer] Yes.

(Shumaker Affidavit at ¶6, Exhibit 4).

A T&M contract with an amount not to exceed a lump sum budget ("T&M NTE"), is a contract, wherein the contractor is paid based upon the amount of labor (time) and

materials provided by the contractor limited by a lump sum budget not to exceed. (Shumaker Affidavit at ¶8).

The T&M NTE obligates the Contractor to perform the scope-of-work as defined in the contract documents as of the date of the contract including the plans and specifications for an amount within the NTE lump sum budget. (Shumaker Affidavit at ¶9). If the scope-of-work for the contract changes after the date of the contract increasing the amount of time and materials required to perform the work, the contractor is entitled to a change order that increases the NTE lump sum budget by a like amount. (Shumaker Affidavit at ¶10). In a T&M contract with no not-to-exceed lump sum budget, the Contractor is entitled to be paid for the reasonable cost of all time and materials expended in constructing the Project. (Shumaker Affidavit at ¶11). In a T&M contract with no not-to-exceed lump sum budget, change orders are unnecessary, since the Contractor is entitled to be paid its reasonable costs of time and materials irrespective of any change to the contract scope-of-work. (Shumaker Affidavit at ¶12).

Pursuant to Article 4 of the Purchase Order, the lump sum budget for the Project was $12,418,545. (Shumaker Affidavit at ¶13, Exhibit 1).

Article 10 of the Purchase Order provided as follows:

> Article 10 – Changes in the Work: Company [CNX], without invalidating the construction agreement, may order extra work or make changes by altering, adding to or deducting from the work, such changes shall be executed under the conditions of the original Contract Documents except for any claim for extension of time caused thereby shall be adjusted at the time of ordering such change. Prior to the performance of any extra work by Contractor, Company will determine which of the methods of payment defined in the Contract Documents will be applicable. Extra work is any work performed which is beyond the scope-of-work defined in these Contract Documents. Except in any emergency endangering life or property, no extra work or change shall be made unless pursuant to Company's written purchase or

> change order, and no claim for an addition to the Contract Sum shall be valid unless so ordered.

(Shumaker Affidavit at ¶14, Exhibit 1).

During the course of ACS's work on the Project, it submitted Requests for Change Orders based upon ACS's assertion that the actual scope-of-work for the Project was more extensive than the original scope-of-work contained in the Purchase Order. (Dunn Affidavit at ¶3, Exhibit 5). ACS acknowledged its understanding of the requirement for change orders to increase the T&M NTE amount as the result of an increase to its scope-of-work under the Purchase Order as early as January 29, 2020. (Dunn Affidavit at ¶4, Exhibit 9). ACS submitted these Requests for Change Orders prior to performing the additional work as required by the Purchase Order. (Dunn Affidavit at ¶5).

CNX agreed that certain of the Requests for Change Order submitted by ACS related to work that was outside of the scope-of-work of the Purchase Order for items relating to design changes and specifically requested additional work. (Dunn Affidavit at ¶6, Exhibit 5). CNX signed off on these Requests for Change Order. (Dunn Affidavit at ¶6, Exhibit 5). CNX agreed that these Requests for Change Order would be billed by ACS on a T&M basis. (Dunn Affidavit at ¶6, Exhibit 5). ACS and CNX kept track of these Requests for Change Order on a "not-in-contract" log. (Dunn Affidavit at ¶6, Exhibit 5). Ultimately, CNX and ACS agreed that ACS performed work that was beyond the original scope-of-work of the Purchase Order. In fact, CNX issued Change Orders Nos. 1 and 2 to the Purchase Order. (Dunn Affidavit at ¶7, Exhibits 6 and 7).

It is Plaintiff's position that the Purchase Order provides that ACS is to be paid for its work on the Project on a T&M NTE basis with a cost not to exceed of $12,418,545 as

4

adjusted by any change orders agreed to by the parties. It is believed that it is Defendant's position that the Purchase Order provides that ACS is to be paid for all of its work on the Project on a T&M basis with no limitation. Based upon the undisputed plain language of the Purchase Order, Plaintiff requests this Court to grant CNX's Motion for Partial Summary Judgment and to find that the Purchases Order between the parties is a T&M NTE Contract with a cost not to exceed of $12,418,545 as adjusted by any change orders agreed to by the parties.

## II. STATEMENT OF FACTS

Plaintiff's Concise Statement of Material Facts is hereby incorporated by reference.

## III. ISSUE

Whether CNX is entitled to partial summary judgment that finds that the Purchase Order between the parties is a T&M Contract with a price not to exceed of $12,418,545.

Suggested answer in the affirmative.

## IV. ARGUMENT

### A. Standard of Review.

Federal Rules of Civil Procedure 56 provides that summary judgment may be granted when materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Serbin v Bora Corp.*, 96 F.3d 66, 69 n.2 (3rd Cir. 1996). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder-of-fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the moving party has carried its burden of establishing the

presence of a genuine issue of material fact, a party who opposes a properly supported summary judgment motion may not merely rely on the pleadings, but must set forth specific facts, through affidavits, depositions, answers to interrogatories, or admissions that show there is a genuine issue for the trier-of-fact to resolve. See Fed. R.Civ.P. 56E; see also *Quiroga v Hasbro, Inc.*, 934 F.2d 497, 500 (3rd Cir. 1991). Thus, if the non-moving party's evidence is "not significantly probative," summary judgment is proper. *Anderson,* 477 U.S. at 249-250.

### B. **Plaintiff is Entitled to Partial Summary Judgment Based Upon the Plain and Unambiguous Language of the Purchase Order.**

In this case, it is Plaintiff's position that the contract between the parties provides that Defendant was to perform the scope-of-work contained in the Purchase Order on a time and material basis with a lump sum budget not to exceed. Phrased differently, it is Plaintiff's position that Defendant would be paid for all time and materials expended by Defendant in performing the scope-of-work with a "ceiling" of a specific cost not to exceed. Conversely, it is Defendant's position that the Purchase Order provides that Defendant will be paid for all of the time and materials that it expends in performing its work on the Project with no limit. As will be demonstrated below, based upon the clear and unambiguous language of the Purchase Order, the Contract between the parties is for a T&M with a cost not to exceed contract.

A basic principle of contract construction is that the court must interpret and enforce unambiguous agreements according to their terms. *Shaver v Siemens Corp.*, 670 F.3d 462 (3rd Cir. 2012). Under Pennsylvania law, clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract. In re: *Shenango Group, Inc.*, 501 F.3d 338 (3rd Cir. 2007). The court must

construe the contract only as written and may not modify the plain meaning of the words under the guise of interpretation. *Gress v. Freedom Mortgage Corporation*, 386 F.Supp 3d 455 (M.D. Pa. 2019). Further, under Pennsylvania law, the meaning of clear and unambiguously written contracts and intent of contracting parties must be determined from the four corners of the contract. *Glenn Distributors Corp. v. Carlisle Plastics, Inc.*, 297 F.2d 294 (3rd Cir. 2002).

The interpretation of the Purchase Order is for the Court to determine. The interpretation of a contract is a question of law and is left to the determination of the court. *Grkman v. 890 West Weatherwood Lane Operating Company, LLC*, 189 F.Supp 3d 513 (WD Pa. 2016).

In the instant matter, the Purchase Order very specifically addresses the issue at hand. In this regard, during the bidding process for the Project, several prospective bidders submitted questions for clarification. In response, CNX published answers to these questions to all of the bidders including Defendant. CNX also caused these questions and answers to be incorporated into the Purchase Order. The question and answer process is a very common bidding practices that insures that all bidders have access to the information elicited by the questions so that all bidders are operating on a level playing field. (Shumaker Affidavit ¶7). Specifically, the CNX Morris expansion RFP questions dated November 5, 2018 that are part of the Contract Documents provide in relevant part as follows:

> [Question] Can you please clarify if this contract will be a T&M or a lump sum contract?
> [Answer] T&M.
> [Question] If it is T&M, is this T&M not to exceed amount based upon your submitted lump sum Budget?

7

[Answer] Yes.

A T&M contract with an amount not to exceed is a contract, wherein the contractor is paid based upon the amount of labor (time) and materials provided by the contractor limited by a specified amount not to exceed. (Shumaker Affidavit ¶8).

The T&M NTE obligates the Contractor to perform the scope-of-work as defined in the contract documents as of the date of the contract including the plans and specifications for an amount within the NTE lump sum budget. (Shumaker Affidavit ¶9).

If the scope-of-work for the contract changes after the date of the contract increasing the amount of time and materials required to perform the work, the contractor is entitled to a change order that increases the NTE lump sum budget by a like amount. (Shumaker Affidavit ¶10).

In a T&M contract with no not-to-exceed lump sum budget, the Contractor is entitled to be paid for the reasonable cost of all time and materials expended in constructing the Project. (Shumaker Affidavit ¶11).

In a T&M contract with no not-to-exceed lump sum budget, change orders are unnecessary, since the Contractor is entitled to be paid its reasonable costs of time and materials irrespective of any change to the contract scope-of-work. (Shumaker Affidavit ¶12).

Pursuant to Article 4 of the Purchase Order, the lump sum budget for the Project was $12,418,454. (Shumaker Affidavit ¶9, Exhibit 1). Pursuant to the Purchase Order and the Contract Documents that comprised the Purchase Order, ACS agreed to perform the scope-of-work for the Project on a T&M NTE basis with a cost not to exceed the lump sum budget of $12,418,454. (Shumaker Affidavit ¶14, Exhibits 1 and 4).

In order for the Court to accept Defendant's position, the Court will be required to ignore not only the plain language of the Purchase Order but other key provisions of the Contract as well. Pursuant to applicable Pennsylvania law, courts should not interpret a contract in a manner that annuls a separate provision of the contract. Rather, the court is to construe the contract as a whole, given effect to all of the provisions as written. *Equitrans Services, LLC v. Precision Pipeline, LLC*, 154 F.Supp 3d 189 (WD Pa. 2015).

In this regard, Article 10 of the Purchase Order provided as follows:

> Article 10 – Changes in the Work: Company [CNX], without invalidating the construction agreement, may order extra work or make changes by altering, adding to or deducting from the work, such changes shall be executed under the conditions of the original Contract Documents except for any claim for extension of time caused thereby shall be adjusted at the time of ordering such change. Prior to the performance of any extra work by Contractor, Company will determine which of the methods of payment defined in the Contract Documents will be applicable. Extra work is any work performed which is beyond the scope-of-work defined in these Contract Documents. Except in any emergency endangering life or property, no extra work or change shall be made unless pursuant to Company's written purchase or change order, and no claim for an addition to the Contract Sum shall be valid unless so ordered.

(Shumaker Affidavit at ¶15, Exhibit 1).

If, as Defendant argues, the Purchase Order is an open-ended T&M contract, the provision for change orders set forth above is completely unnecessary. This is so, since if Defendant is entitled to be paid for all of its time and material for all of the work that it did on the Project irrespective of whether the scope-of-work increased following the initial Purchase Order, the change order provision of Article 10 is completely superfluous.

Of similar note, Article 4 of the Purchase Order sets forth a lump sum budget for the Project of $12,418,545. Again, Defendant argues that it is entitled to payment of all of its

9

time and materials with no limit.  Such interpretation would make the provisions contained in Article 4 of the Purchase Order relating to a lump sum budget completely meaningless.

In addition to the above, in order for the Court to accept Defendant's position that this contract was based on the payment for time and materials with no limit, the Court would also have to ignore the parties' actual performance under the Purchase Order.

During the course of ACS's work on the Project, it submitted Requests for Change Orders based upon ACS's assertion that the actual scope-of-work for the Project was more extensive than the scope-of-work contained in the Purchase Order.  (Dunn Affidavit ¶3, Exhibit 5). ACS acknowledged its understanding of the requirement for change orders to increase the T&M NTE amount as the result of an increase to its scope-of-work under the Purchase Order as early as January 29, 2019. (Dunn Affidavit ¶4, Exhibit 9).  ACS submitted these Requests for Change Order prior to performance of its work as required by the Purchase Order.  (Dunn Affidavit ¶5).  CNX agreed that certain of the Change Order Requests submitted by ACS related to work that was outside the scope-of-work of the Purchase Order.  CNX signed off on these Change Order Requests.  CNX agreed that these Change Order Requests would be billed by ACS on a T&M basis.  ACS and CNX kept track of these Change Order Requests on a "Not-in-Contract" log.  (Dunn Affidavit ¶6, Exhibit 5). Ultimately, CNX and ACS agreed that ACS performed work that was beyond the scope-of-work of the Purchase Order.  In this regard, CNX issued Change Orders No. 1 and 2 to the Purchase Order.  (Dunn Affidavit ¶7, Exhibits 6 and 7).

If, as ACS argues, the Purchase Order was simply a T&M Contract with no limit, wherein it would be paid for all of the labor and materials supplied for the Project, the entire concept of change orders for the Purchase Order is completely superfluous.

In addition to the above, not only did ACS request and ultimately receive change orders for out-of-scope work that increased the cost not to exceed contained in the Purchase Order, the payment applications submitted by ACS on the Project acknowledged 1) the level of time and materials expended on the Project and 2) the cost not to exceed as adjusted by change orders issued on the Project. (Shumaker Affidavit ¶16, Exhibit 8). Again, the manner in which ACS submitted for and received change orders, as well as its acknowledgment of the existence of a lump sum budget not to exceed in its pay application as adjusted by change orders is consistent with the unambiguous provisions contained in the Purchase Order that it was indeed a time and materials contract with a cost not to exceed.

**V.     CONCLUSION**

Based upon the above, Plaintiff respectfully requests this Court to grant its Motion for Partial Summary Judgment and find that the Purchase Order is a time and materials contract with a cost not to exceed.

Respectfully submitted.

DICKIE, McCAMEY & CHILCOTE, P.C.

By: */s/William D. Clifford*
William D. Clifford, Esquire
PA I.D. #34959

Gregory C. Michaels, Esquire
PA I.D. #205948

Two PPG Place, Suite 400
Pittsburgh, PA  15222
(412) 392-5411

Attorneys for Plaintiff,
CNX Midstream DEVCO I, LP

# CERTIFICATE OF SERVICE

I, William D. Clifford, Esquire, hereby certify that a true and accurate copy of the foregoing ***Plaintiff's Memorandum in Support of Motion for Partial Summary Judgment*** has been served this 18th day of February, 2021, via electronic mail by the Court's CM/ECF System.

    Christopher A. Brumley, Esquire
    Evans S. Aldridge, Esquire
    Flaherty Sensabaugh Bonasso PLLC
    200 Capital Street, P.O. Box 3843
    Charleston, WV  25338

                  DICKIE, McCAMEY & CHILCOTE, P.C.

                  By */s/ William D. Clifford*
                      William D. Clifford, Esquire
                      PA I.D. #34959
                      Gregory C. Michaels, Esquire
                      PA I.D. #205948

                  Attorneys for Plaintiff
                  CNX Midstream DEVCO I, LP

11097100.1