IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF
PENNSYLVANIA

| | | |
|---|---|---|
| CNX MIDSTREAM DEVCO I LP, | : | CIVIL DIVISION |
| Plaintiff, | : | |
| | : | Docket No.: 2:20-CV-00290-AJS |
| v. | : | |
| APPLIED CONSTRUCTION SOLUTIONS, INC., | : | |
| Defendant. | : | |

## SUPPLEMENTAL APPENDIX TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

AND NOW, comes Plaintiff, CNX Midstream Devco I LP ("CNX"), by its attorneys

Dickie, McCamey & Chilcote, P.C. and pursuant to L.C.v.R. 56.1, files this Supplemental

Appendix in Support of Plaintiff's Motion for Partial Summary Judgment:

1. Supplemental Affidavit of Todd Shumaker.
2. Declaration of William D. Clifford.
3. Defendant, Applied Construction Solutions, Inc.'s Response to Plaintiff's
   Interrogatories and Requests for Production of Documents Directed to
   Defendant, Applied Construction Solutions, Inc.

Respectfully submitted.

DICKIE, McCAMEY & CHILCOTE, P.C.

By: _/s/William D. Clifford_____
William D. Clifford, Esquire
PA I.D. #34959
Gregory C. Michaels, Esquire
PA I.D. #205948

Two PPG Place, Suite 400
Pittsburgh, PA 15222
(412) 392-5411

Attorneys for Plaintiff,
CNX Midstream DEVCO I, LP

# SUPPLEMENTAL AFFIDAVIT OF TODD SHUMAKER

COMMONWEALTH OF PENNSYLVANIA      :
                                  :     SS:
COUNTY OF WASHINGTON              :

## SUPPLEMENTAL AFFIDAVIT OF TODD SHUMAKER

I, Todd Shumaker, being duly sworn, deposes and says:

1.      At all times relevant hereto, I was Vice-President-Contract Services for CNX Midstream DEVCO I, LP ("CNX") and I am authorized to make this Affidavit on behalf of CNX.

2.      In my original Affidavit at Paragraph 6, I indicated that CNX Morris RFP Questions that are part of the contract documents provide in relevant part as follows:

| [Question] | Can you please clarify if this contract will be a T&M or a lump sum contract? |
| [Answer] | T&M. |
| [Question] | If it is T&M, is this T&M not to exceed amount based upon your submitted lump sum Budget? |
| [Answer] | Yes. |

3.      Attached to my original Affidavit as Exhibit 4 is a three-page document that I described as "CNX Morris RFP Questions – November 5, 2018" that contains the questions and answers referenced in Paragraph 2 above.

4.      Actually, the first page of Exhibit 4 is the document that was issued on November 5, 2018 and uploaded to the bid documents for the Project on CNX's electronic bidding system CNX ShareFile under the following shared RFP folder 0660-180925-CNXM Morris Station Exp RFP.

5.    The second two pages of Exhibit 4 were issued on October 24, 2018 and uploaded that same day to the bid documents for the Project on the CNX ShareFile under the following shared RFP folder 0660-180925-CNXM Morris Station Exp RFP.

6.    For purposes of clarity, attached as Exhibit 10 is the two-page document that was issued by CNX to the bid documents for the Project and uploaded onto the CNX ShareFile under the following shared RFP folder 0660-180925-CNXM Morris Station Exp RFP on October 24, 2018.

7.    It is this document, Exhibit 10, that was issued by CNX and uploaded on onto the CNX ShareFile under the following shared RFP folder 0660-180925-CNXM Morris Station Exp RFP October 24, 2018 that contains the following RFP Questions and Answers:

| [Question] | Can you please clarify if this contract will be a T&M or a lump sum contract? |
| [Answer] | T&M. |
| [Question] | If it is T&M, is this T&M not to exceed amount based upon your submitted lump sum Budget? |
| [Answer] | Yes. |

8.    Pursuant to Article 2, the parties' contract incorporates by reference several documents including CNX Morris Expansion RFP Questions – October 24, 2018 as well as CNX Morris Expansion RFP Questions – November 5, 2018. (Exhibit 1).

9.    Other than this clarification that the question and answer document that makes clear that the parties' contract is a T&M NTE was issued and uploaded onto the CNX ShareFile under the following shared RFP folder 0660-180925-CNXM Morris Station Exp RFP on October 24, 2018 rather than November 5, 2018 the remainder of my original Affidavit is true and accurate and I adopt it herein by reference.

Furthereth affiant sayeth naught.

_Todd Shumaker_

Sworn to and Subscribed before
me this ___23___ day of
___March___, 2021
        Notary Public

12188058.1

Commonwealth of Pennsylvania - Notary Seal
Mary T. Stromberg, Notary Public
Washington County
My commission expires March 23, 2022
Commission number 1222372
Member, Pennsylvania Association of Notaries

# EXHIBIT 1

# Purchase Order

| | |
|---|---|
| Order No.: | 4700577626 |
| Order Date: | 05-Dec-2018 07:50:30 AM |
| Account Code: | 2210 |
| Plant ID: | 2210 |
| Currency: | USD |

| | |
|---|---|
| Supplier Number: | HW7840825 |

| | |
|---|---|
| Customer: | Carissa Hansen |
| Customer No.: | 787008408 |
| Request Delivery Date: | 05-Dec-2018 04:56:29 PM |
| Confirmation of order expected: | Yes |

**Buyer Party:**

| | |
|---|---|
| Ident: | 787008408 |
| Company Name: | Tracking Number:-9CHC\|9CHC\|9CHC\|9CHC\|9CHC\| |
| Additional Ident: | 0001 |
| Street: | - |
| City: | - |
| Zip/Postal Code: | Payment Terms: 15 days %, 15 net |

**Buyer Order Contact:**

| | |
|---|---|
| Ident: | Carissa Hansen |
| Agency Coded: | AssignedByBuyerOrBuyersAgent |
| Contact Name: | Carissa Hansen |
| Email: | CARISSAHANSEN@CNX.COM |

**Supplier Party:**

| | |
|---|---|
| Ident: | HW7840825 |
| Company Name: | APPLIED CONSTRUCTION SOLUTIONS INC |
| Additional Ident: | PRD900_0000111996 |
| Street: | - |
| Inhouse Mail: | 830526 |
| City: | - |
| Zip/Postal Code: | - |

**Bill To:**

| | |
|---|---|
| Ident: | 2940 |
| Company Name: | CNX Mdstm DvCo I LP |
| Additional Ident: | 2940 |
| Street: | 1000 Consol Energy Drive |
| City: | Canonsburg |
| Region: | PA |
| Zip/Postal Code: | 15317 |

**Ship To:**

| | |
|---|---|
| Ident: | 2210 |
| Company Name: | ANCHOR - DEV CO1 |
| Street: | 253 River Road |
| City: | Rices Landing |
| Region: | PA |
| Zip/Postal Code: | 15357 |
| Country: | United States |

**Terms Of Delivery:**

| | |
|---|---|
| Shipping Payment Method: | Per Contract |
| Term of Delivery Function: | Delivery Condition |

**Payment Terms:**

| | |
|---|---|
| Payment Mean Code: | Instrument Not Defined |
| Payment Term Code: | Other |
| Payment Term Other: | 0212 |
| Net Days Due: | 15 |

**Notes:**

**Structured Notes:**

General The parties agree and acknowledge that this purchase order is subject to a certain Terms and Conditions Agreement ("TCA") made by and between the Buyer and Supplier and
Note: in effect the date hereof. Buyer and Supplier hereby represent and warrant that each party has executed such TCA and that each party has in its possession a copy of the TCA.
All items and conditions in the TCA are incorporated herein by reference and all transactions under this purchase order shall be governed by the terms and conditions of the
TCA and no other terms and conditions shall apply

Note F13
ID:

**List of Line Items:**

| No. | Part No. | Description | Quantity | Unit Price | Currency | Amount |
|---|---|---|---|---|---|---|
| 00010 | Seller: -<br>Buyer: | Morris Expansion- Mob / Demob | 1.00  Unitless | 580,000.00 | USD | 580000 |

| Status | | Processing | | Notes: | | |
|---|---|---|---|---|---|---|
| Requested Delivery Date: | | 01-Nov-2019 10:22:22 PM | | Note: | | Morris Expansion Construction Reference ShareFile |
| Supplier Delivery Date: | | 01-Nov-2019 10:22:22 PM | | | | Bid: 0660 - 180925 - CNXM Morris Station Exp RFP |
| PBQ | | 1.00 Unitless | | | | Carissa Hansen Kevin Dunn Tracking Number: 9CHC |
| | | | | Structured Notes: | | |
| Tax Percent: | Tax Amount: | | Tax Category: | General Note: | U0 | |
| 0.00 | 0.00 | | Standard RateStandard Rate | Note ID: | MWSKZ | |

| No. | Part No. | Description | Quantity | Unit Price | Currency | Amount |
|---|---|---|---|---|---|---|
| 00020 | Seller: -<br>Buyer: | Morris Expansion- Civil / Structural | 1.00  Unitless | 3,284,285.00 | USD | 3284285 |

| Status | | Processing | | Notes: | | |
|---|---|---|---|---|---|---|
| Requested Delivery Date: | | 01-Nov-2019 10:22:22 PM | | Note: | | Morris Expansion Construction Reference ShareFile |
| Supplier Delivery Date: | | 01-Nov-2019 10:22:22 PM | | | | Bid: 0660 - 180925 - CNXM Morris Station Exp RFP |
| PBQ | | 1.00 Unitless | | | | Carissa Hansen Kevin Dunn Tracking Number: 9CHC |
| | | | | Structured Notes: | | |
| Tax Percent: | Tax Amount: | | Tax Category: | General Note: | U0 | |
| 0.00 | 0.00 | | Standard RateStandard Rate | Note ID: | MWSKZ | |

| No. | Part No. | Description | Quantity | Unit Price | Currency | Amount |
|---|---|---|---|---|---|---|
| 00030 | Seller: -<br>Buyer: | Morris Expansion- Mechanical | 1.00  Unitless | 7,407,016.00 | USD | 7407016 |

| Status | | Processing | | Notes: | | |
|---|---|---|---|---|---|---|
| Requested Delivery Date: | | 01-Nov-2019 10:22:22 PM | | Note: | | Morris Expansion Construction Reference ShareFile |
| Supplier Delivery Date: | | 01-Nov-2019 10:22:22 PM | | | | Bid: 0660 - 180925 - CNXM Morris Station Exp RFP |
| PBQ | | 1.00 Unitless | | | | Carissa Hansen Kevin Dunn Tracking Number: 9CHC |
| | | | | Structured Notes: | | |
| Tax Percent: | Tax Amount: | | Tax Category: | General Note: | U0 | |
| 0.00 | 0.00 | | Standard RateStandard Rate | Note ID: | MWSKZ | |

| No. | Part No. | Description | Quantity | Unit Price | Currency | Amount |
|---|---|---|---|---|---|---|
| 00040 | Seller: -<br>Buyer: | Morris Expansion- Electrical Materials | 1.00  Unitless | 40,655.00 | USD | 40655 |

| Status | | Processing | | Notes: | | |
|---|---|---|---|---|---|---|
| Requested Delivery Date: | | 01-Nov-2019 10:22:22 PM | | Note: | | Morris Expansion Construction Reference ShareFile |
| Supplier Delivery Date: | | 01-Nov-2019 10:22:22 PM | | | | Bid: 0660 - 180925 - CNXM Morris Station Exp RFP |
| PBQ | | 1.00 Unitless | | | | Carissa Hansen Kevin Dunn Tracking Number: 9CHC |
| | | | | Structured Notes: | | |
| Tax Percent: | Tax Amount: | | Tax Category: | General Note: | U0 | |
| 0.00 | 0.00 | | Standard RateStandard Rate | Note ID: | MWSKZ | |

| No. | Part No. | Description | Quantity | Unit Price | Currency | Amount |
|---|---|---|---|---|---|---|
| 00050 | Seller: -<br>Buyer: | Morris Expansion- Electrical Install | 1.00  Unitless | 1,106,589.00 | USD | 1106589 |

| Status | | Processing | | Notes: | | |
|---|---|---|---|---|---|---|
| Requested Delivery Date: | | 01-Nov-2019 10:22:22 PM | | Note: | | Morris Expansion Construction Reference ShareFile Bid: 0660 - 180925 - CNXM |
| Supplier Delivery Date: | | 01-Nov-2019 10:22:22 PM | | | | Morris Station Exp RFP Carissa Hansen Kevin Dunn REVISED 06.8.2018 THIS |
| PBQ | | 1.00 Unitless | | | | AGREEMENT SUPERSEDES THE TERMS AND CONDITIONS OF THE GENERAL |
| | | | | | | TERMS AND CONDITIONS AGREEMENT FOR ELECTRONIC COMMERCE. IF |
| | | | | | | YOU HAVE RECEIVED THIS THROUGH HUBWOO, THIS PURCHASE ORDER |
| | | | | | | MAY ONLY BE ACCEPTED BY THE VENDOR SAVING AND SENDING THIS |
| | | | | | | PURCHASE ORDER THROUGH HUBWOO WITHOUT CHANGES TO THE |
| | | | | | | PURCHASE. PERFORMANCE SHALL NOT CONSTITUTE ACCEPTANCE OF |
| Tax Percent: | Tax Amount: | | Tax Category: | | | THE PURCHASE ORDER. INVOICES ISSUED TO THIS PURCHASE ORDER WILL |
| 0.00 | 0.00 | | Standard RateStandard Rate | | | NOT BE PAID UNLESS CONFIRMATION OF ACCEPTANCE IS PROVIDED BY |
| | | | | | | VENDOR TO PURCHASER AS PROVIDED IN THIS PARAGRAPH.IN THE EVENT |

OF ANY CONFLICT BETWEEN THIS ITEM TEXT AND ANY OTHER CONTRACT DOCUMENT OR PROVISION, THIS ITEM TEXT SHALL CONTROL. PLEASE SEND ALL INVOICE BACK-UP DOCUMENTATION (E.G. TIMESHEETS AND PODS) TO < Carissa Hansen> AT <CarissaHansen@CNX.com>. IF YOU RECEIVE THIS CONTRACT THROUGH EMAIL, AND NOT THROUGH CNX'S HUBWOO SYSTEM, YOU ARE REQUESTED TO REPLY TO THIS EMAIL TO CONFIRM ACCEPTANCE OF THE TERMS AND CONDITIONS OR THE ATTACHED PURCHASE ORDER OR CHANGE NOTICE. IF YOU DO NOT CONFIRM ACCEPTANCE OF THE TERMS AND CONDITIONS BY REPLYING TO THIS EMAIL BUT YOU INITIATE PERFORMANCE OF THE PURCHASE ORDER OR CHANGE NOTICE, YOUR PERFORMANCE WILL CONSTITUTE ACCEPTANCE OF THE TERMS AND CONDITIONS. IF NOT REQUIRED BY CNX TO BE A MEMBER OF ISNETWORLD, PLEASE SUBMIT THE FOLLOWING VIA EMAIL TO GASVENDORS@CNX.COM: 1. VALID INSURANCE CERTIFICATE- THE CONTRACTOR SHALL FURNISH TO THE COMPANY A CERTIFICATE OF HIS GENERAL LIABILITY, AUTOMOBILE, UMBRELLA, BLACK LUNG IF APPLICABLE, AND WORKMEN'S COMPENSATION INSURANCE COVERAGE, COVERING SERVICES IN THE STATE SPECIFIED UPON RECEIPT OF THE PURCHASE ORDER. 2. CONTRACTOR REGISTER INFORMATION- THE CONTRACTOR SHALL SEND THE FOLLOWING NUMBERS VIA EMAIL TO COMPLY WITH SAFETY INSPECTION REGULATIONS FOR EACH PURCHASE ORDER RECEIVED. INSTRUCTION BELOW: SUBJECT OF EMAIL MUST INCLUDE: "PO NUMBER AND LOCATION OF JOB (Name of Pad Site)" - CONTRACTOR'S FEDERAL EMPLOYER I.D. NUMBER: - CONTRACTOR'S I.D. NUMBERS (IF APPLICABLE): - MSHA CONTRACTOR'S I.D. NUMBER:- STATE CONTRACTOR'S LICENSE NUMBER: PAD API NUMBER: BOTH INSURANCE AND CONTRACTOR REGISTER INFORMATION CAN BE OXNIDATED IN ONE EMAIL, BUT THE SUBJECT MUST BE "PO NUMBER AND LOCATION OF JOB." CONSTRUCTION AGREEMENT - MADE THIS 5TH DAY OF DECEMBER, A.D 2018 - - B E T W E E N - CNX MIDSTREAM DVCO I LP, ORGANIZED AND EXISTING UNDER AND BY VIRTUE OF THE LAWS OF THE STATE OF DELAWARE, HEREINAFTER CALLED "COMPANY" - A N D - - APPLIED CONSTRUCTION SOLUTIONS INC, ORGANIZED AND EXISTING UNDER AND BY VIRTUE OF THE LAWS OF THE STATE OF WEST VIRGINIA, HEREINAFTER CALLED "CONTRACTOR" WITNESSETH: THAT THE PARTIES HERETO, IN CONSIDERATION OF THE MUTUAL COVENANTS HEREIN CONTAINED AND INTENDING TO BE LEGALLY BOUND HEREBY, COVENANT AND AGREE AS FOLLOWS: ARTICLE 1. – SCOPE OF THE WORK: CONTRACTOR SHALL FURNISH ALL LABOR, SUPERVISION, MATERIAL, SUPPLIES, TOOLS, UTILITIES, TRANSPORTATION, PLANT, EQUIPMENT, FACILITIES, AND SERVICES NOT SPECIFICALLY REQUIRED IN THE CONTRACT DOCUMENTS TO BE FURNISHED BY COMPANY AND SHALL PERFORM AND COMPLETE ALL THE WORK FOR THE CONSTRUCTION AND COMPLETION OF: ON LAND OF COMPANY SITUATE: ALL IN ACCORDANCE WITH THE CONTRACT DOCUMENTS AND TO THE SATISFACTION AND APPROVAL OF COMPANY. ARTICLE 2. – CONTRACT DOCUMENTS: THE FOLLOWING DOCUMENTS FORM THE AGREEMENT BETWEEN THE PARTIES AND ARE HEREIN REFERRED TO AS THE "CONTRACT DOCUMENTS": THE INVITATION TO BIDDERS, THE INSTRUCTIONS TO BIDDERS, THIS CONSTRUCTION AGREEMENT, THE GENERAL CONDITIONS, DRAWINGS AND SPECIFICATIONS, AND THE FOLLOWING: Reference: ShareFile Bid: 0660 - 180925 - CNXM Morris Station Exp RFP - (ACS) 0660 - 180925 - CNXM Morris Station Exp RFP - REV i o Morris CS SOV_10032018 Rev2.xlsx o Clarification.pdf o ACS Revised Pricing - 11-26-18.pdf BID DOCUMENTS: a) Invitation Letter CNXM Morris Station RFP b) CNX-MRX-10-0060_Redlined c) CNX-MRX-50-20000_DEMO d) CNX-MRX-50-3000_Redlined e) Morris Bid Presentation_10092018 f) Morris CS RFP_10092018 g) Morris CS SOV_10032018 h) Bid Clarification_Piping Quantity_10302018 i) Bid Timeline _10222018 j) CNXM Morris RFP Questions_11012018 k) CNXM Morris RFP Questions_11052018 l) CNXM Station RFP Questions 20181024 m) Morris CS RFP_10222018 n) Morris Foudnations in Question o) MORRIS EXP 2019 - PRELIM - 9-19-18.nwd p) CNX-MOR-60-3001-RC q) CNX-MOR-60-3002-R4B r) CNX-MOR-60-3003-RC s) CNX-MOR-60-3004-RC t) CNX-MOR-60-3008-RA u) CNX-MOR-60-3009-RA v) CNX-MOR-60-3010-RA w) CNX-MOR-60-LL05-RB x) CNX-MOR-60-LL08-RB y) CNX-MOR-60-LL07-RB z) CNX-MOR-60-LL08-RA aa) PIT.14.8885.12.T003 bb) CNX-MOR-40-3000 cc) CNX-MOR-40-3001 dd) CNX-MOR-40-3002 ee) CNX-MOR-40-3003 ff) CNX-MOR-40-3004 gg) CNX-MOR-40-3005 hh) CNX-MOR-40-3006 ii) CNX-MOR-40-3007 jj) CNX-MOR-40-3008 kk) CNX-MOR-40-3009 ll) CNX-MOR-40-3010 mm) CNX-MOR-40-3011 nn) CNX-MOR-40-3012 oo) CNX-MOR-40-3013 pp) CNX-MOR-40-3014 qq) CNX-MOR-40-3015 rr) CNX-MOR-40-3016 ss) CNX-MOR-40-3017 tt) CNX-MOR-40-3018 uu) CNX-MOR-40-3019 vv) CNX-MOR-40-3020 ww) CNX-MOR-40-3021 xx) CNX-MOR-40-3022 yy) CNX-MOR-40-3023 zz) CNX-MOR-40-3024 aaa) CNX-MOR-40-3025 bbb) CNX-MOR-43-3040 ccc) CNX-MOR-60-3031_Rev A ddd) CNX-MOR-60-3032_Rev A eee) CNX-MOR-60-3033_Rev A fff) CNX-MOR-60-3034_Rev A ggg) CNX-MOR-60-3035_Rev A hhh) CNX-MOR-60-3036_Rev A iii) CNX-MOR-60-3037_Rev A jjj) CNX-MOR-60-3037_Rev A kkk) CNX-MOR-60-3051_Rev B lll) CNX-MOR-60-3052_Rev B mmm) CNX-MOR-60-3053_Rev B nnn) CNX-MOR-60-3054_Rev B ooo) CNX-MOR-60-3055_Rev B ppp) CNX-MOR-60-3058_Rev B qqq) CNX-MOR-60-3057_Rev A rrr) CNX-MOR-60-3058_Rev A sss) CNX-MOR-60-3059_Rev B ttt) CNX-MOR-60-3060_Rev A uuu) CNX-MOR-60-3061_Rev A vvv) CNX-MOR-60-3062_Rev A www) CNX-MOR-60-3070_Rev A xxx) CNX-MOR-60-3071_Rev A yyy) CNX-MOR-60-3072_Rev A zzz) CNX-MOR-60-3073_Rev A aaaa) CNX-MOR-60-3074_Rev A bbbb) CNX-MOR-60-3075_Rev A cccc) CNX-MOR-60-3076_Rev A dddd) CNX-MOR-60-3077_Rev A eeee) PIT.14.8885.12.T004 ffff) CNX-MOR-50-3000-RB gggg) CNX-MOR-50-3001-RB hhhh) CNX-MOR-50-3002-RB iiii) CNX-MOR-50-3003-RB jjjj) CNX-MOR-50-3004-RB kkkk) CNX-MOR-50-3005-RB llll) CNX-MOR-50-3006-RB mmmm) CNX-MOR-50-3007-RB nnnn) CNX-MOR-50-3008-RB oooo) CNX-MOR-50-3009-RB pppp) CNX-MOR-50-3010-RB qqqq) CNX-MOR-50-3010-RB rrrr) CNX-MOR-50-3011-RB ssss) CNX-MOR-50-3012-RB tttt) CNX-MOR-50-3013-RA uuuu) CNX-MOR-50-3014-RA vvvv) CNX-MOR-50-3015-RA wwww) CNX-MOR-50-3016-RA xxxx) CNX-MOR-50-3017-RA yyyy) CNX-MOR-50-3018-RA zzzz) CNX-MOR-50-3019-RA aaaaa) CNX-MOR-50-3020-RA bbbbb) CNX-MOR-50-3021-RA ccccc) CNX-MOR-50-3022-RA ddddd) CNX-MOR-50-3023-RA eeeee) CNX-MOR-50-3024-RA fffff) CNX-MOR-50-3025-RA ggggg) CNX-MOR-50-3028-RA hhhhh) CNX-MOR-50-3027-RA iiiii) MORRIS EXP 2019 - PRELIM - 10-29-18 jjjjj) MORRIS P&IDs HIGHLIGHTED SET 10-26-18 kkkkk) PIT.14.8885.12.T005 lllll) CNX-MOR-40-CivilCombined_11132018 mmmmm) Bill of Materials-2018-11-15 - NO CONTROL VALVES nnnnn) CNX-MOR-50-PipingCombined_11152018 ooooo) CNX-MOR-60-

Electrical_11152018 ppppp) CNX-MOR-70-IC_11152018 qqqqq) Morris Equipment Delivery_11152018 rrrrr) PiD Cause Effect Morris 2019_Expansion sssss) 1659-B-GA-18-B ttttt) 1666-B-GA-18-A PRELIMINARY uuuuu) 1666-B-GA-18-0 vvvvv) B-129346 R0 wwwww) D-129346 R2 xxxxx) D-129456 R0 yyyyy) D-129459 R0 zzzzz) 18-10253-01-0-00 Rev. 2 aaaaaa) 18-10253-01-0-32 Rev. 1 bbbbbb) 18-10253-01-0-70 Rev. 1 cccccc) 18-10253-01-0-71 Rev. 2 dddddd) 18-10253-01-0-71 Rev_1 eeeeee) 403669-GA Rev C ffffff) CNX Gas Submittal gggggg) eds-1063 hhhhhh) epa-1097 iiiiii) n18d573epa jjjjjj) 72HSS Model_R2 kkkkkk) 94000-4-2 General Arrangment AB 200 Standard Combustion Flare llllll) T400-83 SHEET 1 OF 3 CNX MIDSTREAM mmmmmm) T400-83 SHEET 2 OF 3 CNX MIDSTREAM nnnnnn) T400-83 SHEET 3 OF 3 CNX MIDSTREAM oooooo) T450-01 SHEET 1 OF 3 CNX MIDSTREAM pppppp) T450-01 SHEET 2 OF 3 CNX MIDSTREAM qqqqqq) T450-01 SHEET 3 OF 3 CNX MIDSTREAM TOGETHER WITH ALL PRINTS, DOCUMENTS, AND PAPERS REFERRED TO IN ANY OF THE FOREGOING, ALL OF WHICH ARE INCORPORATED HEREIN BY REFERENCE THERETO AS FULLY AS THOUGH SET FORTH IN THIS CONSTRUCTION AGREEMENT. THE PROVISIONS OF THIS CONSTRUCTION AGREEMENT SUPERSEDE ALL INCONSISTENT PROVISIONS OF OTHER CONTRACT DOCUMENTS, AND THE PARTICULAR PROVISIONS OF OTHER CONTRACT DOCUMENTS SUPERSEDE ALL INCONSISTENT PROVISIONS CONTAINED IN GENERAL SPECIFICATIONS OR CONDITIONS INCORPORATED BY REFERENCE. THE CONTRACT DOCUMENTS SHALL CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE PARTIES AND SHALL NOT BE MODIFIED, CHANGED, OR AMENDED EXCEPT BY WRITTEN INSTRUMENT EXECUTED BY COMPANY AND CONTRACTOR, AND CONSENTED TO BY THE SURETY OR SURETIES ON ALL BONDS PROVIDED IN CONNECTION HEREWITH, IF ANY; PROVIDED, HOWEVER, THAT THIS PROVISION SHALL NOT LIMIT OR AFFECT THE RIGHT TO MAKE CHANGES OR VARIATIONS IN THE WORK AS PERMITTED IN THE CONTRACT DOCUMENTS. CONTRACTOR SHALL FURNISH, FOR COMPANY'S APPROVAL, NECESSARY GENERAL FACILITY ARRANGEMENT AND CONSTRUCTION DETAIL DRAWINGS WHICH SHALL BECOME PART OF THE CONTRACT DOCUMENTS. DEVIATION FROM CONTRACT DOCUMENTS WILL BE MADE ONLY WITH COMPANY'S WRITTEN APPROVAL; AND, EXCEPT IN EMERGENCY SITUATIONS WHERE THERE IS AN IMMEDIATE THREAT OF INJURY OR SERIOUS DAMAGE TO PERSONS OR PROPERTY, NO WORK SHALL BE PERFORMED ON ANY SUCH DEVIATIONS INVOLVING EITHER A CREDIT OR AN ADDITIONAL CHARGE TO COMPANY UNTIL THE AMOUNT OF SUCH CREDIT OR CHARGE HAS BEEN MUTUALLY AGREED UPON IN WRITING. CONTRACTOR, SUBJECT TO THE WRITTEN APPROVAL OF COMPANY, SHALL HAVE THE RIGHT TO SUBSTITUTE EQUIPMENT OF EQUAL QUALITY AND PERFORMANCE IN PLACE OF THE MAKE SPECIFIED IN THE CONTRACT DOCUMENTS. UNLESS OTHERWISE SPECIFICALLY STATED IN WRITING, ANY APPROVAL REQUIRED TO BE GIVEN BY COMPANY PURSUANT TO THE CONTRACT DOCUMENTS IS REQUIRED IN ORDER TO GIVE COMPANY AN OPPORTUNITY TO CONSULT WITH CONTRACTOR. SUCH APPROVAL SHALL BE ADVISORY ONLY AND SHALL NOT BE BINDING UPON NOR RELIEVE CONTRACTOR FROM RESPONSIBILITY FOR THE ENGINEERING OR FACILITIES DESCRIBED HEREIN. ARTICLE 3. – WORK SCHEDULE: UNDER NO CIRCUMSTANCES SHALL WORK BE STARTED OR MATERIALS DELIVERED TO THE PREMISES UNTIL (A) THE REQUIRED CERTIFICATES OF INSURANCE (AND BONDS, IF REQUIRED) HAVE BEEN DELIVERED TO COMPANY; AND (B) CONTRACTOR HAS FURNISHED COMPANY EVIDENCE TO THIS EFFECT. CONTRACTOR AGREES TO COMMENCE WORK HEREUNDER WITHIN SEVEN (7) DAYS AFTER EXECUTION OF THIS CONSTRUCTION AGREEMENT AND RECEIPT OF WRITTEN NOTICE FROM COMPANY TO PROCEED. CONTRACTOR SHALL SUBMIT TO COMPANY WITHIN SEVEN (7) DAYS FROM THE EXECUTION HEREOF AND ON A MONTHLY BASIS THEREAFTER A SCHEDULE, DESIGNED SUBJECT TO COMPANY'S APPROVAL, OF THE WORK. SPECIFICALLY THE WORK SHALL BE SCHEDULED TO CHART THE PROGRESS OF EACH PHASE ON A CALENDAR DAY BASIS AND ON A MANPOWER REQUIRED AND EXPENDED BASIS. CONTRACTOR SHALL PROMPTLY NOTIFY COMPANY OF ANY CHANGES IN ANY PHASE OF THE SCHEDULE. IN ANY EVENT, CONTRACTOR AGREES TO COMPLETE ALL OF THE WORK IN ACCORDANCE WITH THE CONTRACT DOCUMENTS AND TO THE SATISFACTION AND APPROVAL OF COMPANY ON OR BEFORE NOVEMBER 1, 2019 OR SUCH OTHER DATE AS MAY BE ESTABLISHED BY SAID WRITTEN NOTICE TO PROCEED, SUBJECT TO THE LIMITATIONS AS SET FORTH IN SECTION 19 OF THE GENERAL CONDITIONS, TIME BEING OF THE ESSENCE. ARTICLE 4. – CONTRACT PRICE: COMPANY SHALL PAY CONTRACTOR, AND CONTRACTOR SHALL ACCEPT IN FULL PAYMENT AND CONSIDERATION FOR THE FULL PERFORMANCE OF CONTRACTOR'S OBLIGATIONS HEREUNDER, SUBJECT TO ANY ADDITIONS AND DEDUCTIONS PERMITTED BY THE CONTRACT DOCUMENTS, IN ACCORDANCE WITH THE UNIFORM BID SHEET SCHEDULES PLUS THE SUM OF: $12,416,545.00: TWELVE MILLION FOUR HUNDRED EIGHTEEN THOUSAND FIVE HUNDRED FORTY-FIVE DOLLARS AND ZERO CENTS. ALL LUMP SUM AND UNIT PRICING IS FIRM THROUGH PROJECT COMPLETION. SEE EXHIBIT "A" FOR COST BREAKDOWN OF PROJECT SCOPE OF WORK. PROGRESS PAYMENTS SHALL BE MADE FOR THE WORK COMPLETED IN EACH CALENDAR MONTH BASED UPON 90% OF THE VALUE THEREOF, SUBJECT TO REASONABLE RETAINAGE HELD BY COMPANY TO SECURE COMPLETION OF THE WORK IN ACCORDANCE WITH THE CONTRACT DOCUMENTS, THE FINAL 10% SHALL BE PAID BY COMPANY TO CONTRACTOR WITHIN _____ THIRTY (30) DAYS AFTER COMPANY'S DESIGNATED REPRESENTATIVES CERTIFY THAT THE WORK IS "SUBSTANTIALLY" COMPLETED TO THE SATISFACTION OF COMPANY. PROGRESS PAYMENTS SHALL BE MADE IN ACCORDANCE WITH THE CONTRACT DOCUMENTS AND UPON PROPER CERTIFICATION BY COMPANY'S DESIGNATED ENGINEER THAT SUCH PAYMENT IS DUE. EACH APPLICATION FOR A PROGRESS PAYMENT SHALL BE ACCOMPANIED BY A CONTINGENT LIEN WAIVER IN THE FORM OF EXHIBIT B-1 HERETO. UPON RECEIPT OF A PROGRESS PAYMENT CONTRACTOR SHALL PROVIDE TO COMPANY A NON-CONTINGENT LIEN WAIVER IN THE FORM OF EXHIBIT B-2 HERETO. UPON RECEIPT OF FINAL PAYMENT CONTRACTOR SHALL PROVIDE TO COMPANY A FINAL WAIVER OF LIEN IN THE FORM OF EXHIBIT B-3 HERETO. IF YOU HAVE RECEIVED THIS CONSTRUCTION AGREEMENT THRU HUBWOO, ALL INVOICING MUST BE SUBMITTED THRU THE HUBWOO SYSTEM. CONTRACTOR SHALL NOT BE ENTITLED TO ANY LOSS OF ANTICIPATED PROFITS IF THE QUANTITIES OF ANY ITEMS OR WORK ARE

DECREASED OR ENTIRELY OMITTED. NEITHER THE MAKING OF PROGRESS PAYMENTS NOR ACCEPTANCE OF THE WORK AND FINAL PAYMENT SHALL RELIEVE CONTRACTOR OF ANY OBLIGATION IMPOSED ON CONTRACTOR BY THE CONTRACT DOCUMENTS. IN ADDITION TO ITS OTHER REMEDIES, COMPANY IS AUTHORIZED TO DEDUCT OUT OF MONIES WHICH MAY BE DUE OR BECOME DUE TO CONTRACTOR UNDER CONTRACT DOCUMENTS, AS DAMAGES FOR NON-COMPLETION OF WORK WITHIN TIME STIPULATED FOR ITS COMPLETION, N/A DOLLARS PER DAY FOR EACH AND EVERY DAY TIME EMPLOYED ON SAID WORK MAY EXCEED TIME STATED IN THE CONTRACT DOCUMENTS FOR ITS COMPLETION, WHICH IN VIEW OF DIFFICULTIES OF ESTIMATING SUCH DAMAGES, THE PARTIES HEREBY AGREE UPON AS THE LIQUIDATED DAMAGES THAT COMPANY WILL SUFFER BY REASON OF SUCH DEFAULT AND NOT BY WAY OF PENALTY, AND TO RETAIN FROM TIME TO TIME OUT OF MONIES DUE CONTRACTOR HEREUNDER SUCH AMOUNTS AS MAY BE REASONABLY REQUIRED TO COMPENSATE COMPANY FOR ANY LOSS OR DAMAGES IT SUSTAINS OR MAY SUSTAIN BY REASON OF CONTRACTOR'S BREACH OF THIS CONSTRUCTION AGREEMENT OR BY REASON OF ANY OTHER CLAIMS COMPANY MAY HAVE AGAINST CONTRACTOR. ARTICLE 5. – QUALITY OF MATERIALS AND PERFORMANCE: CONTRACTOR SHALL EMPLOY ONLY COMPETENT AND SKILLED WORKMEN CAPABLE OF PERFORMING THE DUTIES ASSIGNED TO THEM, SHALL PERFORM THE WORK AND FULFILL ALL ITS OBLIGATIONS UNDER THIS CONSTRUCTION AGREEMENT IN A GOOD AND WORKMANLIKE MANNER, SHALL USE THE HIGHEST DEGREE OF CARE WHICH IS COMPATIBLE WITH THE WORK TO BE PERFORMED, AND ACKNOWLEDGES THAT IT HAS INVESTIGATED THE SITE WHERE THE WORK IS TO BE DONE AND IS AWARE OF AND SATISFIED WITH ALL CONDITIONS EXISTING AT THE SITE. ALL MATERIALS USED SHALL BE THE BEST OF THEIR RESPECTIVE KIND AND THEIR APPLICATION SHALL BE ENTIRELY IN ACCORDANCE WITH STANDARD PRACTICE. WITHIN FIFTEEN (15) DAYS FROM EXECUTION HEREOF, CONTRACTOR SHALL SUBMIT TO COMPANY FOR COMPANY'S APPROVAL, A LIST OF ALL CONTRACTORS, SUBCONTRACTORS AND MATERIALMEN THAT WILL BE USED ON THIS WORK. ALL OF SAID WORK AND LABOR SHALL BE DONE AND PERFORMED IN THE BEST AND WORKMANLIKE MANNER IN STRICT AND ENTIRE CONFORMITY, IN EVERY RESPECT, WITH THE CONTRACT DOCUMENTS AND SHALL BE SUBJECT TO THE INSPECTION AND APPROVAL OF COMPANY. IN CASE ANY OF SAID MATERIAL OR LABOR SHALL BE REJECTED BY COMPANY, AS DEFECTIVE OR UNSUITABLE, THEN THE REJECTED MATERIALS SHALL BE MOVED OFF THE SITE AND REPLACED WITH APPROVED MATERIALS, AND THE REJECTED LABOR SHALL BE DONE ANEW TO THE SATISFACTION AND APPROVAL OF COMPANY OR ITS AGENTS, AT THE COST AND EXPENSE OF CONTRACTOR. CONTRACTOR SHALL REMEDY WITHOUT COST TO COMPANY ANY AND ALL DEFECTS CAUSED BY DEFECTIVE OR INFERIOR MATERIALS OR WORKMANSHIP WHICH MAY DEVELOP WITHIN ONE (1) YEAR FROM THE DATE OF FINAL ACCEPTANCE BY COMPANY OF THE WORK PERFORMED HEREUNDER. THE FOREGOING SHALL NOT LIMIT THE PERIOD OF ANY ADDITIONAL WARRANTY, GUARANTY, OR OTHER UNDERTAKING ON THE PART OF CONTRACTOR, ANY SUBCONTRACTOR, SUPPLIER, OR MANUFACTURER WHETHER CONTAINED IN THESE CONTRACT DOCUMENTS OR NOT. ARTICLE 6. – LIENS: CONTRACTOR SHALL PROMPTLY PAY ITS SUBCONTRACTORS AND MATERIALMEN. CONTRACTOR SHALL PROVIDE ALL EVIDENCE OF PAYMENT UPON REQUEST OF COMPANY AND AS PROVIDED IN ARTICLE 4 HEREOF. ARTICLE 7. – COMPLIANCE WITH LAWS; INDEMNIFICATION: CONTRACTOR, ITS EMPLOYEES, AGENTS, AND SUBCONTRACTORS, SHALL COMPLY WITH ALL LAWS, RULES, REGULATIONS, ORDERS, AND ORDINANCES OF FEDERAL, STATE, AND LOCAL GOVERNMENTS' OFFICES AND AUTHORITIES. CONTRACTOR, ITS EMPLOYEES, AGENTS, AND SUBCONTRACTORS MUST COMPLY WITH THE INDEMNITY REQUIREMENTS ATTACHED TO THIS CONTRACT AS EXHIBIT D. CONTRACTOR IS RESPONSIBLE FOR COMPLIANCE BY ITS SUBCONTRACTORS WITH THE INDEMNITY REQUIREMENTS ATTACHED TO THIS CONTRACT AS EXHIBIT D. SHOULD COMPANY RECEIVE PENALTIES, FINES, OR OTHER CHARGES RESULTING FROM VIOLATIONS OR ALLEGED VIOLATIONS OF LAWS, RULES, REGULATIONS, ORDERS, AND ORDINANCES OF FEDERAL, STATE, AND LOCAL GOVERNMENTS' OFFICES AND AUTHORITIES, WHICH RELATE TO WORK PERFORMED HEREUNDER BY CONTRACTOR, ITS EMPLOYEES, AGENTS, OR SUBCONTRACTORS, COMPANY SHALL PROMPTLY GIVE WRITTEN NOTICE TO CONTRACTOR WHO SHALL HAVE THE RIGHT TO PURSUE AN ADMINISTRATIVE REMEDY AT CONTRACTOR'S SOLE COST AND EXPENSE. CONTRACTOR AND COMPANY AGREE TO CONFER ON ANY SUCH ADMINISTRATIVE ACTION. CONTRACTOR AT ITS COST SHALL APPLY PROMPTLY FOR THE ISSUANCE, TRANSFER, AND/OR RENEWAL OF ANY AND ALL PERMITS, BONDS, AND LICENSES REQUIRED FOR THE WORK TO BE PERFORMED HEREUNDER. CONTRACTOR AGREES TO BE A MEMBER OF ISNETWORLD AND TO MEET ALL OF COMPANY'S INSURANCE (AS ADDRESSED IN EXHIBIT C) AND HEALTH/SAFETY REQUIREMENTS. THIS INCLUDES MAINTAINING A DASHBOARD GRADE OF "A" IN ISNETWORLD. CONTRACTOR AGREES TO PROVIDE AND RECORD IN ISNETWORLD THE PREVIOUS MONTH'S MAN HOURS PER OSHA/MSHA STANDARDS FOR ALL CNX SITES BY THE 15TH DAY OF EACH MONTH. ON ALL CNX GAS SITES WITHIN 150 FEET OF GAS CONTAINING FACILITIES, CONTRACTOR IS TO PROVIDE GAS MONITORING FOR OXYGEN, COMBUSTIBLE GAS, HYDROGEN SULFIDE, AND CARBON MONOXIDE. THIS CAN BE EITHER AREA OR PERSONAL MONITORING. FOR ALL CNX GAS SITES, CONTRACT EMPLOYEES ENGAGED IN OIL AND GAS INDUSTRY WORK MUST HAVE OSHA 10 HOUR TRAINING OR A NATIONALLY RECOGNIZED EQUIVALENT (HAZWOPPER, SAFELAND, ETC.). PROOF OF TRAINING WILL BE REQUIRED PRIOR TO START OF WORK. IN ORDER TO INSURE A SAFE WORK ENVIRONMENT, TO BE ABLE TO TIMELY REACT IN SAFETY EMERGENCIES, AND TO PROMOTE EFFECTIVE COMMUNICATION IN THE WORK PLACE, ALL EMPLOYEES OF CONTRACTOR AND ANY SUBCONTRACTORS WHO WILL PERFORM WORK ON COMPANY PROPERTY MUST BE ABLE TO READ, SPEAK AND UNDERSTAND WRITTEN AND ORAL DIRECTIONS IN THE ENGLISH LANGUAGE; PROVIDED THAT IF ANY EMPLOYEE OF A CONTRACTOR OR SUBCONTRACTOR IS NOT ABLE TO READ, SPEAK OR UNDERSTAND WRITTEN OR ORAL DIRECTIONS IN THE ENGLISH LANGUAGE, THE CONTRACTOR OR SUBCONTRACTOR IS

REQUIRED TO HAVE ANOTHER EMPLOYEE WHO IS BI-LINGUAL (THAT IS, WHO READS, UNDERSTANDS AND SPEAKS ENGLISH AND WHO IS ABLE TO TRANSLATE AND GIVE DIRECTIONS IN TO THOSE EMPLOYEES WHO CANNOT READ, SPEAK OR UNDERSTAND WRITTEN OR ORAL DIRECTIONS IN THE ENGLISH LANGUAGE) PRESENT AT ALL TIMES THAT EMPLOYEES WHO NOT ARE ABLE TO READ, SPEAK AND UNDERSTAND WRITTEN AND ORAL DIRECTIONS IN THE ENGLISH LANGUAGE ARE PRESENT ON COMPANY PROPERTY. ARTICLE 8. -- INDEPENDENT CONTRACTOR: STANDARD OF CARE: CONTRACTOR AGREES THAT IN THE PERFORMANCE OF THE WORK UNDER THE CONTRACT DOCUMENTS, IT SHALL ACT AS AN INDEPENDENT CONTRACTOR, AND ALL OF ITS AGENTS AND EMPLOYEES, AND THE AGENTS AND EMPLOYEES OF ITS SUBCONTRACTORS, SHALL BE SUBJECT SOLELY TO THE CONTROL, SUPERVISION, AND AUTHORITY OF CONTRACTOR OR ITS SUBCONTRACTORS -- THE RIGHT OF INSPECTION BEING RESERVED HEREIN BY COMPANY IS SOLELY TO DETERMINE WHETHER THE WORK IS DONE IN ACCORDANCE WITH THE CONTRACT DOCUMENTS AND TO EVALUATE COMPLETED WORK IN CONNECTION WITH PAYMENTS. ARTICLE 9. -- INSURANCE: 1. CONTRACTOR, ITS EMPLOYEES, AGENTS, AND SUBCONTRACTORS MUST COMPLY WITH THE INSURANCE REQUIREMENTS ATTACHED TO THIS CONTRACT AS EXHIBIT C. CONTRACTOR IS RESPONSIBLE FOR COMPLIANCE BY ITS SUBCONTRACTORS WITH THE INSURANCE REQUIREMENTS ATTACHED TO THIS CONTRACT AS EXHIBIT C. THE INSURANCE REQUIREMENTS IN EXHIBIT C ARE "MINIMUM" AND DO NOT CONSTITUTE ANY RECOMMENDATION BY COMPANY REGARDING THE TYPES AND AMOUNTS OF INSURANCE COVERAGE ACTUALLY NEEDED BY THE CONTRACTOR AND ANY SUBCONTRACTOR TO PROTECT THEIR OWN INTERESTS. CONTRACTOR SHALL NOT COMMENCE WORK UNTIL INSURANCE CERTIFICATES EVIDENCING THE REQUIRED COVERAGE ARE SUBMITTED AND APPROVED BY COMPANY. INSURANCE CERTIFICATES MUST INCLUDE SPECIFIC COVERAGE FOR THE INDEMNITY CLAUSE (ARTICLE 7 - EXHIBIT D, HEREOF) AND CONTAIN AN UNDERTAKING BY THE INSURER NOT TO CANCEL OR MODIFY SUCH POLICIES WITHOUT FIRST GIVING AT LEAST THIRTY(30) DAYS' PRIOR WRITTEN NOTICE TO COMPANY. 2. BUILDER'S RISK INSURANCE: IF REQUIRED BY COMPANY, DURING THE PERIOD THAT WORK IS CARRIED ON HEREUNDER, CONTRACTOR SHALL ASSUME THE RISKS NORMALLY COVERED BY BUILDER'S RISK INSURANCE IN "ALL RISK" FORM, SUBJECT TO THE USUAL SPECIFIC EXCLUSIONS WHICH APPLY TO SUCH "ALL RISK" PROPERTY DAMAGE INSURANCE. SAID ASSUMPTION OF RISK SHALL APPLY TO COMPLETED WORK, WORK IN PROGRESS, AND MATERIALS STORED ON THE PREMISES WHICH ARE TO BE INCORPORATED INTO THE COMPLETED WORK. SAID ASSUMPTION OF RISK SHALL NOT APPLY TO ANY EQUIPMENT, SUPPLIES, AND MATERIALS OWNED BY CONTRACTOR, ANY SUBCONTRACTOR, OR ANY OTHER PERSON OR COMPANY EXCEPT FOR SUCH EQUIPMENT, SUPPLIES, AND MATERIALS WHICH ARE TO BE INCORPORATED INTO THE COMPLETED WORK. SAID ASSUMPTION OF RISK SHALL APPLY TO ALL BUILDER'S RISK-TYPE LOSSES. ARTICLE 10. -- CHANGES IN THE WORK: COMPANY, WITHOUT INVALIDATING THE CONSTRUCTION AGREEMENT, MAY ORDER EXTRA WORK OR MAKE CHANGES BY ALTERING, ADDING TO, OR DEDUCTING FROM THE WORK. SUCH CHANGES SHALL BE EXECUTED UNDER THE CONDITIONS OF THE ORIGINAL CONTRACT DOCUMENTS EXCEPT THAT ANY CLAIM FOR EXTENSION OF TIME CAUSED THEREBY SHALL BE ADJUSTED AT THE TIME OF ORDERING SUCH CHANGE. PRIOR TO THE PERFORMANCE OF ANY EXTRA WORK BY CONTRACTOR, COMPANY WILL DETERMINE WHICH OF THE METHODS OF PAYMENT DEFINED IN THE CONTRACT DOCUMENTS WILL BE APPLICABLE. EXTRA WORK IS ANY WORK PERFORMED WHICH IS BEYOND THE SCOPE OF THE WORK DEFINED IN THESE CONTRACT DOCUMENTS. EXCEPT IN ANY EMERGENCY ENDANGERING LIFE OR PROPERTY, NO EXTRA WORK OR CHANGE SHALL BE MADE UNLESS PURSUANT TO COMPANY'S WRITTEN PURCHASE OR CHANGE ORDER, AND NO CLAIM FOR AN ADDITION TO THE CONTRACT SUM SHALL BE VALID UNLESS SO ORDERED. ARTICLE 11. -- COMPANY'S RIGHT TO TERMINATE: 11.1 FOR CAUSE - NOTWITHSTANDING ANYTHING CONTAINED IN THE CONTRACT DOCUMENTS TO THE CONTRARY, SHOULD CONTRACTOR, IN THE SOLE JUDGMENT OF COMPANY'S DESIGNATED ENGINEER, NEGLECT, REFUSE, OR BE UNABLE TO PROSECUTE THE WORK IN A PROPERLY EXPEDIENT AND WORKMANLIKE MANNER TO THE SATISFACTION OF COMPANY OR FAIL TO PERFORM ANY PROVISIONS OF THE CONTRACT DOCUMENTS AFTER SEVEN(7) DAYS WRITTEN NOTICE TO CONTRACTOR TO CORRECT THE SAME, OR SHOULD CONTRACTOR BECOME BANKRUPT OR INSOLVENT, THEN COMPANY MAY, AT ITS ELECTION AND WITHOUT PREJUDICE TO ANYOTHER REMEDY IT MAY HAVE, MAKE GOOD THE DEFICIENCIES AND DEDUCT THE COST THEREOF FROM THE PAYMENT THEN OR THEREAFTER DUE CONTRACTOR; AND IN ADDITION TO THE ABOVE, COMPANY MAY TERMINATE THIS CONSTRUCTION AGREEMENT, IN WHICH EVENT CONTRACTOR COVENANTS TO PEACEABLY VACATE THE PREMISES, FOR ANY OF THE FOREGOING PURPOSES, COMPANY MAY TAKE POSSESSION OF ANY OR ALL MATERIALS, TOOLS, AND EQUIPMENT AND DO THE WORK OR CAUSE THE WORK TO BE DONE BY SUCH MEANS AS IT SEES FIT, AND IF THE COST OF FINISHING THE WORK EXCEEDS THE CONTRACT PRICE (INCLUDING ANY ALTERNATES AND CHANGES), SUCH EXCESS SHALL BE PAID BY CONTRACTOR TO COMPANY; BUT IF SUCH EXPENSE IS LESS THAN SAID CONTRACT PRICE (INCLUDING ANY ALTERNATES AND CHANGES), COMPANY SHALL PAY THE DIFFERENCE TO CONTRACTOR. 11.2 AT THE CONVENIENCE OF COMPANY - COMPANY SHALL HAVE THE RIGHT TO TERMINATE CONTRACTOR'S PERFORMANCE OF THIS CONTRACT AT ANY TIME BY WRITTEN NOTICE TO CONTRACTOR. IN SUCH EVENT, CONTRACTOR SHALL BE ENTITLED TO FULL PAYMENT FOR WORK DONE IN COMPLIANCE WITH THE TERMS OF THIS CONTRACT UP TO THE TIME OF SUCH TERMINATION, PROVIDING EVIDENCE SATISFACTORY TO COMPANY IS SUBMITTED SHOWING COMPLIANCE WITH THE APPLICABLE PROVISIONS OF SECTION 5 HEREOF DEALING WITH PAYMENTS TO SUBCONTRACTORS AND MATERIAL MEN AND WAIVERS OF LIENS. SUBJECT TO SATISFACTORY SETTLEMENT WITH CONTRACTOR FOR WORK PERFORMED UP TO THE DATE OF TERMINATION, COMPANY, WITH RESPECT TO THE WORK REMAINING TO BE DONE, SHALL ASSUME THE REASONABLE OBLIGATIONS WHICH CONTRACTOR HAD IN GOOD FAITH UNDERTAKEN HEREUNDER. ARTICLE 12. -- COMPANY'S RIGHT TO AUDIT: COMPANY SHALL HAVE THE RIGHT, AT ITS

SOLE EXPENSE, TO AUDIT CONTRACTOR'S RECORDS INCLUDING ALL BOOKS, PAPERS, DOCUMENTS, AGREEMENTS, AND OTHER DATA THAT MAY IN COMPANY'S SOLE JUDGMENT HAVE ANY BEARING OR PERTAIN TO ANY BUSINESS CONDUCTED BETWEEN THE PARTIES EXCEPT AS CONCERNS CONTRACTOR'S PROFIT MARGIN ON MERCHANDISE OR SERVICES PURCHASED. CONTRACTOR SHALL COOPERATE FULLY IN FURNISHING ALL SUCH REQUESTED RECORDS. ALL AUDITS WILL BE CONDUCTED IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES. ARTICLE 13. – NO ASSIGNMENT: CONTRACTOR SHALL NOT ASSIGN THIS CONSTRUCTION AGREEMENT NOR ANY PART THEREOF WITHOUT THE WRITTEN CONSENT OF COMPANY AND NO MONIES DUE OR TO BECOME DUE HEREUNDER SHALL BE ASSIGNABLE WITHOUT THE PRIOR WRITTEN CONSENT OF COMPANY. IN THE EVENT AN ASSIGNMENT IS MADE WITH THE CONSENT OF COMPANY, CONTRACTOR SHALL NOT BE RELIEVED FROM THE RESPONSIBILITY HEREUNDER BUT SHALL REMAIN LIABLE IN THE SAME MANNER AS IF NO TRANSFER HAD BEEN MADE. ARTICLE 14. – DESIGNATED ENGINEER: COMPANY SHALL FROM TIME TO TIME DESIGNATE IN WRITING ONE OR MORE "DESIGNATED ENGINEERS", EACH OF WHOM SHALL HAVE FULL AUTHORITY TO ACT FOR COMPANY IN ALL MATTERS RELATING TO THIS CONSTRUCTION AGREEMENT UNTIL NOTICE IS GIVEN TO CONTRACTOR THAT SUCH AUTHORITY HAS BEEN REVOKED. CONTRACTOR MAY RELY UPON THE WRITTEN CERTIFICATION OF ANY VICE PRESIDENT OF COMPANY AS TO THE APPOINTMENT OF A DESIGNATED ENGINEER OR THE REVOCATION OF HIS AUTHORITY. ARTICLE 15. – NOTICES: ALL NOTICES BETWEEN THE PARTIES SHALL BE IN WRITING AND, UNTIL OTHERWISE NOTIFIED, SHALL BE SERVED OR MAILED TO THE FOLLOWING ADDRESSES: (A) IN THE CASE OF COMPANY, TO: CNX Midstream DVCO I LP Chase Davis 1000 CONSOL Energy Drive Canonsburg, PA 15317 724-485-3801 (B) IN THE CASE OF CONTRACTOR, TO: APPLIED CONSTRUCTION SOLUTIONS INC David Alvarez P.O. Box 430 Clarksburg, WV 26301 304-423-8780 ARTICLE 16. – THIS CONTRACT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF PENNSYLVANIA. ANY AND ALL ACTIONS AT LAW OR OTHER PROCEEDINGS FOR ANY BREACH OF OR ENFORCEMENT OF ANY PROVISION OF THIS CONTRACT SHALL BE ONLY IN A STATE OR FEDERAL COURT OF COMPETENT JURISDICTION LOCATED IN ALLEGHENY OR WASHINGTON COUNTY, PENNSYLVANIA, RESPECTIVELY AND EACH PARTY HEREBY WAIVES ANY RIGHT TO ANY CHANGE OF VENUE. ARTICLE 17. – USE OF COMPANY PROPERTY: THE UNAUTHORIZED USE OF COMPANY'S PROPERTY IS STRICTLY PROHIBITED. THIS POLICY APPLIES TO ALL OF COMPANY'S PROPERTY INCLUDING, BUT NOT LIMITED TO, COMPANY'S COMPUTERS, FILES/PAPERWORK, AND EQUIPMENT. ANY USE, REVIEW, COPYING, DISTRIBUTION, DISTURBANCE AND/OR REMOVAL OF ANY COMPANY'S PROPERTY IS FORBIDDEN UNLESS PRIOR WRITTEN AUTHORIZATION IS OBTAINED FROM THE RESPONSIBLE COMPANY'S EMPLOYEE. IF THIS POLICY IS NOT ADHERED TO IN EVERY RESPECT,THEN COMPANY SHALL HAVE THE RIGHT TO TERMINATE THIS CONTRACT WITHOUT ANY FURTHER LIABILITY OR OBLIGATION TO CONTRACTOR. ARTICLE 18. –INUREMENT. – THIS CONSTRUCTION AGREEMENT SHALL BE BINDING UPON THE PARTIES HERETO AND UPON THEIR RESPECTIVE HEIRS, ADMINISTRATORS, SUCCESSORS, AND ASSIGNS. ARTICLE 19 - ETHICS AND CONFLICTS OF INTEREST: CONTRACTOR SHALL NOT HIRE ANY EMPLOYEE OR OFFICER OF COMPANY OR ITS AFFILIATED COMPANIES WHILE THAT EMPLOYEE OR OFFICER IS AN EMPLOYEE OR OFFICER OF COMPANY. CONTRACTOR SHALL NOT PAY ANY SALARIES, COMMISSIONS OR FEES, OR MAKE ANY PAYMENTS OR REBATES, TO ANY EMPLOYEE OR OFFICER OF COMPANY, OR ANY DESIGNEE OF ANY SUCH EMPLOYEE OR OFFICER, OR FAVOR ANY SUCH EMPLOYEE, OFFICER, OR DESIGNEE WITH GIFTS OR ENTERTAINMENT OF SIGNIFICANT COST OR VALUE OR WITH SERVICES OR GOODS SOLD AT LESS THAN FULL MARKET VALUE. CONTRACTOR'S OBLIGATIONS TO COMPANY UNDER THIS ARTICLE NUMBER 19 SHALL ALSO BE BINDING UPON ANY SUBCONTRACTORS AND SUB-SUBCONTRACTORS OF THE WORK. ARTICLE 20- CONTRACTOR BACKGROUND CHECK GUIDELINES (EFFECTIVE JUNE 1, 2013), ALL "A" AND "B" CONTRACTORS AND THEIR SUBCONTRACTORS, AND ALL CONTRACTORS REQUIRED BY CNX TO BE MEMBERS OF (ISNETWORLD) AND THEIR SUBCONTRACTORS ARE REQUIRED TO COMPLY WITH THE CONTRACTOR BACKGROUND CHECK GUIDELINES FOR NEW HIRED EMPLOYEES AS ATTACHED TO THIS CONTRACT AS EXHIBIT G. ARTICLE 21 - ALL CONTRACTORS PROVIDING HORIZONTAL DRILLING RIGS, HYDRAULIC FRACTURING SERVICES AND WATER/WASTE HAULING SERVICE AND THEIR SUBCONTRACTORS ARE REQUIRED TO COMPLY WITH AIR PERFORMANCE STANDARDS SET FORTH BY THE COALITION FOR SUSTAINABLE SHALE DEVELOPMENT AS ATTACHED TO THIS CONTRACT AS EXHIBIT H. WITNESS THE DUE EXECUTION HEREOF AS OF THE DATE FIRST ABOVE WRITTEN.

BY _____

_____ WITNESS _____

_____ DIRECTOR SUPPLY CHAIN MANAGEMENT CNX RESOURCES CORPORATION ATTORNEY IN FACT _____ DATE: _____ WITNESS _____ CONTRACTOR _____ CONSTRUCTION

BY _____ DATE: _____ AGREEMENT X X X X X X X X X X X X X X X X X X GENERAL CONDITIONS – – 1. GENERAL: THE INTENT OF THESE GENERAL CONDITIONS IS TO SET FORTH THE BASIC ADMINISTRATIVE PROVISIONS OF AND PROCEDURES UNDER THE AGREEMENTS BETWEEN THE PARTIES. 2. DRAWINGS AND SPECIFICATIONS. 2.1 ANYTHING SHOWN ON THE DRAWINGS OR MENTIONED IN THE SPECIFICATIONS OR OTHER CONTRACT DOCUMENTS SHALL HAVE THE SAME EFFECT AS IF SHOWN AND MENTIONED IN ALL THE DOCUMENTS. ALL DRAWINGS AND SPECIFICATIONS ARE TO BE CONSIDERED COOPERATIVE. ANY AMBIGUITIES OR CONFLICTS BETWEEN SAID DOCUMENTS SHALL BE PROMPTLY CALLED TO THE ATTENTION OF AND RESOLVED BY COMPANY'S DESIGNATED ENGINEER. ANY SUCH DISCREPANCIES ADJUSTED BY CONTRACTOR WITHOUT THE APPROVAL OF COMPANY'S DESIGNATED ENGINEER SHALL BE AT CONTRACTOR'S OWN RISK AND EXPENSE. 2.2 CONTRACTOR SHALL VERIFY ALL DIMENSIONS AND INFORMATION SET FORTH ON ANY DRAWINGS AND SPECIFICATIONS SUBMITTED TO IT AND SHALL TAKE ALL NECESSARY FIELD MEASUREMENTS PRIOR TO THE INSTALLATION OF ALL WORK. 2.3 CONTRACTOR SHALL PROVIDE SHOP DRAWINGS AND SUCH OTHER DRAWINGS AND

SPECIFICATIONS AS MAY BE NECESSARY FOR THE PROSECUTION OF THE WORK IN THE SHOP AND IN THE FIELD. SHOP DRAWINGS SHALL BE DEFINED AS DRAWINGS, DIAGRAMS, ILLUSTRATION PERFORMANCE DATA, BROCHURES, CERTIFIED EQUIPMENT DRAWINGS, AND OTHER DATA WHICH ARE PREPARED BY CONTRACTOR OR ANY SUBCONTRACTOR, MANUFACTURER, SUPPLIER, OR DISTRIBUTOR AND WHICH ARE REQUIRED TO PROPERLY DEFINE SOME PORTION OF THE WORK. 2.4 CONTRACTOR SHALL PROMPTLY REVIEW AND SUBMIT TO COMPANY IN AN ORDERLY SEQUENCE FOUR APPROVED COPIES OF ALL NECESSARY DRAWINGS AND SPECIFICATIONS. 2.5 BY APPROVING AND SUBMITTING DRAWINGS AND/OR SPECIFICATIONS, CONTRACTOR THEREBY REPRESENTS THAT IT HAS DETERMINED AND VERIFIED ALL DESIGN REQUIREMENTS, ALL FIELD MEASUREMENTS, FIELD CONSTRUCTION CRITERIA, MATERIALS, CATALOG NUMBERS, AND SIMILAR DATA AND THAT IT HAS CHECKED AND COORDINATED EACH DRAWING WITH THE REQUIREMENTS OF THE WORK AND THE CONTRACT DOCUMENTS. 2.6 COMPANY SHALL PROMPTLY REVIEW AND APPROVE DRAWINGS AND SPECIFICATIONS SO AS TO CAUSE NO DELAY IN THE WORK. THE APPROVAL OF COMPANY SHALL BE FOR CONFORMANCE WITH THE DESIGN CONCEPT AND SHALL NOT RELIEVE CONTRACTOR OF RESPONSIBILITY FOR ANY DEVIATION FROM THE REQUIREMENTS OF THE CONTRACT DOCUMENTS NOR SHALL COMPANY'S APPROVAL RELIEVE CONTRACTOR FROM RESPONSIBILITY FOR ERRORS OR OMISSIONS IN THE DRAWINGS AND SPECIFICATIONS. 2.7 ALL WORK AND PORTIONS THEREOF REQUIRING DRAWING OR SPECIFICATION SUBMISSION SHALL BE APPROVED BY COMPANY BEFORE COMMENCEMENT. 2.8 CONTRACTOR SHALL MAINTAIN AT THE SITE FOR COMPANY'S USE ONE COPY OF ALL DRAWINGS, SPECIFICATIONS, ADDENDA, APPROVED SHOP DRAWINGS, CHANGE ORDERS, AND OTHER MODIFICATIONS IN GOOD ORDER AND MARKED TO RECORD ALL CHANGES MADE DURING CONSTRUCTION. 2.9 UPON COMPLETION OF THE WORK, CONTRACTOR SHALL DELIVER TO COMPANY ONE REPRODUCIBLE SET OF AS-BUILT DRAWINGS. ALL DESIGN DRAWINGS AND SHOP DRAWINGS SUPPLIED BY CONTRACTOR SHALL BECOME THE PROPERTY OF COMPANY, AND COMPANY SHALL BE ENTITLED TO USE ALL OR ANY PORTION OF THE DRAWINGS FOR ANY PURPOSE, INCLUDING THE DUPLICATION OF FACILITIES UNDER CONSTRUCTION OR THE CONSTRUCTION OF ANY NEW PLANT OR FACILITY. 2.10 ALL OFFICE STANDARDS AND PROCEDURES OF CONTRACTOR FOR PREPARATION AND HANDLING OF DRAWINGS AND SPECIFICATIONS ARE SUBJECT TO REVIEW AND APPROVAL BY COMPANY. CONTRACTOR SHALL MAKE ALL DRAWINGS ON DRAWING SHEETS THAT SHALL INCLUDE COMPANY'S STANDARD TITLE BLOCK FORMAT. 3. BENCH MARKS AND REFERENCE POINTS: WORK SITE: COMPANY SHALL PROVIDE ANY REQUIRED BENCH MARKS AND REFERENCE POINTS. CONTRACTOR SHALL CAREFULLY PRESERVE SAME. SHOULD SAID BENCH MARKS AND REFERENCE POINTS BE DESTROYED DUE TO CONTRACTOR'S CONDUCT, CONTRACTOR SHALL BE CHARGED WITH THE RESULTING EXPENSE OF REESTABLISHING THE SAME. CONTRACTOR SHALL ALSO BE RESPONSIBLE FOR ANY CONSTRUCTION MISTAKES ARISING FROM THE DESTRUCTION OR LOSS OF SAID MARKS AND POINTS. ALL LINES AND LEVELS NECESSARY TO THE LOCATION AND CONSTRUCTION OF THE WORK UNDER THE CONTRACT DOCUMENTS SHALL BE ESTABLISHED AND MAINTAINED FROM SAID BENCH MARKS AND REFERENCE POINTS AND CERTIFIED BY A COMPETENT REGISTERED SURVEYOR OR ENGINEER WHO SHALL BE EMPLOYED AND PAID BY CONTRACTOR. CONTRACTOR SHALL COMPARE CAREFULLY ALL LEVELS GIVEN ON DRAWINGS WITH EXISTING LEVELS AND SHALL CALL ATTENTION TO DISCREPANCIES BEFORE PROCEEDING WITH THE WORK. CONTRACTOR SHALL CONFINE ALL ITS ACTIVITIES AND OPERATIONS TO SUCH CONTRACT DOCUMENTS OR AS DESIGNATED FROM TIME TO TIME BY COMPANY'S DESIGNATED ENGINEER. 4. UTILITIES AND SERVICES FURNISHED BY COMPANY: WHEN ELECTRIC CURRENT, WATER, GAS, OR OTHER UTILITIES OR SERVICES ARE FURNISHED BY COMPANY, COMPANY ASSUMES NO RESPONSIBILITY OR LIABILITY FOR LOSS OF OR DAMAGE TO THE EQUIPMENT OR MATERIALS OF CONTRACTOR, OR SUBCONTRACTORS, IF ANY, RESULTING DIRECTLY OR INDIRECTLY FROM THE USE OF SAME BY CONTRACTOR OR SUBCONTRACTOR. COMPANY IS NOT OBLIGATED TO FURNISH ANY SUCH UTILITIES OR SERVICES UNLESS SPECIFICALLY REQUIRED TO PROVIDE THE SAME BY THE CONTRACT DOCUMENTS. 5. NON-DISCLOSURE: ALL CONTRACT DOCUMENTS AND/OR INFORMATION FURNISHED HEREWITH SHALL BE HELD CONFIDENTIAL AND SHALL NOT BE USED BY CONTRACTOR FOR ANY PURPOSE OTHER THAN THOSE FOR WHICH THEY HAVE BEEN SUPPLIED OR PREPARED. 6. COOPERATION; COORDINATION: CONTRACTOR AND ITS SUBCONTRACTORS, IF ANY, SHALL COOPERATE WITH COMPANY AND OTHER CONTRACTORS, IF ANY, ON THE PREMISES AND SHALL SO CARRY ON THEIR WORK THAT OTHER COOPERATING CONTRACTORS SHALL NOT BE HINDERED, DELAYED, OR INTERFERED WITH IN THE PROGRESS OF THEIR WORK, AND SO THAT ALL OF SUCH WORK SHALL BE A FINISHED AND COMPLETE JOB OF ITS KIND. CONTRACTOR SHALL AFFORD TO COMPANY AND SAID OTHER CONTRACTORS REASONABLE OPPORTUNITY FOR THE INTRODUCTION AND STORAGE OF MATERIALS AND FOR THE EXECUTION OF THEIR WORK. CONTRACTOR SHALL, AT ALL TIMES PROPERLY CONNECT AND COORDINATE ITS WORK WITH THE WORK OF COMPANY AND OTHER CONTRACTORS. IF ANY PART OF THE CONTRACTOR'S WORK DEPENDS FOR PROPER EXECUTION AND RESULTS UPON THE WORK OF COMPANY OR ANY OTHER CONTRACTOR, CONTRACTOR SHALL INSPECT AND REPORT TO COMPANY ANY DEFECTS IN SUCH WORK THAT RENDER IT UNSUITABLE FOR PROPER EXECUTION AND RESULTS. CONTRACTOR'S FAILURE TO INSPECT AND REPORT SUCH WORK SHALL CONSTITUTE AN ACCEPTANCE BY IT OF THE SAME. IN THE EVENT A DEFECT DEVELOPS OR IS DISCOVERED AFTER COMPLETION OF SUCH WORK BY COMPANY OR SUCH OTHER CONTRACTORS, CONTRACTOR SHALL IMMEDIATELY REPORT TO COMPANY IN WRITING SUCH DEFECT. ANY CONTROVERSY WHICH MAY DEVELOP BETWEEN ANY TWO OR MORE CONTRACTORS WITH RESPECT TO WHETHER OR NOT WORK HAS BEEN PROPERLY EXECUTED WILL BE DETERMINED BY COMPANY WHOSE DECISION WILL BE FINAL AND BINDING UPON ALL PARTIES. SIMILAR PROVISIONS WILL BE INCLUDED IN COMPANY'S CONTRACTS FOR OTHER WORK IN THE AREA. AT REGULAR INTERVALS OR

AT SUCH TIMES AND PLACES AS COMPANY'S DESIGNATED ENGINEER MAY DIRECT, MEETINGS SHALL BE HELD OF THE VARIOUS CONTRACTORS AND SUBCONTRACTORS ENGAGED IN THE PROJECT FOR THE PURPOSE OF FURTHERING THE PROGRESS OF THE WORK. WHERE CONTRACTORS OR THEIR REPRESENTATIVES FAIL TO ATTEND SUCH MEETINGS OR TO EXECUTE ORDERS GIVEN THEM, SUCH REPRESENTATIVES SHALL BE DISMISSED BY SAID DESIGNATED ENGINEER; AND OTHER REPRESENTATIVES SHALL BE IMMEDIATELY SUBSTITUTED, OR WHEN APPROPRIATE IN THE OPINION OF COMPANY, THE CONSTRUCTION AGREEMENT MAY BE TERMINATED. 7. INSPECTION: COMPANY SHALL AT ALL TIMES HAVE THE RIGHT TO INSPECT THE WORK WHEREVER IT IS IN PREPARATION OR PROGRESS TO DETERMINE IF THE SAME IS IN ACCORDANCE WITH THE CONTRACT DOCUMENTS AND TO EVALUATE THE WORK IN CONNECTION WITH PAYMENTS, AND CONTRACTOR SHALL PROVIDE SAFE AND PROPER FACILITIES FOR ACCESS AND INSPECTION. WHEN WORK IS BEING DONE AWAY FROM THE PREMISES, CONTRACTOR SHALL GIVE COMPANY'S DESIGNATED ENGINEER REASONABLE NOTICE OF THE TIME AND PLACE WHERE SUCH WORK IS TO BE DONE AND ALSO WHEN THE SAME WILL BE AVAILABLE FOR INSPECTION, SO THAT COMPANY'S DESIGNATED ENGINEER MAY, IF HE SO DESIRES, INSPECT THE SAME FROM TIME TO TIME BEFORE DELIVERY TO THE PREMISES. IF COMPANY'S DESIGNATED ENGINEER DEEMS IT INEXPEDIENT TO CORRECT WORK DAMAGED OR NOT DONE IN ACCORDANCE WITH THE CONTRACT DOCUMENTS, AN EQUITABLE DEDUCTION SHALL BE MADE FROM THE PRICE. NO FAILURE OF COMPANY'S DESIGNATED ENGINEER DURING THE PROGRESS OF THE WORK TO DISCOVER OR REJECT MATERIALS OR WORK NOT IN ACCORDANCE WITH THE CONTRACT DOCUMENTS SHALL BE DEEMED AN ACCEPTANCE THEREOF OR A WAIVER OF DEFECTS THEREIN. 8. PROTECTION OF WORK AND MATERIALS: FROM THE COMMENCEMENT TO THE COMPLETION OF EVERY PART OF THE WORK, ALL WORK AND MATERIALS UPON OR NEAR THE PREMISES, WHETHER OR NOT INCORPORATED INTO THE WORK, SHALL BE DEEMED TO BE AND SHALL BE THE PROPERTY OF COMPANY. HOWEVER, SUCH MATERIALS SHALL BE IN THE CARE, CUSTODY, AND CONTROL OF CONTRACTOR, AND IT SHALL BE THE RESPONSIBILITY OF CONTRACTOR TO PROTECT AND PRESERVE THE SAME. CONTRACTOR SHALL BE RESPONSIBLE FOR ANY SUCH MATERIAL WHICH IS LOST, STOLEN, DAMAGED, DESTROYED, OR INJURED RESULTING FROM CONTRACTOR'S FAILURE TO PROTECT THE PROPERTY, INCLUDING BUT NOT LIMITED TO DIRECT LOSS FROM WEAR, GRADUAL DETERIORATION AND CHANGES IN TEMPERATURE. 9. REPORTING ACCIDENTS: CONTRACTOR SHALL IMMEDIATELY REPORT TO COMPANY'S DESIGNATED ENGINEER ALL ACCIDENTS AND INJURIES IN ANY WAY RELATED TO CONTRACTOR'S OR ANY SUBCONTRACTOR'S OPERATIONS ON THE PREMISES. IN THOSE CASES WHERE ACCIDENT REPORTS ARE FURNISHED TO LOCAL AND/OR STATE BUREAUS, AS APPLICABLE, CONTRACTOR SHALL ALSO FURNISH A COPY TO COMPANY'S DESIGNATED ENGINEER. CONTRACTOR SHALL INCLUDE ITS OWN STATISTICS AND STATISTICS ON ITS SUBCONTRACTORS IN ITS MAN HOURS WORKED SUBMISSIONS TO COMPANY'S CONSULTANT ISNETWORLD. 10. SAFETY DEVICES: CONTRACTOR SHALL EQUIP THE WORK COVERED BY THE CONTRACT DOCUMENTS WITH ALL PROPER SAFETY DEVICES FOR THE PROTECTION OF WORKMEN AND SHALL PROVIDE SUITABLE, REMOVABLE SAFETY GUARDS FOR ALL EXPOSED MOVING PARTS, SUCH AS GEARS, ROLLER CHAINS, BELTS, BRAKE WHEELS, COUPLINGS, AND THE LIKE. CONTRACTOR WARRANTS THAT THE COMPLETED WORK WILL MEET THE OPERATING REQUIREMENTS OF, AND BE IN CONFORMITY WITH ANY AND ALL APPLICABLE FEDERAL, STATE, AND LOCAL LAWS, RULES, REGULATIONS, AND ORDINANCES. ALL SIDE-BOOM DOZERS FOR PIPELINE PROJECTS MUST BE EQUIPPED WITH ROLLOVER PROTECTION. 11. FAIR LABOR STANDARDS ACT: CONTRACTOR AGREES TO PAY THE PERSONS EMPLOYED BY IT AND TO REQUIRE EACH SUBCONTRACTOR TO PAY THE PERSONS EMPLOYED BY IT IN PERFORMING THE CONSTRUCTION AGREEMENT IN ACCORDANCE WITH THE REQUIREMENTS OF THE FAIR LABOR STANDARDS ACT OF 1938, AS AMENDED, AND TO KEEP ALL SUCH RECORDS AS ARE REQUIRED BY SUCH ACT. CONTRACTOR CERTIFIES THAT ALL GOODS NOW IN ITS POSSESSION, WHICH ARE TO BE USED IN CARRYING OUT THE PROVISIONS OF THE CONSTRUCTION AGREEMENT, WERE PRODUCED IN COMPLIANCE WITH ALL THE APPLICABLE REQUIREMENTS OF SECTIONS 6, 7, AND 12 OF THE FAIR LABOR STANDARDS ACT OF 1938, AS AMENDED, AND OF REGULATIONS AND ORDERS OF THE ADMINISTRATOR OF THE WAGE AND HOUR DIVISION ISSUED UNDER SECTION 14 THEREOF. CONTRACTOR AGREES THAT AT THE TIME GOODS NOT NOW IN ITS POSSESSION ARE FURNISHED TO COMPANY IN CARRYING OUT THE PROVISIONS OF THE CONSTRUCTION AGREEMENT, IT WILL FURNISH COMPANY WITH SIMILAR CERTIFICATIONS OF COMPLIANCE WITH RESPECT TO SUCH GOODS. 12. WORKABLE SYSTEM: ALL INSTALLATIONS SHALL BE MADE SUCH THAT THE COMPONENT PARTS WILL FUNCTION TOGETHER AS A WORKABLE SYSTEM, COMPLETE WITH ALL ACCESSORIES NECESSARY FOR ITS OPERATION, AND SHALL BE LEFT WITH ALL EQUIPMENT PROPERLY ADJUSTED AND IN WORKING ORDER. THE WORK SHALL BE EXECUTED IN CONFORMITY WITH BEST PRACTICE AND SO AS TO CONTRIBUTE TO THE EFFICIENCY OF OPERATION, MINIMUM MAINTENANCE, ACCESSIBILITY, AND APPEARANCE, AND SO THAT THE INSTALLATION WILL CONFORM AND ACCOMMODATE ITSELF TO THE BUILDING STRUCTURE, BUILDING AND PROCESS EQUIPMENT, AND USAGE. 13. TURNKEY: IF THE TERM "TURNKEY" OR "TURNKEY CONTRACT" IS USED IN THE CONTRACT DOCUMENTS (AND SUCH TERM IS NOT MODIFIED OR OTHERWISE DEFINED), IT SHALL MEAN THAT CONTRACTOR FOR THE CONSIDERATION STATED, SHALL FURNISH ALL MATERIALS AND LABOR AND DO ALL WORK REQUIRED TO COMPLETE THE FACILITY IN A WORKMANLIKE MANNER, PUT THE FACILITY TO USE OR INTO PRODUCTION, AND TURN IT OVER TO COMPANY TESTED AND READY TO "TURN THE KEY". CONTRACTOR SHALL MAKE SUFFICIENT TEST RUNS TO DETERMINE THAT THE FACILITY MEETS THE STANDARDS SET FORTH IN THE CONTRACT DOCUMENTS AND SHALL BE RESPONSIBLE FOR ANY ADJUSTMENTS WHICH MAY BE NECESSARY DURING THE FIRST YEAR OF OPERATION TO ASSURE THAT THE FACILITY PERFORMS IN ACCORDANCE WITH SAID STANDARDS. 14. HAZARDS: CONTRACTOR SHALL ANTICIPATE THE HAZARDS OF INCLEMENT

WEATHER, FLOOD WATER CONDITIONS, AND THE GENERAL RISKS OF THIS TYPE OF CONSTRUCTION TO THE END THAT PERSONNEL AND PROPERTY WILL BE PROTECTED AND THE INCIDENTAL HINDRANCES AND DELAYS WILL NOT JEOPARDIZE THE COMPLETION ON SCHEDULE. IT IS UNDERSTOOD AND MUTUALLY AGREED THAT ANY UNUSUAL EXPENDITURE FOR PROTECTIVE EQUIPMENT AND OPERATION SHALL BE PROVIDED FOR IN THE CONTRACT PRICE. WHILE ON COMPANY'S PROPERTY, CONTRACTOR, ITS EMPLOYEES, AGENTS, AND SUBCONTRACTORS, SHALL COMPLY WITH ALL RULES, DIRECTIVES, POSTED SIGNS, AND BULLETINS RELATING TO HAZARD AVOIDANCE AND SAFE WORK PRACTICES. 15. USE OF COMPLETED PORTION: COMPANY SHALL HAVE THE RIGHT TO TAKE POSSESSION OF AND USE ANY COMPLETED OR PARTIALLY COMPLETED PORTIONS OF THE WORK, WHETHER OR NOT THE TIME FOR COMPLETING THE ENTIRE WORK OR SUCH PORTIONS MAY HAVE EXPIRED, BUT SUCH TAKING POSSESSION AND USE SHALL NOT BE DEEMED AN ACCEPTANCE OF ANY WORK NOT COMPLETED IN ACCORDANCE WITH THE CONTRACT DOCUMENTS. IF SUCH PRIOR USE INCREASES THE COST OF OR DELAYS THE WORK, CONTRACTOR SHALL BE ENTITLED TO SUCH EXTRA COMPENSATION AND/OR EXTENSION OF TIME AS COMPANY'S DESIGNATED ENGINEER MAY DETERMINE. 16. SUPERINTENDENCE: CONTRACTOR SHALL CAUSE THE WORK TO BE SUPERVISED AT ALL TIMES BY A JOB SUPERINTENDENT. IF THE JOB SUPERINTENDENT PROVES UNSATISFACTORY TO COMPANY, HE SHALL BE PROMPTLY REPLACED UPON REQUEST OF COMPANY. 17. HOUSEKEEPING: CONTRACTOR SHALL STORE MATERIALS AND EQUIPMENT IN AN ORDERLY MANNER AND SHALL KEEP THE PREMISES AT ALL TIMES IN A CLEAN AND SANITARY CONDITION, FREE FROM DEBRIS AND OBSTRUCTIONS. UPON COMPLETION OF THE WORK, CONTRACTOR SHALL REMOVE ALL TEMPORARY BUILDINGS OR FACILITIES ERECTED BY CONTRACTOR AND ITS SUBCONTRACTORS, ALL CONSTRUCTION EQUIPMENT, SURPLUS MATERIALS, AND SUPPLIES BELONGING TO CONTRACTOR OR SUBCONTRACTORS, AND SHALL LEAVE THE PREMISES AND THE WORK IN PERFECT ORDER, CLEAN, SANITARY, AND READY FOR USE. 18. WAIVER OF BREACH: ANY FAILURE BY COMPANY AT ANY TIME, OR FROM TIME TO TIME, TO ENFORCE OR REQUIRE PERFORMANCE IN ACCORDANCE WITH THE STRICT CONDITIONS OF THE CONTRACT DOCUMENTS, SHALL NOT CONSTITUTE A WAIVER BY COMPANY OF ANY BREACH OF ANY SUCH TERMS OR CONDITIONS AND SHALL NOT AFFECT OR IMPAIR SUCH TERMS OR CONDITIONS IN ANY WAY, OR THE RIGHT OF COMPANY AT ANY TIME TO AVAIL ITSELF OF SUCH REMEDIES AS IT MAY HAVE FOR ANY SUCH BREACH OR BREACHES OF SUCH TERMS OR CONDITIONS. 19. TIME OF THE ESSENCE; SCHEDULES, FORCE MAJEURE: UNLESS SPECIFICALLY WAIVED BY COMPANY IN WRITING, ALL TIMES FOR PERFORMANCE BY CONTRACTOR WHETHER SPECIFIED IN ARTICLE 3 OF THE CONSTRUCTION AGREEMENT, IN THIS CLAUSE OR ELSEWHERE IN THE CONTRACT DOCUMENTS SHALL BE OF THE ESSENCE. IT IS UNDERSTOOD AND AGREED THAT THE SCHEDULING, COMPLETION, AND DELIVERY OF THE WORK HEREUNDER SHALL BE FACILITATED THROUGH THE USE OF THE PRECEDENCE DIAGRAM, CRITICAL PATH, PERT, OR OTHER METHOD AGREEABLE TO COMPANY. CONTRACTOR AGREES TO FURNISH COMPANY A COMPLETE CHART OF THE WORK SCHEDULE PREPARED BY SUCH METHOD AND TO PROMPTLY ADVISE COMPANY OF ANY TIME THE WORK FALLS MORE THAN ONE WEEK BEHIND SCHEDULE. IN THE EVENT THE WORK IS, AT ANY TIME, MORE THAN ONE WEEK BEHIND, CONTRACTOR AGREES TO ADD, AT ITS OWN EXPENSE, SUFFICIENT MAN-HOURS, MATERIAL, MACHINERY, SUPPLIES, AND EQUIPMENT SO THAT WITHIN ONE WEEK THE WORK WILL BE RETURNED TO ITS SCHEDULED TIME. IN THE EVENT ALL WORK IS NOT COMPLETED ON OR BEFORE THE AGREED COMPLETION DATE AS SET FORTH IN THE CONSTRUCTION AGREEMENT, THE CONTRACTOR SHALL BEAR ALL ESCALATION COSTS RELATING TO MATERIAL AND/OR LABOR WAGE RATES INCURRED SUBSEQUENT TO THE COMPLETION DATE. SHOULD THE PROGRESS OF THE WORK BE UNDULY DELAYED DUE TO NEGLIGENCE OR DEFAULT ON THE PART OF COMPANY, STRIKES AT THE JOB SITE OR IN THE SHOPS OF A SUPPLIER, FIRE, FLOODS, ACTS OF GOVERNMENT, ACTS OF GOD, OR ANY UNPREVENTABLE ACCIDENT, CONTRACTOR SHALL HAVE THE RIGHT TO CLAIM EXTENSION OF THE AGREED COMPLETION DATE; PROVIDED, HOWEVER, THAT ANY SUCH CLAIM SHALL NOT BE HONORED UNLESS NOTICE THEREOF IS DELIVERED IN WRITING TO COMPANY'S DESIGNATED ENGINEER; NOR SHALL ANY EXTENSION BE GRANTED FOR ANY PERIOD OF DELAY OCCURRING MORE THAN 72 HOURS PRIOR TO THE TIME COMPANY RECEIVES NOTICE OF THE CLAIM. 20. DISCRIMINATION CLAUSE EXECUTIVE ORDER 11246, DATED SEPTEMBER 24, 1965: THE ARTICLES, MATERIALS, AND/OR SERVICES COVERED BY THIS ORDER ARE TO BE PRODUCED, FURNISHED, AND BILLED IN COMPLIANCE WITH ALL APPLICABLE LAWS, PROCLAMATIONS, ORDERS, RULES, AND REGULATIONS, INCLUDING WITHOUT LIMITATION, EXECUTIVE ORDER 11246, SIGNED BY THE PRESIDENT OF THE UNITED STATES OF AMERICA ON SEPTEMBER 24, 1965, AS AMENDED, AND THE RULES, REGULATIONS, AND ORDERS ISSUED THEREUNDER. DURING THE PERFORMANCE OF THE CONSTRUCTION AGREEMENT, AND TO THE EXTENT REQUIRED BY EXECUTIVE ORDER 11246, OR BY ANY CONTRACT BETWEEN COMPANY AND ANY GOVERNMENT CONTRACTING AGENCY, THE CONTRACTOR AGREES AS FOLLOWS: CONTRACTOR SHALL NOT DISCRIMINATE AGAINST ANY EMPLOYEE OR APPLICANT FOR EMPLOYMENT BECAUSE OF RACE, CREED, SEX, RELIGION, COLOR, OR NATIONAL ORIGIN. CONTRACTOR WILL TAKE AFFIRMATIVE ACTION TO ENSURE THAT APPLICANTS ARE EMPLOYED AND THAT EMPLOYEES ARE TREATED, DURING EMPLOYMENT WITHOUT REGARD TO THEIR RACE, CREED, SEX, RELIGION, COLOR, OR NATIONAL ORIGIN. SUCH ACTION SHALL INCLUDE, BUT NOT BE LIMITED TO THE FOLLOWING: EMPLOYMENT, UPGRADING, DEMOTION OR TRANSFER, RECRUITMENT OR RECRUITMENT ADVERTISING, LAYOFF OR TERMINATION, RATES OF PAY OR OTHER FORMS OF COMPENSATION AND SELECTION FOR TRAINING, INCLUDING APPRENTICESHIP. CONTRACTOR AGREES TO POST IN CONSPICUOUS PLACES, AVAILABLE TO EMPLOYEES AND APPLICANTS FOR EMPLOYMENT, NOTICES TO BE PROVIDED BY THE CONTRACTING OFFICER SETTING FORTH THE PROVISIONS OF THIS NON-DISCRIMINATION CLAUSE. CONTRACTOR SHALL, IN ALL SOLICITATIONS OR ADVERTISEMENTS FOR EMPLOYEES PLACED BY OR ON BEHALF OF CONTRACTOR, STATE THAT ALL

Order No.: 4700577826
Date Of Print: 30-Jul-2020 07:36:17 PM
Buyer: Trading Number: SCHC86CHC86CHC86CHC86CHC86CHC
SHIP: APPLIED CONSTRUCTION SOLUTIONS INC

QUALIFIED APPLICANTS WILL RECEIVE CONSIDERATION FOR EMPLOYMENT WITHOUT REGARD TO RACE, CREED, SEX, RELIGION, COLOR, OR NATIONAL ORIGIN. CONTRACTOR SHALL SEND TO EACH LABOR UNION OR REPRESENTATIVE OF WORKERS WITH WHICH IT HAS A COLLECTIVE BARGAINING AGREEMENT OR OTHER CONTRACT OR UNDERSTANDING, A NOTICE TO BE PROVIDED BY THE AGENCY CONTRACTING OFFICE, ADVISING THE LABOR UNION OR WORKERS' REPRESENTATIVE OF CONTRACTOR'S COMMITMENTS UNDER SECTION 202 OF EXECUTIVE ORDER 11246 OF SEPTEMBER 24, 1965, AND SHALL POST COPIES OF THE NOTICE IN CONSPICUOUS PLACES AVAILABLE TO EMPLOYEES AND APPLICANTS FOR EMPLOYMENT. CONTRACTOR SHALL COMPLY WITH ALL PROVISIONS OF EXECUTIVE ORDER 11246 OF SEPTEMBER 24, 1965, AND OF THE RULES, REGULATIONS, AND RELEVANT ORDERS OF THE SECRETARY OF LABOR. CONTRACTOR SHALL FURNISH ALL INFORMATION AND REPORTS REQUIRED BY EXECUTIVE ORDER 11246 OF SEPTEMBER 24, 1965, AND BY THE RULES, REGULATIONS, AND ORDERS OF THE SECRETARY OF LABOR, OR PURSUANT THERETO, AND SHALL PERMIT ACCESS TO ITS BOOKS, RECORDS, AND ACCOUNTS BY THE CONTRACTING AGENCY AND THE SECRETARY OF LABOR FOR PURPOSES OF INVESTIGATION TO ASCERTAIN COMPLIANCE WITH SUCH RULES, REGULATIONS, AND ORDERS. IN THE EVENT OF THE CONTRACTOR'S NON-COMPLIANCE WITH THE NON-DISCRIMINATION CLAUSES SET FORTH HEREIN OR WITH ANY SUCH RULES, REGULATIONS, OR ORDERS, THE CONSTRUCTION AGREEMENT MAY BE CANCELED, TERMINATED, OR SUSPENDED IN WHOLE OR IN PART, AND THE CONTRACTOR MAY BE DECLARED INELIGIBLE FOR FURTHER GOVERNMENT CONTRACTS IN ACCORDANCE WITH PROCEDURES AUTHORIZED IN EXECUTIVE ORDER 11246 OF SEPTEMBER 24, 1965, AND SUCH OTHER SANCTIONS MAY BE IMPOSED AND REMEDIES INVOKED AS PROVIDED IN EXECUTIVE ORDER 11246 OF SEPTEMBER 24, 1965, OR BY RULE, REGULATION, OR ORDER OF THE SECRETARY OF LABOR, OR AS OTHERWISE PROVIDED BY LAW. CONTRACTOR SHALL INCLUDE THE PROVISIONS OF THE PRECEDING PARAGRAPHS IN EVERY SUBCONTRACT OR PURCHASE ORDER UNLESS EXEMPTED BY RULES, REGULATIONS, OR ORDER OF THE SECRETARY OF LABOR ISSUED PURSUANT TO SECTION 204 OF EXECUTIVE ORDER 11246 OF SEPTEMBER 24, 1965, SO THAT SUCH PROVISIONS WILL BE BINDING UPON EACH SUBCONTRACTOR OR VENDOR. CONTRACTOR SHALL TAKE SUCH ACTION WITH RESPECT TO ANY SUBCONTRACT OR PURCHASE ORDER AS THE CONTRACTING AGENCY MAY DIRECT AS A MEANS OF ENFORCING SUCH PROVISIONS INCLUDING SANCTIONS FOR NON-COMPLIANCE. PROVIDED HOWEVER, THAT IN THE EVENT CONTRACTOR BECOMES INVOLVED IN, OR IS THREATENED WITH, LITIGATION WITH A SUBCONTRACTOR OR VENDOR AS A RESULT OF SUCH DIRECTION BY THE CONTRACTING AGENCY, CONTRACTOR MAY REQUEST THE UNITED STATES TO ENTER INTO SUCH LITIGATION TO PROTECT THE INTERESTS OF THE UNITED STATES. TO THE EXTENT REQUIRED BY EXECUTIVE ORDER 11246 AND ANY RULES OR REGULATIONS OR ORDERS ISSUED THEREUNDER, OR ANY CONTRACTS BETWEEN COMPANY AND ANY GOVERNMENT CONTRACTING AGENCY, CONTRACTOR AGREES TO DEVELOP, SIGN, AND MAINTAIN A WRITTEN AFFIRMATIVE ACTION COMPLIANCE PROGRAM FOR EACH OF ITS ESTABLISHMENTS AND TO FILE COMPLETE AND ACCURATE REPORTS ON STANDARD FORM 100 (EEO1), OR SUCH FORM AS MAY BE PROMULGATED IN ITS PLACE. 21. SUBSTANCE ABUSE: CONTRACTOR, ITS EMPLOYEES, AGENTS, AND SUBCONTRACTORS MUST HAVE A DRUG AND ALCOHOL TESTING PROGRAM THAT SHALL, AT A MINIMUM, MEET THE REQUIREMENTS SET FORTH IN THE ATTACHED EXHIBIT E. CONTRACTOR IS RESPONSIBLE FOR COMPLIANCE BY ITS EMPLOYEES, AGENTS, AND SUBCONTRACTORS WITH SUCH SUBSTANCE ABUSE REQUIREMENTS. CONTRACTOR SHALL ENSURE THAT NONE OF ITS EMPLOYEES OR AGENTS, OR THE EMPLOYEES OR AGENTS OF ANY SUBCONTRACTOR, SHALL EITHER POSSESS OR USE ALCOHOLIC BEVERAGES, ILLEGAL DRUGS OR DRUG PARAPHERNALIA WHILE ON COMPANY'S PROPERTY OR COME ONTO COMPANY'S PROPERTY WHILE UNDER THE INFLUENCE OF ALCOHOL OR ILLEGAL DRUGS. COMPANY SHALL HAVE THE RIGHT TO EJECT FROM COMPANY'S PROPERTY ANY PERSON WHO IS INTOXICATED OR UNDER THE INFLUENCE OF ILLEGAL DRUGS OR WHO HAS IN HIS POSSESSION, WHILE ON COMPANY PROPERTY, ANY ALCOHOLIC BEVERAGE OR ILLEGAL DRUG OR DRUG PARAPHERNALIA. 22.PERSONAL PROTECTIVE EQUIPMENT REQUIREMENTS: CONTRACTOR, ITS EMPLOYEES, AGENTS, AND SUBCONTRACTORS MUST COMPLY WITH THE PERSONAL PROTECTIVE EQUIPMENT REQUIREMENTS ATTACHED TO THIS CONTRACT AS EXHIBIT F. CONTRACTOR IS RESPONSIBLE FOR COMPLIANCE BY ITS EMPLOYEES, AGENTS, AND SUBCONTRACTORS WITH COMPANY'S PERSONAL PROTECTIVE EQUIPMENT REQUIREMENTS. IF REQUIRED ON A PROJECT BY PROJECT BASIS, CONTRACTOR WILL PROVIDE A FULL TIME SAFETY SUPERVISOR FOR PROJECT. EXHIBIT A - COST BREAKDOWN OF PROJECT SCOPE OF WORK (INSERT OR LIST LINE ITEMS) Line Item Description Unit Qty. Unit Cost 1 Mob/Demob Subtotal 1.1 Mobilization LS 1 $525,000 1.2 Demobilization LS 1 $55,000 2 Civil / Structural 2.1 Survey Support LS 1 $23,000 2.2 Foundations for 72" Horizontal Type Slug Catchers ea. 2 $3,506 2.3 Foundations for Filter Separators (42" & 48") ea. 5 $16,836 2.4 Foundations for 72" Contact Tower ea. 2 $28,175 2.5 Foundations for 3608 Engine & Compressor ea. 5 $255,128 2.6 Foundations for 3608 Engine & Compressor ea. 1 $713,345 2.7 Foundations for Glycol Regenerator and Thermal Oxidizer ea. 1 $563 ,385 2.8 Compressor Building Foundations LS 1 $0.2 9 Foundations for MCC Building & Instrument Air Budling LS 1 $104 ,880 2.10 Foundations for Generator ea. 1 $28,680 2.11 Pipe supports & racks and foundations LS 1 $86,940 2.12 Cable Trays and foundations LS 1 $144,900 2.13 Excavation and Backfill for steel pipe LS 1 $0 2.14 Excavation and backfill for electrical conduits LS 1 $0 2.15 Flowable Fill for electrical conduits & below grade pipe LS 1 $0 2.16 Below Grade Sleepers LS 1 $0 2.17 Misc. Foundations - Bollards, Stair Pads, Sonotubes, Light poles, Equipment Racks, etc., LS 1 $11,500 2.18 Filter Separator Platforms - Material/Fabrication/Installation LS 1 $0 2.19 Tank Sand Base and Containments LS 1 $186,472 2.20 Final Pad Grading including fabric and stone Installation LS 1 $0 2.21 Fence LS 1 $0 3 Mechanical 3,1 Off Loading and setting Filters & Slug Catcher LS 1 $150,000 3.2 Off Loading and setting Contact Tower , Regen. & Thermal Oxidizer LS 1 $200,000 3.3 Off Loading and setting Compressors LS 1 $800,000 3.4 Off Loading and setting MCC Building, Air Building, and Generator LS 1 $100,000 3.5 Fabrication, Testing, and Coating of

pipe/valves/fittings that are 2" and smaller ND LS 1 $290,000 3.6 Fabrication, Testing, and Coating of pipe/valves/fittings that are greater than 2" ND LS 1 $700,000 3.7 Installation of pipe/valves/fittings that are 2" and smaller ND LS 1 $500,000 3.8 Installation of pipe/valves/fittings that are greater than 2" ND LS 1 $2,400,000 3.9 Field Hydro testing - Includes Drying on Discharge Lines,Fuel Gas, and Instrument Air LS 1 $400,000 3.10 Compressor Unit Assembly - Assitance from Packager will be provided LS 1 $980,000 3.11 Installation of ALL Instrumentation, SS tubing, Vessel Aux Kits, Misc. piping/tubing LS 1 $400,000 3.12 Insulation - Material & Installation LS 1 $407,016 3.13 Supply of pipe/valves/fittings 2" and smaller ND and ALL SS tubing LS 1 $0 3.14 Supply of ALL studs, nuts, bolts, gaskets, and insulating flange kits LS 1 $0 3.15 Commissioning Support LS 1 $80,000 . 4 Electrical Subtotal 4.1 Supply conduit , conduit & electrical materials LS 1 $347,394 4.2 Installation of conduit and cable LS 1 $567,256 4.3 Terminations LS 1 $57,893 4.4 Supply of ALL grounding material LS 1 $40,655 4.5 Installation of grounding system LS 1 $89,663 4.6 Testing grounding system LS 1 $2,115 4.7 Supply of ALL Cathodic Protection material LS 1 $0 4.8 Installation of Cathodic Protection system LS 1 $0 4.9 Provide and Install Heat Trace LS 1 $42,248 4.10 Provide and Install Yard Lights LS 1 5 Additional Cost (TO BE COMPLETED BY CONTRACTOR IF NECESARRY/APPLICABLE) Subtotal 5.1 LS 1 $0 5.2 LS 1 $0 5.3 LS 1 $0 5.4 LS 1 $0 5.5 LS 1 $0 EXHIBIT B-1 PARTIAL WAIVER OF LIEN - CONTINGENT STATE OF _____ COUNTY OF TO WHOM IT MAY CONCERN: WHEREAS THE UNDERSIGNED (NAME OF PARTY)
OF (NAME OF CONTRACTOR/SUPPLIER) _____
_____ AT (STREET)
_____ (CITY)
(STATE) _____ (ZIP) _____ BEING FIRST DULY SWORN THAT HE/SHE IS THE _____ OF
_____ (HEREIN AFTER REFERRED TO AS THE "COMPANY") AND IS FAMILIAR WITH THE WORK/MATERIALS PERFORMED OR SUPPLIED TO THE PREMISES KNOWN AS
_____ (HEREIN AFTER REFERRED TO AS THE "PREMISES". THE UNDERSIGNED, PENDING THE RECEIPT OF THE SUM OF $ _____ AND OTHER GOOD AND VALUABLE CONSIDERATION, THE RECEIPT WHEREOF IS HEREBY ACKNOWLEDGED, DOES HEREBY WAIVE AND RELEASE ANY AND ALL LIENS, RIGHTS OF LIENS, CLAIMS OR DEMANDS WITH RESPECT TO SAID PREMISES, ON ACCOUNT OF SAID LABOR OR MATERIAL, OR BOTH, FURNISHED UNDER CONTRACT BY THE UNDERSIGNED TO OR ON ACCOUNT OF
_____ FOR SAID PREMISES. THE UNDERSIGNED FURTHER WARRANTS THAT ALL LABORERS EMPLOYED BY THEM UPON THE AFORESAID PREMISES HAVE BEEN FULLY PAID TO THE EXTENT OF THIS RELEASE AND THAT ALL SUPPLIES OF MATERIALS FROM THE SUPPLIERS HAVING ANY CLAIM, DEMAND, OR LIEN AGAINST SAID PREMISES, AND FURTHER, THAT NO CHATTEL MORTGAGE, CONDITIONAL BILL OF SALE OR RETENTION OF TITLE AGREEMENT HAS BEEN GIVEN OR EXECUTED FOR OR IN CONNECTION WITH ANY MATERIAL (S), APPLIANCES, MACHINERY,FIXTURES OR FURNISHINGS AND/OR SERVICES PLACED OR INSTALLED IN THE AFORESAID PREMISES. SIGNED THE _____ DAY OF, _____ IN
_____ THE STATE OF _____ COUNTY OF _____
_____ NAME OF CONTRACTOR/SUPPLIER
_____ AUTHORIZED REPRESENTATIVE
_____ NOTARY MY COMMISSION EXPIRES
_____ TITLE EXHIBIT B-2 PARTIAL WAIVER OF LIEN - NON-CONTINGENT STATE OF _____ COUNTY OF TO WHOM IT MAY CONCERN: WHEREAS THE UNDERSIGNED (NAME OF PARTY)
_____ OF (NAME OF
CONTRACTOR/SUPPLIER _____ AT
(STREET) _____ (CITY)
_____ (STATE) _____ (ZIP) _____ BEING FIRST DULY SWORN THAT HE/SHE IS THE _____ OF
_____ (HEREIN AFTER REFERRED TO AS THE "COMPANY") AND IS FAMILIAR WITH THE WORK/MATERIALS PERFORMED OR SUPPLIED TO THE PREMISES KNOWN AS
_____ (HEREIN AFTER REFERRED TO AS THE "PREMISES". THE UNDERSIGNED, FOR AND IN CONSIDERATION OF THE SUM OF $ _____ AND OTHER GOOD AND VALUABLE CONSIDERATION, THE RECEIPT WHEREOF IS HEREBY ACKNOWLEDGED, DOES HEREBY WAIVE AND RELEASE ANY AND ALL LIENS, RIGHTS OF LIENS, CLAIMS OR DEMANDS WITH RESPECT TO SAID PREMISES, ON ACCOUNT OF SAID LABOR OR MATERIAL, OR BOTH, FURNISHED UNDER CONTRACT BY THE UNDERSIGNED TO OR ON ACCOUNT OF
_____ FOR SAID PREMISES. THE UNDERSIGNED FURTHER WARRANTS THAT ALL LABORERS EMPLOYED BY THEM UPON THE A FORESAID PREMISES HAVE BEEN FULLY PAID TO THE EXTENT OF THIS RELEASE AND THAT ALL SUPPLIES OF MATERIALS FROM THE SUPPLIERS HAVING ANY CLAIM, DEMAND, OR LIEN AGAINST SAID PREMISES, AND FURTHER, THAT NO CHATTEL MORTGAGE, CONDITIONAL BILL OF SALE OR RETENTION OF TITLE AGREEMENT HAS BEEN GIVEN OR EXECUTED FOR OR IN CONNECTION WITH ANY MATERIAL (S),APPLIANCES,MACHINERY,FIXTURES OR FURNISHINGS AND/OR SERVICES PLACED OR INSTALLED IN THE AFORESAID PREMISES. SIGNED THE _____ DAY OF, _____ IN THE STATE OF _____, COUNTY OF NAME OF CONTRACTOR/SUPPLIER _____
AUTHORIZED REPRESENTATIVE _____ NOTARY MY COMMISSION EXPIRES _____ TITLE EXHIBIT B-3 FINAL WAIVER OF LIEN STATE OF _____ COUNTY OF TO WHOM IT MAY CONCERN: WHEREAS THE UNDERSIGNED (NAME OF PARTY)
_____ OF (NAME OF
CONTRACTOR/SUPPLIER _____ AT
(STREET) _____ (CITY)
_____ (STATE) _____ (ZIP) _____ BEING FIRST DULY SWORN THAT HE/SHE IS THE _____ OF

Order No.: 4700577424
Date Of Print: 30-JUL-2020 07:36:17 PM
Buyer Tracking Number:0CHCBOBOBOHCBOHCBOHCHC
Seller: APPLIED CONSTRUCTION SOLUTIONS INC

(HEREIN AFTER REFERRED TO AS THE "COMPANY") AND IS FAMILIAR WITH THE WORK/MATERIALS PERFORMED OR SUPPLIED TO THE PREMISES KNOWN AS (HEREIN AFTER REFERRED TO AS THE "PREMISES", THE UNDERSIGNED, FOR AND IN CONSIDERATION OF THE ENTIRE CONTRACT SUM OF $ PENDING THE RECEIPT OF THE SUM OF AND OTHER GOOD AND VALUABLE CONSIDERATION DOES HEREBY WAIVE AND RELEASE ANY AND ALL LIENS, RIGHTS OF LIENS, CLAIMS OR DEMANDS WITH RESPECT TO SAID PREMISES, ON ACCOUNT OF SAID LABOR OR MATERIAL, OR BOTH, FURNISHED UNDER CONTRACT BY THE UNDERSIGNED TO OR ON ACCOUNT OF _____ FOR SAID PREMISES. THE UNDERSIGNED FURTHER WARRANTS THAT ALL LABORERS EMPLOYED BY THEM UPON THE AFORESAID PREMISES HAVE BEEN FULLY PAID TO THE EXTENT OF THIS RELEASE AND THAT ALL SUPPLIES OF MATERIALS FROM THE SUPPLIERS HAVING ANY CLAIM, DEMAND, OR LIEN AGAINST SAID PREMISES, AND FURTHER, THAT NO CHATTEL MORTGAGE, CONDITIONAL BILL OF SALE OR RETENTION OF TITLE AGREEMENT HAS BEEN GIVEN OR EXECUTED FOR OR IN CONNECTION WITH ANY MATERIAL (S), APPLIANCES, MACHINERY, FIXTURES OR FURNISHINGS AND/OR SERVICES PLACED OR INSTALLED IN THE AFORESAID PREMISES. SIGNED THE DAY OF _____ IN THE STATE OF _____ COUNTY OF _____ NOTARY MY COMMISSION EXPIRES _____

_____
AUTHORIZED REPRESENTATIVE
_____ TITLE
_____
NAME OF CONTRACTOR/SUPPLIER EXHIBIT C - INSURANCE Unless and until written notice is provided to Contractor by Company, all contracts entered into between Company and Contractor will be subject to this Exhibit C (Insurance) and this Exhibit C (Insurance) will be the same for all such contracts. Contractor shall obtain and maintain the following basic types and minimum amounts of insurance during the term of this Agreement: 1. Workers' Compensation and Employer's Liability a Coverage A - Statutory for states of operation b Coverage B - Employer's Liability with the following limits: $1,000,000 Bodily Injury $1,000,000 Bodily Injury by Disease $1,000,000 Bodily Injury by Disease (Aggregate) Broad form Employer's Liability endorsement required if performing services in WV. 2. Commercial General Liability a $1,000,000 per occurrence / $2,000,000 aggregate b Endorsement Include: i Premises / Operations ii Products and Completed Operations iii Blanket Contractual Liability iv Blowout and Cratering v Explosion, Collapse and Underground vi Time Element Pollution 3. Automobile Liability a $1,000,000 CSL (combined single limit) b Endorsements Include: i Any Auto - Symbol 1, or ii All Owned, Non-Owned and Hired iii MCS 90 Endorsement for FHWA and ICC Hazmat transport compliance iv $100,000 Cargo Insurance for transport of Company property 4. Excess or Umbrella Liability a $5,000,000 per occurrence / $5,000,000 aggregate b Endorsements Include: i Scheduling the underlying policies (CGL, Auto and EL) ii Premises/Operations iii Products and Completed Operations iv Blanket Contractual Liability v Blowout and Cratering vi Explosion, Collapse and Underground vii Time Element Pollution Contractual indemnity insurance providing coverage to Company Group for Contractor's indemnity obligation under Exhibit D indemnity hereof. The policies required herein above, other than coverage for Workers' Compensation and Employer's liability, shall explicitly (a) list Company and the Company Group as an additional insured, including coverage for Company's joint or concurrent negligence; (b) provide coverage to Company for claims made by the Contractor's employees; and (c) shall provide coverage to Company notwithstanding Contractor being afforded immunity from its employees' claims by reason of being a subscriber under the Workers Compensation Act. All of the above insurances shall be (i) primary and non-contributory; (ii) written on an occurrence basis; (iii) maintained without interruption from the date of this Agreement until the expiration or termination of this Agreement; and (iv) issued from a reputable insurance company with a minimum financial rating from a.m. best of A-, VII or better. The Commercial General Liability, Automobile Liability and Excess or Umbrella Liability insurance shall contain a waiver of subrogation against Company and each member of the Company Group. Contractor shall provide Company, prior to executing the Agreement hereunder, with either an endorsement to the policy naming CNX Resources Corporation, CNX Midstream Partners LP, their Affiliates, and Subsidiaries and their officers, directors and employees (the CNX Parties) as additional insured; or a certificate of insurance naming the CNX Parties as additional insured. If required by ISNetWorld, Contractor shall provide to ISNetWorld evidence in the form of copies of insurance endorsements or certificates of insurance establishing that the policies required herein above (other than coverage for Workers' Compensation and Employer's liability) include a blanket additional insured endorsement for contracts between Contractor and Company. Any ISNetworld contractor must provide the Certificate Holder listed as: CNX Resources Corporation, CNX Midstream Partners LP, their Affiliates, and Subsidiaries C/O ISNetworld All policy endorsements or applicable certificates shall evidence this coverage and these terms and shall provide written notice to Company at least thirty (30) days prior to the policies being canceled. Contractor shall be responsible for ensuring that all subcontractors are insured in accordance with the above insurance requirements while at the project site and/or performing any portion of the work. EXHIBIT D - INDEMNITY CONTRACTOR SHALL INDEMNIFY AND HOLD THE COMPANY, ITS PARENT, AFFILIATES AND SUBSIDIARY COMPANIES, THEIR SHAREHOLDERS, OFFICERS, DIRECTORS, AGENTS, REPRESENTATIVES, AND ALL THEIR EMPLOYEES (COMPANY GROUP), HARMLESS FROM THE PAYMENT OF ANY SUM OF MONEY WHATSOEVER (INCLUDING REASONABLE ATTORNEY'S FEES AND OTHER FEES AND EXPENSES INCURRED IN CONNECTION THEREWITH) ON ACCOUNT OF ANY LABOR, MECHANICS', MATERIALMEN'S OR OTHER LIENS AGAINST THE COMPANY'S PROPERTY BY REASON OF ANYTHING DONE OR FURNISHED IN ANY MANNER IN AID OF THE PERFORMANCE OF THE WORK UNDER THIS CONTRACT OR ANY PART THEREOF. CONTRACTOR AGREES TO AND SHALL INDEMNIFY AND DEFEND COMPANY GROUP FROM ANY AND ALL CLAIMS AND LIABILITY FOR PROPERTY DAMAGE, ENVIRONMENTAL DAMAGE OR DEGRADATION, AND/OR INJURY OR DEATH OF ANY PERSON, CAUSED, OR ALLEGED TO HAVE BEEN CAUSED, IN WHOLE OR IN PART, BY ANY CONDITION OF ANY PROPERTY UNDER THE USE OR CONTROL OF CONTRACTOR, BY ANY FAILURE OF CONTRACTOR, ITS EMPLOYEES, AGENTS, AND SUBCONTRACTORS, TO COMPLY WITH ANY APPLICABLE LAW/REGULATION, GOVERNMENTAL ORDER, OR PROVISION OF THIS CONTRACT, OR BY ANY OTHER CAUSE RELATED TO PERFORMANCE OF WORK UNDER THIS CONTRACT, INCLUDING THOSE CLAIMS AND LIABILITIES ALLEGED OR PROVEN TO INVOLVE COMPANY GROUP'S JOINT OR

CONCURRENT NEGLIGENCE. CONTRACTOR SHALL INDEMNIFY COMPANY PARTIES FOR CLAIMS MADE BY THE CONTRACTOR'S EMPLOYEES NOTWITHSTANDING CONTRACTOR BEING AFFORDED IMMUNITY FROM ITS EMPLOYEES' CLAIMS BY REASON OF BEING A SUBSCRIBER UNDER THE WORKERS COMPENSATION ACT. EXHIBIT E - DRUG AND ALCOHOL TESTING POLICY CNX RESOURCES CORPORATION CONTRACTOR AND SUB-CONTRACTOR DRUG & ALCOHOL TESTING POLICY In June of 2008, CNX RESOURCES CORPORATION (CNX) implemented a company-wide drug and alcohol testing program for all employees. CNX is committed to maintaining a safe, healthy and productive work environment that is free from the adverse effects of drugs and alcohol. The importance of work performed is such that the work environment at every location must be free from the adverse effects of drugs and alcohol. Due to the integral role contractors and sub-contractors play at CNX sites, CNX feels strongly that its contractors and sub-contractors share CNX's commitment to a drug and alcohol free workplace. This can be accomplished only by establishing drug and alcohol testing programs that maintain such an environment. CONTRACTOR AND SUB-CONTRACTOR DRUG & ALCOHOL REQUIREMENTS: 1. All contractors/sub-contractors must have an independent drug and alcohol testing program or belong to a consortium that complies with CNX requirements as well as applicable federal, state and local laws. 2. All contractors/sub-contractors having an independent drug and alcohol testing program must have a MEDICAL REVIEW OFFICER (MRO). A medical review officer is a licensed physician with the requisite knowledge, experience, training and qualifications, who is responsible for receiving and reviewing laboratory results generated by an employer's drug testing program and evaluating medical explanations for certain drug test results. 3. Drug and alcohol testing sample collection must be performed by a certified collector or a certified third party collector (TPA). 4. Analysis of urine samples must be performed by a Health and Human Services (HHS) / Substance Abuse and Mental Health Services Adm inistration (SAMHSA) CERTIFIED LAB in compliance with Title 49 CFR Part 40 (even for non-DOT-mandated drug and alcohol tests). 5. "Quick Tests" and/or "Rapid Tests" are NOT acceptable for Pre-employment, Reasonable Suspicion, and Random Testing. "Quick Tests" may be used for Post-Accident testing ONLY provided that all urine samples are sent to a certified lab for confirmation, and "Quick Tests" are acceptable per applicable state and federal laws. 6. All contractor/sub-contractor employee(s) whose drug and/or alcohol tests are verified POSITIVE by a medical review officer or refuse testing are NOT permitted to work at a CNX site now or anytime in the future The contractor will prevent any employee who fails testing under the program from working on a site owned or operated by CNX RESOURCES CORPORATION or any of its affiliates. 7. Contractors/sub-contractors currently testing under DOT regulations must test per DOT requirements/thresholds and must ALSO test under CNX's drug and alcohol requirements for Pre-Employment, Random, Post-Accident and Reasonable Suspicion. This may mean the administration of two tests to an employee under some circumstances. 8. All contractors are responsible for their sub-contractors' compliance with CNX's Contractor and Sub-contractor Drug & Alcohol Testing Policy requirements. 9. The contractor will make available to CNX, or its designee, upon request, certified laboratory results that prove the existence of a drug and alcohol testing program that complies with CNX requirements. TESTING REQUIREMENTS: 1. Pre-Employment/Pre-Access Testing: All contractor/sub-contractor employee(s) that will or may work at a CNX site are required to be tested prior to employment. An employee who is subject to pre-employment testing for drugs or alcohol under the DOT preemployment testing program must also be subject to CNX's drug testing requirements. 2. Reasonable Suspicion Testing: All contractor/sub-contractor employee(s) assigned to a CNX site suspected of being impaired by drugs and/or alcohol may be drug and alcohol tested immediately, removed from the CNX site and banned from returning upon confirmation of a positive drug or alcohol test. This includes, but is not limited to, the following: - Reporting for work after having used drugs and/or alcohol. - Possessing illegal substances/paraphernalia/alcohol on a CNX site. 3. Post-Accident/Incident Testing: All contractor/sub-contractor employee(s) involved in an accident at a CNX site resulting in off-site medical treatment to himself/herself or another employee, or an incident resulting in significant disruption of the operations at the facility (as determined by CNX and its affiliates), are required to be tested for drugs and alcohol upon receiving treatment. Additionally, all other contractor/subcontractor employees involved in the accident must be tested immediately after the accident. An employee who is subject to post-accident testing for drugs or alcohol under the DOT postaccident testing program also is subject to CNX's post-accident drug and alcohol testing requirements, which are broader than DOT's requirements. 4. Random Testing: All contractors/sub-contractors are required to randomly drug and alcohol test at least 25% of their employees that perform or may perform work at a CNX site, annually. This requirement is separate and apart from, and in addition to, DOT's random drug and alcohol testing requirements. 5. Alcohol Testing: All contractor/sub-contractor employee(s) must be subject to alcohol testing via breathalyzer or blood alcohol test ONLY. DOT testing must be conducted via breathalyzer. Alcohol testing must be performed as part of reasonable suspicion, postaccident and random drug and alcohol testing. MINIMUM REQUIRED SUBSTANCES: 1. Alcohol 2. Amphetamine or Methamphetamine 3. Cannabinoids 4. Benzoylecgonine 5. Opiates 6. Phencyclidine 7. Barbiturates 8. Benzodiazepines 9. Methadone 10. Methaqualone 11. Expanded Opiates I Synthetic Narcotics 12. Propoxyphene 13. 6-Acetylmorphine 14. Ecstasy MINIMUM REQUIRED TESTING THRESHOLDS FOR DRUGS: The following cutoff levels will be used when initially screening a urine specimen for drugs: Substance Threshold Amphetamine 500 ng/ML Methamphetamine 500 ng/ML Barbiturates 200 ng/ML Benzodiazepines 200 ng/ML Cannabinoids ("Marijuana", THC metabolites) 50 ng/ML Benzoylecgonine (Cocaine metabolite) 150 ng/ML Methadone 300 ng/ML Methaqualone 300 ng/ML Opiates 300 ng/ML Expanded Opiates/Synthetic Narcotics 300 ng/ML Phencyclidine 25 ng/ML Propoxyphene 300 ng/ML 6-Acetylmorphine 10 ng/ML Ecstasy 500 ng/ML. A test yielding a concentration at or greater than the concentrations shown above will be considered a laboratory positive test result and will be subject to confirmation. Laboratory positive test results based on the above initial screening will be confirmed using Gas Chromatography/Mass Spectrometry (GC/MS), or other forms of Mass Spectrometry as approved by HHS / SAMHSA, at the following cutoff levels: Substance Threshold Amphetamine 250 ng/ML Methamphetamine* 250 ng/ML Barbiturates 200 ng/ML Benzodiazepines 200 ng/ML Cannabinoids ("Marijuana", THC metabolites) 15 ng/ML Benzoylecgonine (Cocaine metabolite) 100 ng/ML Methadone 200 ng/ML Methaqualone 200 ng/ML Opiates 300 ng/ML Expanded Opiates/Synthetic Narcotics** 300 ng/ML Phencyclidine 25 ng/ML Propoxyphene 200 ng/ML 6-Acetylmorphine 10 ng/ML Ecstasy*** 250 ng/ML. *

Specimen must also contain Amphetamine at a concentration equal to or greater than 100ng/ML. ** - Expanded Opiates include: Hydrocodone, Hydromorphone and Oxycodone *** - MDMA (Methylenedioxymethamphetamine) *** - MDA (Methylenedioxyamphetamine) *** - MDEA (Methylenedioxyethylamphetamine) ALCOHOL TESTING:- For a (non-DOT-mandated) Post-Accident test; a breath or blood alcohol test yielding a 0.02 BAC or greater will be considered a positive result. - For all other tests, including all DOT-mandated alcohol tests; a breath or blood alcohol test yielding a 0.04 BAC or greater will be considered a positive result. AUDITING: - CNX has the right to audit records to determine compliance with the CNX's Contractor and Sub-contractor Drug & Alcohol Testing Policy requirements. CONTRACTOR/SUB-CONTRACTOR COMPLIANCE MONITORING: CNX has established a business relationship with TEAM Alert to serve as CNX's Non-DOT Contractor Drug & Alcohol Compliance Monitoring provider. As a result of this partnership, all contract companies are required to become subscribers to TEAM Alert's system. All contract companies will be subjected to an Initial, Bi-Annual Statistical, Quarterly Compliance and On-site Audits through TEAM Alert. The following steps are needed to comply with CNX's Drug and Alcohol requirements: 1. Subscribe to TEAM Alert's system at www.tpsalert.com. 2. Adopt/Acknowledge the CNX Contractor Drug & Alcohol Drug Free Workplace Policy Addendum (occurs during the electronic registration at www.tpsalert.com). 3. Select one of two options for complying with the Contractor Drug & Alcohol Compliance Monitoring. These options include: a. Option 1: Your organization can utilize Team Professional Services (TEAM) as your third party administrator (TPA) for your company's D &A Policy/Program. TEAM will then provide CNX with the data required to establish conformance with CNX's requirements. Pricing for this service will be determined between each Contractor Company and Team. b. Option 2: Your organization can continue to utilize existing systems to administer your D&A Policy/Program and establish conformance with CNX's requirements by providing reports documenting compliance to TEAM Alert. The reports will be audited by TEAM Alert and results reported to CNX. Regardless of which option is selected, your organization's compliance status will be determined by TEAM Alert and then reported to CNX though ISNet World. Status will be reported on timely reporting of data and compliance with the CNX requirements outlined in the Contractor Drug and Alcohol Drug Free Workplace Policy Addendum. Any company with a failing grade will be prohibited from performing services on CNX property until corrective action is taken to become fully compliant. EXHIBIT F - CONTRACTOR PERSONAL PROTECTIVE EQUIPMENT REQUIREMENTS *REMEMBER*- YOU MUST BE WEARING -ALL-OF THE FOLLOWING PROTECTIVE ITEMS BEFORE YOU ENTER OR LEAVE YOUR STAGING AREA. THIS PPE WILL NOT BE PROVIDED BY THE FACILITY. CONTRACTORS PERSONAL PROTECTIVE EQUIPMENT REQUIREMENTS: HARD HAT - EVERY EMPLOYEE MUST WEAR AN APPROVED HARDHAT. IT MUST BE IN GOOD CONDITION WITH NO CRACKS. IT MUST HAVE AT LEAST 6 INCHES OF BLUE REFLECTIVE TAPE ON BOTH SIDES AND THE BACK. THE EMPLOYEES FIRST AND LAST NAME IN AT LEAST 1/2" LETTERS AND THE COMPANY NAME OR LOGO MUST BE ON THE HARD HAT.(ON THE SURFACE, WHEN OPERATING IN TOTALLY ENCLOSED CABS, WORKING IN PROCESSING PLANT CONTROL ROOMS, AND ON RIVER BARGES, HARD HATS MAY BE REMOVED ONLY FOR THOSE TASKS.) EYE PROTECTION - SAFETY GLASSES WITH SIDE SHIELDS MUST BE WORN AT ALL TIMES. PRESCRIPTION EYE GLASSES MUST MEET THE ANSI STANDARD. ADDITIONAL EYE PROTECTION MAY BE REQUIRED BY SITE/TASK SPECIFIC HAZARD TRAINING.(WHEN OPERATING IN TOTALLY ENCLOSED CABS, SAFETY GLASSES MAY BE REMOVED ONLY WHILE IN CONFINES OF THE CAB.) EYE PROTECTION FOR CNX GAS WORK ONLY- SAFETY GLASSES WITH EYE PROTECTION MUST BE WORN AT ALL TIMES DURING WORKING HOURS, EXCEPT IN THOSE LOCATIONS SITE MANAGEMENT DETERMINES SUCH IS UNNECESSARY. ADDITIONAL EYE PROTECTION MAY BE REQUIRED BY SITE/TASK SPECIFIC HAZARD TRAINING. WHEN OPERATING IN TOTALLY ENCLOSED CABS, SAFETY GLASSES MAY BE REMOVED ONLY WHILE IN THE CONFINES OF THE CAB. SUNGLASSES OR TINTED LENSES SHALL NOT BE WORN IN LOW LIGHT AREAS. EXCEPTIONS MUST BE APPROVED IN WRITING BY THE VICE PRESIDENT-SAFETY AND THE VICE PRESIDENTOPERATIONS. HEARING PROTECTION - EVERY EMPLOYEE MUST HAVE HEARING PROTECTION AVAILABLE FOR USE AT ALL TIMES. IT IS POLICY THAT YOU MUST WEAR YOUR HEARING PROTECTION IN DESIGNATED AREAS. CLOTHING - ALL EMPLOYEES ARE REQUIRED TO WEAR APPROPRIATELY FITTING CLOTHING. THIS MEANS NO CLOTHING THAT IS EXCESSIVELY BAGGY OR LOOSE. LONG SLEEVE SHIRTS (WHICH COVERS THE ENTIRE ARM) ARE REQUIRED WHILE WORKING ON THE SURFACE. AT THIS TIME, EMPLOYEES WORKING IN ENCLOSED CABS AND PERSONS WORKING IN PREPARATION PLANTS ARE EXCLUDED FROM THIS REQUIREMENT. THE USE OF COTTON OR FLAME RESISTANT CLOTHING IS RECOMMENDED. FIRE RESISTANT CLOTHING MAY BE MANDATED ON SITE SPECIFIC LOCATIONS. DRILLING OPERATIONS - PERSONNEL ARE REQUIRED TO WEAR FLAME RESISTANT CLOTHING (LONG SLEEVED) AS REQUIRED ON SITE/TASK SPECIFIC LOCATIONS SUCH AS OIL & GAS DRILLING, WELL SERVICING OR OIL AND GAS PRODUCTION-RELATED OPERATIONS WHEN THERE IS A POTENTIAL FOR FLASH FIRE HAZARDS AS OUTLINED IN OSHA MEMORANDUM DATED MARCH 19, 2010 (ID 27296). THIS INCLUDES DRILLING OPERATIONS FOR BOREHOLES, COREHOLES, WELLS, AND WELL PLUGGING. FLAME RESISTANT CLOTHING IS REQUIRED WHILE ON THE PAD SITE. ESTABLISHED SITES - FLAME RESISTANT CLOTHING (LONG SLEEVED) CLOTHING IS REQUIRED WHEN PERFORMING ANY DUTIES INSIDE THE FENCE AT ANY ESTABLISHED DEGAS PUMP, DEGAS BOREHOLE, CCR HOLE AND SURFACE SEAL MONITORING BORE HOLE. IN THE EVENT THE BOREHOLE, WELL, PUMP OR BOREHOLE IS NOT PROVIDED WITH FENCING PERSONNEL SHALL NOT APPROACH WITHIN 25' WITHOUT FR CLOTHING CLOTHING FOR CNX GAS WORK ONLY- ALL EMPLOYEES ARE REQUIRED TO WEAR APPROPRIATELY FITTING CLOTHING. THIS MEANS NO CLOTHING THAT IS EXCESSIVELY BAGGY OR LOOSE. *THE USE OF FLAME RESISTANT CLOTHINGS IS REQUIRED ON SITE/TASK SPECIFIC LOCATIONS SUCH AS OIL AND GAS DRILLING, WELL SERVICING OR PRODUCTION-RELATED OPERATIONS WHEN THERE IS A POTENTIAL FOR FLASH FIRE HAZARDS AS OUTLINED IN OSHA MEMORANDUM DATED MARCH 19, 2010(ID 27296). SITE SPECIFIC HAZARD TRAINING WILL FURTHER DEFINE SPECIFIC LOCATIONS/TASKS.* REFLECTIVE MATERIAL - THERE MUST BE A MINIMUM OF 24 SQUARE INCHES OF HIGH-VISIBILITY (REFLECTIVE AND FLUORESCENT) MATERIAL ON THE UPPER TORSO OF THE FRONT AND BACK

OF THE OUTER LAYER OF CLOTHING. ADDITION REFLECTIVE HIGH-VISIBILITY (REFLECTIVE AND FLUORESCENT) MATERIAL IS REQUIRED ON EACH SIDE (ARMS AND/OR TORSO) OF THE OUTER LAYER OF CLOTHING TO PROVIDE 360 VISIBILITY. REFLECTIVE MATERIAL INCORPORATED ON SUSPENDERS DOES NOT COUNT AS PART OF THE 24 SQUARE INCH REQUIREMENT. REFLECTIVE MATERIAL FOR CNX GAS WORK ONLY- HIGH VISIBILITY CLOTHING- AT A MINIMUM THERE MUST BE SUFFICIENT REFLECTIVE AND HIGH VISIBILITY MATERIAL TO PROVIDE VISIBILITY FROM ALL DIRECTIONS ON THE OUTERMOST LAYER OF CLOTHING ON ARMS AND OR/TORSO. YOU HAVE SEVERAL MEANS AVAILABLE TO COMPLY WITH THIS STANDARD SUCH AS REFLECTIVE VESTS, BELT SHOULDER STRAPS, SEW ON OR IRON ON MATERIAL, ETC. (NOTE: IN AREAS WHERE FLAME RESISTANT CLOTHING IS REQUIRED, THIS HIGH VISIBILITY CLOTHINGS MUST ALSO BE FLAME RESSISTANT.)EVERY PERSON WITH LESS THAN SIX MONTHS OF RELEVANT FIELD EXPERIENCE MUST AFFIX A 1" DIAMETER ORANGE REFLECTIVE DOT ON THE REQUIRED REFLECTIVE TAPE ON BOTH SIDES AND THE BACK. METACARPAL GLOVES FOR CNX GAS WORK ONLY - METACARPAL GLOVES MUST BE WORN AT ALL TIMES BUT MAY BE REPLACED WITH OTHER APPROPRIATE GLOVES(AS DETERMINED BY SITE MANAGEMENT) WHEN PERFORMING SPECIALITY TASKS SUCH AS ELECTRICAL WORK, HANDLING OILY AND/OR GREASY MATERIAL, HANDLING CERTAIN CHEMICALS, OPERATING CONTROLS, WELDING ETC. IMMEDIATELY UPON COMPLETING THE "SPECIALTY TASK" METACARPAL GLOVES MUST BE WORN. (WHEN OPERATING IN TOTALLY ENCLOSED CABS, METACARPAL GLOVES MAY BE REMOVED ONLY WHILE IN THE CONFINES OF THE CAB). LEG BANDS - PANT LEGS BOTTOMS MUST BE SECURED OR BLOUSED AT ALL TIMES. METATARSAL BOOTS FOR CNX GAS WORK ONLY- METATARSAL BOOTS- METATARSAL BOOTS ARE REQUIRED AT ALL TIMES UNLESS A WRITTEN APPROVED EXCEPTION HAS BEEN GRANTED BY THE VP OPERATIONS AND VP-CORPORATE SAFETY. Exhibit G- Background Check Guidelines Introduction and purpose CNX RESOURCES CORPORATION, (CNX) strives to provide a safe and secure workplace for its employees, customers, shareholders, and the communities in which they operate. A key factor is to know who is working on CNX property and that a proper background screening has been performed on such persons. To that end, CNX has adopted Contractor Background Check Guidelines (the "Guidelines") effective June 1, 2013 which are required for "A" and "B" contractors to follow for all newly hired employees who will work on CNX property. Elements The following areas are required "core" elements to be performed by the contractor. 1. Social Security Number (SSN) verification (instant address link or skip trace) This verifies a person's social security number and address provided on his/her application. 2. I-9 form identification and citizenship verification This is required under federal employment law and is included in this list of requirements as an audliable program element. 3. Federal, state, and county/local criminal history check This searches court records based on the applicant's past locations of residence and employment for criminal convictions for the maximum time period permitted by applicable state law. 4. Employment history check Contractor must submit to CNX Resources by email at brcheck@cnx.com a complete roster of all of Contractor's and its subcontractor's employees who will be working on CNX property prior to the commencement date of any work if practical, but in any event no later than five (5) days after the commencement date. 5. Education verification This requirement verifies that a job applicant possesses and maintains all required diplomas, degrees, licenses and/or certifications required for his/her position with Contractor and that the applicant is in good standing with any licensing authority responsible for regulating such license, certification or other requirement. 6. Department of motor vehicles This requires a check for driving records under applicable state law for persons who will be driving a Contractor-owned vehicle on CNX property or for the contractor while providing services to CNX. The check would verify current operator status and/or suspension status of driving privileges. 7. Other Certain job-specific types of checks, not detailed here, that may be appropriate to add in certain cases to the "core" requirements include: credit check, bankruptcy search, liens and judgments, and reference checks, In each case, in compliance with applicable federal, state and local law. 8. Sound business judgment Sound business judgment should be used by the contractor in making hiring decisions based on the above elements, including the applicant's suitability for the position. CNX reservation of rights; right to audit; certification of contractor CNX reserves the right to reject an individual employee proposed by contractor for work on CNX property, subject to applicable federal, state and/or local law (if any). CNX reserves the right to audit contractor's compliance with these guidelines. Contractor shall be required periodically to certify its compliance with these guidelines at the request of CNX or its designee. Independent contractor; no joint venture, etc. Contractor is and shall remain at all times an independent contractor. No joint venture, partnership, joint employment or similar relationship exists between contractor and CNX. Questions if you have any questions regarding these guidelines, please contact: TEAM Alert E-mail: cnxbackground@Ipsalert.com Phone: 918-970-4990 Tracking Number: 9CHC

**Structured Notes:**

| | |
|---|---|
| General Note: | U0 |
| Note ID: | MWSKZ |

| | |
|---|---|
| **Total:** | 12,418,545.00 USD |

# EXHIBIT 4

CNXM Morris Expansion RFP Questions 20181105
CNX Responses

Bids Due: 11/6/2018 by Noon EST
Clarification Calls: 11/7/2018
Contractor Clarifications Due: 11/8/2018 by 5PM EST
Award: 11/9/2018

**Will there be a conduit and wire schedule issued?** There will be a Cable Schedule but not a Conduit Schedule. Conduit to be field routed

**Will there be an electrical BOM?** Yes, there should be a BOM included in the drawings for Lighting Detail, Cable Tray Detail, Heat Trace Detail, etc...

**Who do they want the heat trace vendor to be through or who is the existing heat trace through?** We typically use Raychem 5 Watt Per foot Heat Trace and Connection kits with Lighted End Seals

**On drawing CNX-MOR-60-3002 Rev 4B the clouded area does not show what type of cable they want.** Cable should be included in updated Cable Schedule

**On drawing CNX-MOR-60-3003 Rev C it shows see notes 2,3,4 but there aren't any notes it also does not show the cable for Compressor C-1700 cooler fan motor 1 and 2, Compressor pre-lube pump motor 2, Compressor C-1800 pre-lube pump motor 1 and 2.**

Cable should be included in updated Cable Schedule

**On drawing CNX-MOR-60-3004 Rev C it shows see notes 2,3,4 but there aren't any notes it is also missing the cable for Compressor 1200 pre- lube pump motor 1 and 2, Compressor C-1100, C1200 hot start.**

Cable should be included in updated Cable Schedule

Can you please clarify if this contract will be a T&M or a Lump Sum contract? T&M

Do you want all SOV lines as T&M Not to Exceed? Yes

If it is T&M, will it be billed through our submitted Labor and Equipment Rates with a standard mark-up on Subcontractors and Materials? Yes, but we expect the labor rates to roll up into the line items listed in the SOV.

If it is T&M, is this a T&M not to exceed amount based upon our submitted lump sum Budget? Yes

What exactly are the KPI's and how does apply toward a bonus? Please disregard this in the original RFP. A revised RFP has been uploaded with this language removed.


**Morris**

For the tank battery, will we be reusing demoed pipe, structural steel, pipe supports, or will we be fabricating new? Construct new. The new tank farm needs constructed and in operation before we can tear the old one out. CNXM will purchase the SS. Equipment from the old tanks needs transported to Rice's Landing

If we are fabricating new, who will be handling/discarding demoed material? CNMX will provide dumpster for disposal of pipe and one for concrete.

Can we expect to receive any civil drawings for the deep compressor foundations? Yes, 10/26

Bid form calls out compressor building foundation, will we receive any drawings for this foundation? Yes, 10/26

Section 7 in the SOW states that the company will supply structural steel, but Section 10 makes is sound like the structural steel is on the contractor. Clarification? CNXM purchases SS. Contractor to purchase anchor bolts.

Are we simply removing the compressors? Or will we be removing the associated piping as well? Pipe racks and tanks next to the demoed compressors? Remove the (2) 3516's and rework pipe along the pipe header for all (5) units. This is shown in the model with colored pipe.

Is everything in shaded purple on the NavisWorks model to be demoed in our scope of work? Yes. The scope of work does not mention this, but it is included on the model, so we would like clarification on whether or not the contractor is responsible for this demo? It was mentioned in the bid meeting and on-site. The contactor will be responsible for removing existing pipe/equipment that is no longer needed and replacing as necessary. For example, at the beginning of the site meeting, we looked at the inlet and discussed removing the 12" and 10" inlets and replacing with 72"x30' S/S horizontal slug catchers.


**Archer**

Section 7 in the SOW states that the company will supply structural steel, but Section 10 makes is sound like the structural steel is on the contractor. Clarification? CNXM purchases SS. Contractor to purchase anchor bolts.

It doesn't look like we have been provided with any civil foundation or structural steel drawings for this site. Can we be expecting to receive those? If not, how should we proceed in including pricing for the foundations and structural steel in our bid? These were uploaded under 90% Drawings

# EXHIBIT 10

Can you please clarify if this contract will be a T&M or a Lump Sum contract? T&M

Do you want all SOV lines as T&M Not to Exceed? Yes

If it is T&M, will it be billed through our submitted Labor and Equipment Rates with a standard mark-up on Subcontractors and Materials? Yes, but we expect the labor rates to roll up into the line items listed in the SOV.

If it is T&M, is this a T&M not to exceed amount based upon our submitted lump sum Budget? Yes

What exactly are the KPI's and how does apply toward a bonus? Please disregard this in the original RFP. A revised RFP has been uploaded with this language removed.


**Morris**

For the tank battery, will we be reusing demoed pipe, structural steel, pipe supports, or will we be fabricating new? Construct new. The new tank farm needs constructed and in operation before we can tear the old one out. CNXM will purchase the SS. Equipment from the old tanks needs transported to Rice's Landing

If we are fabricating new, who will be handling/discarding demoed material? CNMX will provide dumpster for disposal of pipe and one for concrete.

Can we expect to receive any civil drawings for the deep compressor foundations? Yes, 10/26

Bid form calls out compressor building foundation, will we receive any drawings for this foundation? Yes, 10/26

Section 7 in the SOW states that the company will supply structural steel, but Section 10 makes is sound like the structural steel is on the contractor. Clarification? CNXM purchases SS. Contractor to purchase anchor bolts.

Are we simply removing the compressors? Or will we be removing the associated piping as well? Pipe racks and tanks next to the demoed compressors? Remove the (2) 3516's and rework pipe along the pipe header for all (5) units. This is shown in the model with colored pipe.

Is everything in shaded purple on the NavisWorks model to be demoed in our scope of work? Yes. The scope of work does not mention this, but it is included on the model, so we would like clarification on whether or not the contractor is responsible for this demo? It was mentioned in the bid meeting and on-site. The contactor will be responsible for removing existing pipe/equipment that is no longer needed and replacing as necessary. For example, at the beginning of the site meeting, we looked at the inlet and discussed removing the 12" and 10" inlets and replacing with 72"x30' S/S horizontal slug catchers.


**Archer**

Section 7 in the SOW states that the company will supply structural steel, but Section 10 makes is sound like the structural steel is on the contractor. Clarification? CNXM purchases SS. Contractor to purchase anchor bolts.

It doesn't look like we have been provided with any civil foundation or structural steel drawings for this site. Can we be expecting to receive those? If not, how should we proceed in including pricing for the foundations and structural steel in our bid? These were uploaded under 90% Drawings

# DECLARATION OF WILLIAM D. CLIFFORD

IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF
PENNSYLVANIA

CNX MIDSTREAM DEVCO I LP,

            Plaintiff,

    v.

APPLIED CONSTRUCTION SOLUTIONS,
INC.,

            Defendant.

:   CIVIL DIVISION
:
:
:
:   Docket No.: 2:20-CV-00290-AJS
:
:
:
:
:
:

## **DECLARATION OF WILLIAM D. CLIFFORD**

I, William D. Clifford, declare under penalty of perjury under the laws of the United States that the following is true and correct:

1.      I am an attorney admitted to practice in this Court. I am an attorney for Plaintiff and I am fully familiar with the facts and circumstances stated herein.

2.      Attached hereto as Exhibit 12 is an email dated October 26, 2018 with a Bate Stamp ACS 022606-022608.

3.      Attached hereto as Exhibit 13 is a true and correct copy of an email dated August 13, 2019 from Jim Glass to David Larkin, Bates No. ACS 03117-031171.

4.      Exhibits 12 and 13 attached hereto were produced by counsel for Defendant, Applied Construction Solutions, Inc. in direct response to a Request for Production of Documents served upon counsel for ACS from counsel for Plaintiff, CNX.

5.      I have personal information that these documents were so produced by ACS as evidenced by the Bates label and numbers as set forth above. Based upon the above, since these documents were produced by Defendant in response to Plaintiff's Requests for Production of Documents, their authenticity is established.

6. Since the documents labeled as Exhibits 12 and 13 were produced by Defendant in response to discovery requests from Plaintiff they are admissible on a Motion for Summary Judgment since they are self-authenticated and constitute the admission of a party opponent.


William D. Clifford

# EXHIBIT 12

| From: | Comfort, Jeff |
| Sent time: | 10/26/2018 02:47:51 PM |
| To: | Glass, Jim |
| Cc: | Jungo, Dan |
| Subject: | CNX Morris and Archer Bid Questions and the Clarifications |
| Attachments: | CNXM Station RFP Questions 20181024 (1).docx |

Jim,

Here is the update that Dan sent a short while ago.

Jeff Comfort
Applied Construction Solutions
jcomfort@acs8760.com
C. 304-203-5215

ACS 022606

Can you please clarify if this contract will be a T&M or a Lump Sum contract? T&M

Do you want all SOV lines as T&M Not to Exceed? Yes

If it is T&M, will it be billed through our submitted Labor and Equipment Rates with a standard mark-up on Subcontractors and Materials? Yes, but we expect the labor rates to roll up into the line items listed in the SOV.

If it is T&M, is this a T&M not to exceed amount based upon our submitted lump sum Budget? Yes

What exactly are the KPI's and how does apply toward a bonus? Please disregard this in the original RFP. A revised RFP has been uploaded with this language removed.


**Morris**

For the tank battery, will we be reusing demoed pipe, structural steel, pipe supports, or will we be fabricating new? Construct new. The new tank farm needs constructed and in operation before we can tear the old one out. CNXM will purchase the SS. Equipment from the old tanks needs transported to Rice's Landing

If we are fabricating new, who will be handling/discarding demoed material? CNMX will provide dumpster for disposal of pipe and one for concrete.

Can we expect to receive any civil drawings for the deep compressor foundations? Yes, 10/26

Bid form calls out compressor building foundation, will we receive any drawings for this foundation? Yes, 10/26

Section 7 in the SOW states that the company will supply structural steel, but Section 10 makes is sound like the structural steel is on the contractor. Clarification? CNXM purchases SS. Contractor to purchase anchor bolts.

Are we simply removing the compressors? Or will we be removing the associated piping as well? Pipe racks and tanks next to the demoed compressors? Remove the (2) 3516's and rework pipe along the pipe header for all (5) units. This is shown in the model with colored pipe.

Is everything in shaded purple on the NavisWorks model to be demoed in our scope of work? Yes. The scope of work does not mention this, but it is included on the model, so we would like clarification on whether or not the contractor is responsible for this demo? It was mentioned in the bid meeting and on-site. The contactor will be responsible for removing existing pipe/equipment that is no longer needed and replacing as necessary. For example, at the beginning of the site meeting, we looked at the inlet and discussed removing the 12" and 10" inlets and replacing with 72"x30' S/S horizontal slug catchers.


**Archer**

Section 7 in the SOW states that the company will supply structural steel, but Section 10 makes is sound like the structural steel is on the contractor. Clarification? CNXM purchases SS. Contractor to purchase anchor bolts.

It doesn't look like we have been provided with any civil foundation or structural steel drawings for this site. Can we be expecting to receive those? If not, how should we proceed in including pricing for the foundations and structural steel in our bid? These were uploaded under 90% Drawings

# EXHIBIT 13

**From:**      Glass, Jim
**Sent time:**   08/13/2019 04:55:40 PM
**To:**        Larkin, David
**Subject:**    Re: Morris invoice(s) .12 and .13 to review and approve

---

This was T&M not to exceed and not T&M thus why have to justify every change

Sent from my iPhone

> On Aug 13, 2019, at 2:35 PM, Larkin, David wrote:
>
> Jim,
>
> We can reduce 'Extras' as it makes sense for the project and the 'CNX relationship on a whole', but I respectfully disagree "her argument is valid" on hydro-testing.  The issue isn't "whether hydro-testing was in our scope of work" because it obviously was.  The issue (for me) is that CNX made a unilateral decision (after the review/award process) that FUNDIMENTALLY CHANGED our execution plan.  And it was said out loud (by Frank Annese and Billy Martin?) during the meeting that this decision was "going to cost a LOT more than what we had budgeted".
>
> The hydro-testing execution plan was to hydro-test all the pipe on site after it was installed.  As I told Carissa yesterday "if it was the CNX plan to not allow 'on-site installed pipe in place /system hydro-testing' on this project, it should have been STATED ON/IN THE BID DOCUMENTS so all bidders could plan and budget accordingly".  It wasn't - which renders this issue "their bad" and not a cost we should eat - it is the definition of "an owner driven change during the project" that should equal a Change Order.  On the other hand, since only $107K (of the $670K+) costs aren't billed/paid for yet, I could see a "negotiation give and take" scenario where we don't invoice the $107K.
>
> I would still 100% fundamentally disagree with her assessment ("it was always in your scope of work, therefor it's not an extra").
>
> And while we're on the subject of what constitutes a change order and/or what was planned/budgeted vs. what was spent - I've attached the email I wrote you 6 weeks ago about some of these issues /budgets/costs.  We've already had the discussion this was "a lump sum budget back-fitted into a Time & Materials vehicle of payment" so saying we 'blew the budget/overspent $1.6MM on pipe fabrication' is just the beginning/part of the conversation.  Depending on what you consider and how you add, there was at minimum $1.586MM in the budget (for ACS LABOR) in 'unbillable OH categories' that really needs to be considered in this conversation with CNX (you said yesterday that they are aware of what was budgeted for pipe fabrication).
>
> A conversation with CNX about what was budgeted vs. what was spent NEEDS TO CUT BOTH WAYS, and not just against ACS.  'Online Construction Definitions' defines Time and material work (aka T&M) as "a standard style of reimbursement for construction, product development or any other piece of work in which the Owner/employer agrees to pay the contractor based upon the time spent by the contractor's employees and subcontractors employees to perform the work, and for materials used in the execution of the work (plus the contractor's mark up on the materials used), no matter how much work is required to complete construction. Time and Materials is generally used in projects in which it is not possible to accurately estimate the size of the project, or when it is expected that the project requirements would most likely change".  T&M was their decision, not ACS's - and that means to me they EXPECTED THESE cost issues before work commenced.  Why else T&M?
>
> We spent $800K on Lomma Crane alone (crane budget was $400K), we spent much more than $200K on 'Other Rental Equipment', etc. etc.  And as you are fully aware of, there are other major issues (90% and IFC drawings were suspect at best, final installation much more intricate than the IFC drawings, etc.) that also need to be discussed thoroughly with them also.
>
> All good "FOOD FOR THOUGHT" and conversation.
>
> David
>
> -----Original Message-----
> From: Glass, Jim
> Sent: Monday, August 12, 2019 5:29 PM
> To: Larkin, David
> Subject: Re: Morris invoice(s) .12 and .13 to review and approve
>

ACS 031170

> We will be reducing Extras, most notably the hydro one will go away.
>
> Her argument is valid. Hydro is part of the scope , it is and was always a part of the scope. Th
erefore not extra.
>
> She will review the rest of changes to give us feedback. Will let you know when I get info back
from her.
>
> Sent from my iPhone
>
>> On Aug 12, 2019, at 4:05 PM, Larkin, David  wrote:
>>
>> Jim,
>>
>> We can discuss when to submit these (.12 exceeds the current PO value of $14,818,545.00 by $237
K so it is 'yet to be submitted) and to whom at CNX - Carissa now? - but either way you need to re
view them prior to submission.
>>
>> David
>> David M. Larkin
>> Applied Construction Solutions, Inc
>> 1012 Wonder Bar Road
>> Clarksburg, WV 26301
>> Mobile: (864) 704-7530
>> Email:  dlarkin@acs8760.com
>> www.acs8760.com
>> [cid:image001.jpg@01D55127.50DDB860]
>> CONFIDENTIALITY NOTE:   The information contained in this message may be privileged and confide
ntial.   If the reader of this message is not the intended recipient you are hereby notified that
any dissemination, distribution or copying of this communication is strictly prohibited.   If you
have received this message in error, please notify the sender immediately and delete the message f
rom your computer.   Thank you
>>
>> <18103.12 Morris Invoice.pdf>
>> <18103.13 Morris Invoice.pdf>
>>
>

ACS 031171

This was T&M not to exceed and not T&M thus why have to justify every change

Sent from my iPhone

> On Aug 13, 2019, at 2:35 PM, Larkin, David  wrote:
>
> Jim,
>
> We can reduce 'Extras' as it makes sense for the project and the 'CNX relationship on a whole', but I respectfully disagree "her argument is valid" on hydro-testing.  The issue isn't "whether hydro-testing was in our scope of work" because it obviously was.  The issue (for me) is that CNX made a unilateral decision (after the review/award process) that FUNDIMENTALLY CHANGED our execution plan.  And it was said out loud (by Frank Annese and Billy Martin?) during the meeting that this decision was "going to cost a LOT more than what we had budgeted".
>
> The hydro-testing execution plan was to hydro-test all the pipe on site after it was installed.  As I told Carissa yesterday "if it was the CNX plan to not allow 'on-site installed pipe in place/system hydro-testing' on this project, it should have been STATED ON/IN THE BID DOCUMENTS so all bidders could plan and budget accordingly".  It wasn't - which renders this issue "their bad" and not a cost we should eat - it is the definition of "an owner driven change during the project" that should equal a Change Order.  On the other hand, since only $107K (of the $670K+) costs aren't billed/paid for yet, I could see a "negotiation give and take" scenario where we don't invoice the $107K.
>
> I would still 100% fundamentally disagree with her assessment ("it was always in your scope of work, therefor it's not an extra").
>
> And while we're on the subject of what constitutes a change order and/or what was planned/budgeted vs. what was spent - I've attached the email I wrote you 6 weeks ago about some of these issues/budgets/costs.  We've already had the discussion that a "lump sum budget back-fitted into a Time & Materials vehicle of payment" so saying we 'blew the budget/overspent $1.6MM on pipe fabrication' is just the beginning/part of the conversation.  Depending on what you consider and how you add, there was at minimum $1.586MM in the budget (for ACS LABOR) in 'unbillable OH categories' that really needs to be considered in this conversation with CNX (you said yesterday that they are aware of what was budgeted for pipe fabrication).
>
> A conversation with CNX about what was budgeted vs. what was spent NEEDS TO CUT BOTH WAYS, and not just against ACS.  'Online Construction Definitions' defines Time and material work (aka T&M) as a "a standard style of reimbursement for construction, product development or any other piece of work in which the Owner/employer agrees to pay the contractor based upon the time spent by the contractor's employees and subcontractors employees to perform the work, and for materials used in the execution of the work (plus the contractor's mark up on the materials used), no matter how much work is required to complete construction. Time and Materials is generally used in projects in which it is not possible to accurately estimate the size of the project, or when it is expected that the project requirements would most likely change".  T&M was their decision, not ACS's - and that means to me they EXPECTED THESE cost issues before work commenced.  Why else T&M?
>
> We spent $800K on Lomma Crane alone (crane budget was $400K), we spent much more than $200K on 'Other Rental Equipment', etc. etc.  And as you are fully aware of, there are other major issues (90% and IFC drawings were suspect at best, final installation much more intricate than the IFC drawings, etc.) that also need to be discussed thoroughly with them also.
>
> All good "FOOD FOR THOUGHT" and conversation.
>
> David
>
> -----Original Message-----
> From: Glass, Jim
> Sent: Monday, August 12, 2019 5:29 PM
> To: Larkin, David
> Subject: Re: Morris invoice(s) .12 and .13 to review and approve
>

ACS 031170

> We will be reducing Extras, most notably the hydro one will go away.
>
> Her argument is valid. Hydro is part of the scope , it is and was always a part of the scope. Th
erefore not extra.
>
> She will review the rest of changes to give us feedback. Will let you know when I get info back
from her.
>
> Sent from my iPhone
>
>> On Aug 12, 2019, at 4:05 PM, Larkin, David  wrote:
>>
>> Jim,
>>
>> We can discuss when to submit these (.12 exceeds the current PO value of $14,818,545.00 by $237
K so it is 'yet to be submitted) and to whom at CNX - Carissa now? - but either way you need to re
view them prior to submission.
>>
>> David
>> David M. Larkin
>> Applied Construction Solutions, Inc
>> 1012 Wonder Bar Road
>> Clarksburg, WV 26301
>> Mobile: (864) 704-7530
>> Email:  dlarkin@acs8760.com
>> www.acs8760.com
>> [cid:image001.jpg@01D55127.50DDB860]
>> CONFIDENTIALITY NOTE:   The information contained in this message may be privileged and confide
ntial.  If the reader of this message is not the intended recipient you are hereby notified that
any dissemination, distribution or copying of this communication is strictly prohibited.   If you
have received this message in error, please notify the sender immediately and delete the message f
rom your computer.   Thank you
>>
>> <18103.12 Morris Invoice.pdf>
>> <18103.13 Morris Invoice.pdf>
>>
>

ACS 031171

**DEFENDANT APPLIED CONSTRUCTION SOLUTIONS, INC.'S RESPONSE TO PLAINTIFF'S INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANT, APPLIED CONSTRUCTION SOLUTIONS, INC.**

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

CNX MIDSTREAM DEVCO I, LP,

               Plaintiff,

v.

APPLIED CONSTRUCTION SOLUTIONS,
INC.,

               Defendant.

Civil Action No.: 2:20-cv-00290-AJS
Judge Arthur J. Schwab

## DEFENDANT, APPLIED CONSTRUCTION SOLUTIONS, INC.'S RESPONSE TO PLAINTIFF'S INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANT APPLIED CONSTRUCTION SOLUTIONS, INC.

Pursuant to Federal Rules of Civil Procedure No. 33 and No. 34, the Defendant, Applied Construction Solutions, Inc. (sometimes "ACS") by and through its undersigned counsel hereby responds and objects to the Plaintiff, CNX Midstream DEVCO I, LP's Interrogatories and Request for Production of Documents Directed to Defendant Applied Construction Solutions, Inc. as follows:

### PRELIMINARY STATEMENT

This party has not yet completed its investigation of the facts relating to this civil action, has not completed discovery in this civil action and has not completed its preparations for trial. For these reasons, the answers and responses of Defendant are based upon only such information and documents as are presently available and known to Defendant and its counsel. Further discovery and independent investigation may supply additional facts, add meaning to facts, or may establish entirely new factual contentions and, therefore, additions to, changes in, and variations from Defendant's present answers and responses may be necessary or may unavoidably result.

In short, the following answers and responses are given in good faith, but without prejudice to Defendant's right to produce evidence of subsequently discovered facts or documents.

Defendant avails itself of all of their rights under the Federal Rules of Civil Procedure, and any other applicable rule or law, and objects to the instructions contained within the Plaintiff's requests to the extent the instructions attempt to impose burdens on the Defendant that are not contained within the Rules.

## GENERAL OBJECTIONS

Defendant objects to these Interrogatories and Requests insofar as they seek information which is in the custody and control of persons or entities other than Defendant.

This party has made a reasonable effort to locate and provide relevant and discoverable information as requested, subject to the objections and limitations set forth herein, and it reserves the right to supplement its answers and responses should additional relevant and discoverable documents be located or ascertained in the future.

Applied Construction Solutions does not intend to waive nor does it waive any objection to any request herein by the inadvertent disclosure of requested information or documentation and, to the contrary reserves the right to object to the disclosure of that information.

By making these responses, this party does not concede that the information requested is relevant to, or admissible in, this action or that the discovery is reasonably calculated to lead to the discovery of admissible evidence. Applied Construction Solutions expressly reserves the right to object to future discovery into the subject area of this discovery as well as to the

introduction into evidence of any response below, should further investigation disclose additional or different information rendering such responses incomplete or inaccurate.

## INTERROGATORIES

1.     State the full name and address of the person or persons answering these Interrogatories and the authority by which he/she does so.

**ANSWER:   Applied Construction Solutions, Inc. objects to this Interrogatory to the extent it is seeking information related to attorney-client communications and/or work-product.   Subject to and without waiving the objection, the Defendant has verified its answers as required under the Federal Rules of Civil Procedure.**

2.     State the full name and address of every person providing answers or supplying information aiding in the answering of these Interrogatories.

**ANSWER:   Applied Construction Solutions, Inc. objects to this Interrogatory to the extent it is seeking information related to attorney-client communications and/or work product.   Subject to and without waiving the objection, see Applied Construction Solutions, Inc.'s response to Interrogatory Number 1.**

3.     Please identify the documents, drawings, and/or other materials that ACS contends makes up the contract for the Project.

**ANSWER:   Objection.   This Interrogatory is unreasonably vague, broad and ambiguous in its reference to "make up the contract" and "contends." Applied Construction Solutions, Inc. further maintains that this request calls for opinions, mental impressions and work-product of counsel.   While providing the following response, this**

party notes that discovery is ongoing and reserves the right to supplement, modify and elaborate on this response as is appropriate and necessary after what is learned during the discovery process.

This party also objects in that this is a "Contention Interrogatory" being presented early and/or at the beginning of the discovery process and the Plaintiff has not presented specific plausible grounds demonstrating that an early answer will materially advance the goals of the Federal Rules of Civil Procedure and the question is not well tailored to clarify or narrow the scope of discovery, but rather will likely add unnecessary confusion to the issues. As further evidence that this is not narrowly tailored or to deal with a specific contentious issue in the matter, this party notes the multiple other "contentious Interrogatories" advanced in the Plaintiffs set of Interrogatories.

4. Identify each and every person who assisted in the preparation of ACS' bid and revised bid for the Project and describe in detail the particular functions performed by each such person in that regard.

ANSWER: Jim Glass was the individual charged with assembling ACS's bid and revised bid for the project based on information provided by CNX. Jeff Comfort, Dan Jungo, and Valerie Nyswaner assisted in formulating the bid. Certain individuals from CNX assisted in ACS's bid and revised bid for the project through providing information and directing ACS regarding certain assumptions, information, or designs. Certain subcontractors also provided information relevant to the project bids. The list of subcontractors includes:

1. B&B
2. Bolt Companies

4

3. CEC Steel
4. Energy Transportation, LLC
5. FoxFire
6. Geo. V. Hamilton, Inc.
7. Huntington Steel
8. John Anderson Construction, Inc.
9. Maxim Crane Works
10. McKinney Drilling Company, LLC
11. MMR
12. Monco
13. Mountain State Electric
14. Mountain State Foam Insulation Inc.
15. Mountaineer Fabricators
16. RVC Inc.
17. S2W Contracting LLC
18. Shelly Drilling
19. Strike
20. Swaggart Brothers, Inc.
21. Tri County Electric
22. United Electrical Services, LLC
23. Zimmerman Steel & Supply Company, LLC

5.     With regard to the contentions contained in Paragraph 16 of ACS' Counterclaim that "[t]hrough the issuance of the CNX Morris RFP Questions 20181024.docx document, CNX clarified that the contract would be on a Time and Materials ("T&M") basis," please provide the following information:

> a.     All facts which support or refute your contention in Paragraph 16 of ACS' Counterclaim;
>
> b.     Identify each person having any knowledge with respect to your contention in Paragraph 16 of ACS' Counterclaim and your answer to subpart a. of this Interrogatory; and

c. Identify and produce each document and oral communication that relates to or supports your contention in Paragraph 16 of ACS' Counterclaim and your answers to subparts a. and b. of this Interrogatory.

**ANSWER:**

**Applied Construction Solutions, Inc. states that the referenced document is a written instrument that speaks for itself. Kevin Dunn, Carissa Hansen, Chase Davis, Ryan Aubuchon, Adam Beck, David Hackworth, William Kish, Todd Shumaker, and other CNX personnel have knowledge related to such contractual agreements between the parties. Jeff Comfort, Jim Glass, and Valerie Nyswaner would have knowledge related to the parties' contractual agreement.**

6. With regard to your contention in Paragraph 24 of ACS' Counterclaim that "Mr. Davis stated that such revised bid should include a "Not to Exceed" number," please provide the following information:

a. All facts which support or refute your contention in Paragraph 24 of ACS' Counterclaim;

b. Identify each person having any knowledge with respect to your contention in Paragraph 24 of ACS' Counterclaim and your answer to subpart a. of this Interrogatory; and

c. Identify and produce each document and oral communication that relates to or supports your contention in Paragraph 24 of ACS' Counterclaim and your answers to subparts a. and b. of this Interrogatory.

**ANSWER:**

**Applied Construction Solutions, Inc. states that the referenced statement comes from a written instrument issued early in the bid process and referenced by the Plaintiff numerous times in this litigation. The bid clarification sheet at issue is a written**

document that speaks for itself. Chase Davis and Jim Glass would have knowledge with respect to this interrogatory.

7.     With regard to the averments contained in Paragraph 74 of ACS' Counterclaim, please provide the following information:

        a.     Identify each and every change order that ACS alleges CNX worked with it to reflect the alleged parties' "T&M agreement;"

        b.     Identify the "T&M agreement" referred to Paragraph 74 of ACS' Counterclaim;

        c.     Identify each person known to you to have any knowledge of the facts set forth in your answers to subpart a. and b. of this Interrogatory; and

        d.     Identify each document and oral communication that relates to or supports your answers to this subpart a., b. and c. of this Interrogatory.

**ANSWER:**   **Objection.   This Interrogatory is unreasonably vague, broad and ambiguous.   While providing the following response, this party notes that discovery is ongoing and reserves the right to supplement, modify and elaborate on this response as is appropriate and necessary after what is learned during the discovery process.**

**This party also objects in that this is a "Contention Interrogatory" being presented early and/or at the beginning of the discovery process and the Plaintiff has not presented specific plausible grounds demonstrating that an early answer will materially advance the goals of the Federal Rules of Civil Procedure and the question is not well tailored to clarify or narrow the scope of discovery, but rather will likely add unnecessary confusion to the issues.   As further evidence that this is not narrowly tailored or to deal with a specific contentious issue in the matter, this party notes the multiple other "contentious Interrogatories" advanced in the Plaintiffs set of Interrogatories.**

Subject to and without waiver, Applied Construction Solutions, Inc. states that there were numerous change orders recorded in a "not in contract log." This log reflected extra or additional work completed on the project and approved by Kevin Dunn or a CNX representative. CNX requested ACS follow this process to avoid requesting continual additional funds for extra or additional work. CNX requested ACS to document such work accordingly for large, bulk price adjustments – which is what change order #1 represents. Change Order #1 requested additional money beyond the total accrued "not in contract log" because the work was on-going and to relieve ACS from fronting additional costs for a much longer period. The second issued change order was a continuation of this practice.

After the second change order, ACS was again instructed to track its extra or additional costs as before for one final change order. The amount demanded by ACS in this litigation represents additional costs incurred on this project that CNX owes to ACS and were incurred through this process.

The two approved change orders on this project and the "not in contract log" are written instruments which speak for itself and are cited in the Plaintiff's Complaint.

Kevin Dunn, Carissa Hansen, Chase Davis, Ryan Aubuchon, Adam Beck, David Hackworth, William Kish, Todd Shumaker, and other CNX personnel have knowledge related to such contractual agreements between the parties. Jeff Comfort, Jim Glass, David Larkin, and Valerie Nyswaner would have knowledge related to the parties' contractual agreement. See also, the parties Rule 26(a)(1) disclosures for more information regarding individuals with knowledge of how the parties' relationship operated.

8.      With regard to your contention in Paragraph 75 of ACS' Counterclaim that "CNX does not deny that ACS is entitled to T&M and additional funds but asserts that some of ACS's supporting documentation may be inaccurate," please provide the following information:

> a.      All facts which support or refute your contention in Paragraph 75 of the Counterclaim;
>
> b.      Identify each person known to you to have any knowledge of the facts set forth in your answer to subpart a. of this Interrogatory; and
>
> c.      Identify and produce each document and oral communication that relates to or supports your answers to subpart a. and b. of this Interrogatory.

**ANSWER:**

**Subject to and without waiver, ACS states that an audit of ACS's billing practices was performed by CNX at the end of the 2019 calendar year. Upon information and belief, the audit overwhelmingly supported ACS's invoices and revealed that CNX was underbilled for the project by ACS. David Hackworth, Rob Moore, and potentially other individuals were involved with the audit from CNX's end. David Larkin generated the relevant information from ACS's end and David Alvarez was involved in correspondence with certain CNX personnel, including but not limited to Adam Beck, Dennis Koscho, and Todd Shumaker.**

**CNX is in the possession and control of voluminous information related to this audit process and its findings – the majority of which was not shared with ACS.**

9.     With regard to the contentions contained in Paragraph 78 of ACS' Counterclaim that "[t]hrough its Audit, CNX only identified nominal amounts that it believes are inaccurate," please provide the following:

      a.    All facts which support or refute your contention in Paragraph 78 of ACS' Counterclaim;

      b.    Identify each person having any knowledge with respect to your contention in Paragraph 78 of ACS' Counterclaim and your answer to subpart a. of this Interrogatory; and

      c.    Identify and produce each document and oral communication that relates to or supports your contention in Paragraph 78 of ACS' Counterclaim and your answers to subparts a. and b. of this Interrogatory.

**ANSWER:     See response to Interrogatory Number 8.**


10.     With regard to your contention contained in Paragraph 84 of ACS' Counterclaim that "ACS bid on the Project on a Time and Materials format," please provide the following:

      a.    All facts which support or refute your contention in Paragraph 84 of ACS' Counterclaim;

      b.    Identify each person having any knowledge with respect to your contention in Paragraph 84 of ACS' Counterclaim and your answer to subpart a. of this Interrogatory; and

      c.    Identify and produce each document and oral communication that relates to or supports your contention in Paragraph 84 of ACS' Counterclaim and your answers to subparts a. and b. of this Interrogatory.

**ANSWER:**

**ACS states that numerous bid documents submitted by ACS are in the possession and control of CNX, or otherwise produced in conjunction with ACS's Rule 26(a)(1) disclosures. These documents speak for themselves. See Interrogatories number 5, 6, and 7 for more information related to this response.**

10

11. With regard to your contention in Paragraph 85 of ACS' Counterclaim that "CNX accepted ACS's bid on the Project based upon the T&M format," please provide the following:

    a.    All facts which support or refute your contention in Paragraph 85 of ACS' Counterclaim;

    b.    Identify each person having any knowledge with respect to your contention in Paragraph 85 of ACS' Counterclaim and your answer to subpart a. of this Interrogatory; and

    c.    Identify and produce each document and oral communication that relates to or supports your contention in Paragraph 85 of ACS' Counterclaim and your answers to subparts a. and b. of this Interrogatory.

**ANSWER:**

**The subject of this interrogatory is an undisputed fact in this litigation. Please see CNX's complaint at Paragraph 9. This response shall not be construed as an acceptance or incorporation of any alleged "Contract Price," contract documents, or other allegation in CNX's complaint but merely emphasizes that there is not a dispute in this litigation that the project was bid, billed, or completed on a T&M basis.**

12. With regard to your contention in Paragraph 87 of ACS' Counterclaim that "ACS completed the Project on a T&M basis," please provide the following:

    a.    All facts which support or refute your contention in Paragraph 87 of ACS' Counterclaim;

    b.    Identify each person having any knowledge with respect to your contention in Paragraph 87 of ACS' Counterclaim and your answer to subpart a. of this Interrogatory; and

    c.    Identify and produce each document and oral communication that relates to or supports your contention in Paragraph 87 of ACS' Counterclaim and your answers to subparts a. and b. of this Interrogatory.

ANSWER:

The subject of this interrogatory is an undisputed fact in this litigation. Please see CNX's complaint at Paragraph 9. This response shall not be construed as an acceptance or incorporation of any alleged "Contract Price," contract documents, or other allegation in CNX's complaint but merely emphasizes that there is not a dispute in this litigation that the project was bid, billed, or completed on a T&M basis.

13.     If ACS alleges that the Contract or the scope of work under the Contract was modified, please identify each event which resulted in the modification, the CNX representative you allege approved the medication [sic] of the Contract or the scope of work, and any document supporting that contention.

ANSWER: Objection. Applied Construction Solutions, Inc. objects to the extent that this request calls for opinions, mental impressions and work-product of counsel. While providing the following response, this party notes that discovery is ongoing and reserves the right to supplement, modify and elaborate on this response as is appropriate and necessary after what is learned during the discovery process.

Subject to and without waiver, ACS emphasizes the changes to the drawings and work performed on this project and states that such drawing changes speak for themselves. Work directives were provided by Kevin Dunn, Carissa Hansen, and other CNX employees, representatives, or agents. Further information related to this is contained in ACS's counterclaims and will otherwise be determined through the discovery process.

14.     Please identify each request for Change Order prepared and submitted by ACS

and for each request for Change Order, please state the following:

  a. The basis and/or reason for the request for Change Order; and

  b. Why the request for change order was submitted to CNX if the Contract was to be billed on a time and materials basis as alleged by ACS.

**ANSWER:** **ACS was directed by CNX to submit change order requests in order to receive payment on this project. ACS submitted nineteen (19) invoices to CNX as requests for payment, all of which contained invoice backup, and which are written instruments which speak for themselves. As an exemplar for CNX's direction, please see Carissa Hansen's June 25, 2019 email at 3:11PM requesting a change order, and subsequent emails where Ms. Hansen outlines that multiple change orders will be needed and in which the parties acknowledge that such changes orders are for CNX's "internal needs/schedule." ACS complied with CNX's request as a medium to get paid, not as any admission of a contractual obligation or other perceived admission.**

15.     Please identify any and all individuals that were involved in, prepared, assisted with or approved the Not In Contract Log prepared by ACS for the Project.

**ANSWER:** **Jim Glass, David Larkin, Frank Annese, James Putnam, and Jeff Comfort contributed to the Not in Contract Log. Such log was generated for Carissa Hansen and CNX's benefit.**

16.     For the Not In Contract Log prepared by ACS, please state the purpose, basis, reasoning and/or explanation for the preparation of the Not In Contract Log.

**ANSWER:** **The "Not In Contract Log" presents work performed on this project that was not within the original scope of work based on project design or agreement between**

13

the parties. This is an exemplar to provide CNX with a resource to see what work ACS views as not covered by the contract and thus not covered by any alleged cap. This document does not admit or accept the existence of any cap but is a method used by ACS in response to CNX's numerous and inconsistent contentions regarding the terms and scope of the contract. Please also see Jim Glass' January 29, 2019 email to Carissa Hansen regarding such change and extra work reporting system. See also response to Interrogatory Number 14.

James Putnam and Kevin Dunn would meet on the project site to discuss what was in scope or out of scope. Kevin Dunn discuss, question, and approve work determined to be out of scope or not in contract. The "Not In Contract Log" presents such work to track changes. This was necessary due to on-site directives issued by CNX and because the project was not adequately designed for construction.

17.    Please identify each and every employee of ACS that prepared, assisted with or approved any request for Change Order submitted by ACS to CNX for the Project.

**ANSWER: Jim Glass, David Larkin, Frank Annese, Dan Jungo, Emilio Chacon, Zoriel Contreras, and James Putnam. James Putnam was (involved with Change Order #1 but not Change Order #2).**

18.    With respect to all witnesses whom ACS will or may call as experts to give opinion testimony in the trial of this matter, state the following:

    a.    Their name and address and the name and address of his/her employer or the organization with which he/she is associated in any professional capacity;

14

b. The field in which he/she is to be offered as an expert and a summary of his/her qualifications within the field in which he/she is expected to testify;

c. The substance of the facts to which he/she is expected to testify;

d. The substance of the opinions to which he/she is expected to testify and a summary of the grounds for each opinion;

e. The date and addresses of all reports (whether in draft or final form) rendered by such expert;

f. The date on which each expert was retained; and

g. A detailed list of each and every document which has been furnished to each expert.

**ANSWER: Applied Construction Solutions, Inc. has not made a final decision on the use of experts it will designate and/or may call at trial in this case. This party will supplement and provide appropriate expert information as required by the Federal Rules of Civil Procedure, Local Rules of the Western District, and Trial Court Orders in this matter regarding making its Expert Disclosure in this case.**

19. Identify by name, home address and business address each person who has been retained or specifically employed by ACS in anticipation of litigation or preparation for trial as an expert even though such person is not expected to be called as a witness at trial and state the subject matter as to which each expert has been retained or specifically employed by ACS.

**ANSWER: Objection. This Interrogatory does not seek information allowed by the Federal Rules of Civil Procedure. Moreover, it seeks to obtain information considered attorney work product and/or the opinions of counsel. See response to Interrogatory Number 18.**

## REQUEST FOR PRODUCTION OF DOCUMENTS

1.      Produce any and all documents relating, referring and/or supporting your

Answers to Interrogatories.

**RESPONSE: Applied Construction Solutions, Inc. objects to this Request in that it is**
**overly broad and unduly burdensome. In addition, it is vague and ambiguous with**
**reference to "any and all documents relating, referring and/or supporting." Moreover,**
**this Request as phrased would potentially encompass seeking documents protected by**
**attorney-client communications and attorney work product and/or mental impressions.**
**Subject to and without waiver, all documents relating, referring, and/or supporting**
**ACX's answers was provided by ACS subject to its Rule 26(a)(1) disclosures or otherwise**
**in response to the various requests for production contained herein.**


2.      Produce the contract and all exhibits entered into by ACS with CNX for this

Project.

**RESPONSE: See answer to Interrogatory Number 3.**


3.      All internal or external correspondence, emails, memorandum, or

communications of ACS personnel relating to the preparation, submission and revision of

ACS' bid submitted to CNX for the Project.

**RESPONSE: Please see the documents uploaded to the designated Box.com folder**
**denoted "Bid Documents," "Bid Emails & Docs with CNX," "George V. Hamilton Bid**
**Pricing Changes," "Potential Subcontractor Emails & Bid Docs," and "Subcontractor**

Correspondence and Agreements." Certain other information that may be responsive to this request would include bid information already in the possession or control of CNX.


4. All internal or external correspondence, emails, memorandum, or communications of ACS personnel relating to the Contract entered into with CNX for the Project.

**RESPONSE: Applied Construction Solutions, Inc. objects to this Request in that it is overly broad and unduly burdensome and that it seeks information related to opinions mental impressions and work product of counsel, particularly as it seeks "all communications" without any reasonable parameters including post suit "communications. ACS further objects as this Request asks ACS to take a position on the "Contract" through the seemingly defined term and ACS has outlined its position related to such "Contract" through its response to Interrogatory Number 3.**

**Subject to and without waiver, see response to Request for Production Number 3.**


5. All internal or external correspondence, emails, memorandum, or communications of ACS personnel relating to any request for Change Order submitted to CNX for the Project.

**RESPONSE: See response to Request for Production Number 3. See also such folders denoted "Change Orders" and "Change Order Docs & Correspondence."**


6. Please provide all correspondence, including emails by the following individuals that relate to the Project:

(a)    David Alvarez,

(b)    Jim Glass,

(c)    Jeff Comfort,

(d)    David Larkin,

(e)    Valerie Nyswaner,

(f)    Dan Jungo,

(g)    James Putnam, and

(h)    Emilio Chacon.

**RESPONSE: Please see a flash drive containing emails from these individuals.**

7.    Any and all documents relating to or constituting bid files of ACS for the Project.

**RESPONSE: Please see ACS's response to RFP #3.**

8.    Any and all documents in any relating to ACS' bid and revised bid submitted to CNX for the Project.

**RESPONSE: Please see ACS's response to RFP #3.**

9.      All bid documents pertaining to the planning, design or construction work on the Project, including any modifications, revisions or repairs thereto, including, but not limited to work sheets, take off sheets, bid tabulations, Project bid analysis, including man hour and cost projections, supplier and subcontractor quotes.

**RESPONSE:  Applied Construction Solutions, Inc. objects to this Request in that it is overly broad and unduly burdensome. Please see ACS's response to RFP #3. ACS states that further information was provided as part of ACS's bid and through the duration of the relationship between the parties and thus already in the possession and control of CNX.**

10.      All documents, memorandums, spreadsheets, summaries, correspondence, and/or materials relating, or referring to the audit performed by CNX.

**RESPONSE:  All information related to the audit was provided to CNX. A certain letter from CNX dated November 14, 2019 outlines what was requested and ACS went far and above through producing information related to the project. There is no related information that is discoverable and not already in CNX's possession.**

11.      All documents, memorandums, diagrams, summaries, correspondence, emails, communications and/or materials relating, referring to, or used in the preparation of the Not In Contract log prepared by ACS.

**RESPONSE:  See ACS's response to RFP #3 and RFP #5.**

12.     All documents, memorandums, diagrams, summaries, correspondence, emails, communications and/or materials relating, referring to, or used in the preparation of the Issue log prepared by ACS.

**RESPONSE: See ACS's response to RFP #3 and RFP #5.**


13.     All documents, memorandums, diagrams, summaries, correspondence and/or materials relating, referring to, or used in the preparation of any request for Change Order prepared by ACS.

**RESPONSE: See ACS's response to RFP #3 and RFP #5.**


14.     All documents, memorandums, diagrams, summaries, correspondence and/or materials relating, referring to, or used as a part of the Change Order review process.

**RESPONSE:  See ACS's response to RFP #3 and RFP #5.**


15.     All Extra Work Field Reports prepared by ACS for the Project.

**RESPONSE:  Please see the folder title "Extras" that was provided to CNX as part of ACS's Rule 26(a)(1) disclosures and ACS's response to RFP #11.**


16.     All documents, memorandums, diagrams, summaries, correspondence and/or materials relating, referring to, or used in the preparation of any Extra Work Field Reports prepared by ACS.

**RESPONSE:  Please see response to RFP #15.**

17.    All documents relating to all comparisons, summaries, tabulations or analysis comparing costs actually incurred on the Project with cost originally anticipated for the planning, design or construction of the work on the Project, including any modifications, revisions or repairs thereto.

**RESPONSE: Information responsive to this request was provided through ACS's Rule 26(a)(1) disclosures, or otherwise in CNX's possession or control. Certain other information related to this request is protected by attorney-client privilege.**

18.    Any and all documents relating to claims concerning the Project that identify or describe claims for which ACS believes it is entitled to receive monies, whether or not submitted to CNX during the Project.

**RESPONSE: Information responsive to this request was provided through ACS's Rule 26(a)(1) disclosures, or otherwise in CNX's possession or control. Certain other information related to this request is protected by attorney-client privilege.**

19.    Any and all documents relating to or constituting internal claim reviews relating to the Project prepared by or on behalf of ACS.

**RESPONSE: Such information was provided to CNX in conjunction with the audit process or otherwise through ACS's Rule 26(a)(1) disclosures. Certain other information related to this request is protected by attorney-client privilege.**

20.     Any and all documents relating or referring to work performed by ACS that ACS contends was outside the scope of the contract between ACS and CNX.

**RESPONSE: Applied Construction Solutions, Inc. objects to this Request in that it is overly broad and unduly burdensome.**

**This party also objects in that this is a "Contention Interrogatory" being presented early and/or at the beginning of the discovery process and the Plaintiff has not presented specific plausible grounds demonstrating that an early answer will materially advance the goals of the Federal Rules of Civil Procedure and the question is not well tailored to clarify or narrow the scope of discovery, but rather will likely add unnecessary confusion to the issues. As further evidence that this is not narrowly tailored or to deal with a specific contentious issue in the matter, this party notes the multiple other "contentious Interrogatories" advanced in the Plaintiffs set of Interrogatories. Subject to and without waiver, such information may be found in the not in contract log, provided pursuant to the audit, or otherwise through ACS's Rule 26(a)(1) disclosures.**

21.     Any and all documents that support ACS' contention that the contract was to be billed on a time and materials basis.

**RESPONSE: Applied Construction Solutions, Inc. objects to this Request in that it is overly broad and unduly burdensome. Moreover, this Request as phrased would potentially encompass seeking documents protected by attorney-client communications and attorney work product.**

**This party also objects in that this is a "Contention Interrogatory" being presented early and/or at the beginning of the discovery process and the Plaintiff has not**

presented specific plausible grounds demonstrating that an early answer will materially advance the goals of the Federal Rules of Civil Procedure and the question is not well tailored to clarify or narrow the scope of discovery, but rather will likely add unnecessary confusion to the issues. As further evidence that this is not narrowly tailored or to deal with a specific contentious issue in the matter, this party notes the multiple other "contentious Interrogatories" advanced in the Plaintiffs set of Interrogatories.

Further, the subject of this request is an undisputed fact in this litigation. Please see CNX's complaint at Paragraph 9. This response shall not be construed as an acceptance or incorporation of any alleged "Contract Price," contract documents, or other allegation in CNX's Complaint but merely emphasizes that there is not a dispute in this litigation that the project was bid, billed, or completed on a T&M basis.

22. Any and all documents relating or referring to any modification of the Contract between ACS and CNX.

RESPONSE: Applied Construction Solutions, Inc. objects to this Request in that it is overly broad and unduly burdensome as it does not simply seek documents "modifying" the contract but anything "relating" or "referencing" it. Thus, this Request as phrased would potentially encompass seeking documents protected by attorney-client communications and attorney work product. The parties conduct during the project modified the project along with field directives by CNX. The modified or later produced construction drawings reflect the contractual change as evidence of scope of work changes. The information responsive to this RFP was identified through other RFPs or is already in CNX's possession.

23. Any and all documents relating to or constituting job cost reports including any supporting documentation prepared by or on behalf of ACS in connection with the Project.

**RESPONSE: Such information was provided as invoice backup and also through the audit process. All such responsive information is in the possession or control of CNX, or is protected by attorney-client privilege.**

24. Any and all documents relating to or constituting any and all notes and/or field reports or field tickets prepared by or on behalf of ACS in connection with the Project.

**RESPONSE: Such information was provided as invoice backup and also through the audit process. All such responsive information is in the possession or control of CNX, or is protected by attorney-client privilege.**

25. Any and all documents or communications relating to the original proposed and/or actual planning and scheduling of the work of ACS for the Project, including any modifications, revisions or repairs to the Project including but not limited to all work schedules, Project schedules, bar charts, progress projections or look ahead schedules and all revisions, amendments, supplements or updates (whether used or not) thereto including but not limited to hard copies, magnetic tape, computer disks or any other form or medium.

**RESPONSE: Such information was provided as invoice backup and also through the audit process. All such responsive information is in the possession or control of CNX, or is protected by attorney-client privilege.**

26.     Any and all documents relating to any alleged problems with, errors, deficiencies, incompleteness, revisions or modifications to the design of the Project or the plans and specifications for the Project, including any revisions, modifications and repairs thereto.

**RESPONSE: Applied Construction Solutions, Inc. objects to this Request in that it is overly broad and unduly burdensome.  Moreover, this Request as phrased would potentially encompass seeking documents protected by attorney-client communications and attorney work product.**

**This party also objects in that this is a "Contention Interrogatory" being presented early and/or at the beginning of the discovery process and the Plaintiff has not presented specific plausible grounds demonstrating that an early answer will materially advance the goals of the Federal Rules of Civil Procedure and the question is not well tailored to clarify or narrow the scope of discovery, but rather will likely add unnecessary confusion to the issues.  As further evidence that this is not narrowly tailored or to deal with a specific contentious issue in the matter, this party notes the multiple other "contentious Interrogatories" advanced in the Plaintiffs set of Interrogatories.**

**Any such responsive information was provided as invoice backup and also through the audit process and subsequent correspondence with CNX directly. All such responsive information is in the possession or control of CNX.**

27.     Any and all documents relating to or constituting daily, weekly or monthly progress reports or similar reports purporting to memorialize the progress of the planning, design or construction work on the Project.

**RESPONSE: Any such responsive information was provided as invoice backup and also through the audit process and subsequent correspondence with CNX directly. All such responsive information is in the possession or control of CNX.**

28.     Any and all documents relating to or constituting job diaries, meeting minutes or minutes of meeting relating to the Project.

**RESPONSE: Some information related to this request might be protected by attorney-client privilege. No responsive information is known to exist but will be supplemented if discovered.**

29.     All meeting minutes, including minutes of job conference meetings, pre-bid meetings, pre-construction meetings, or other meetings whatsoever pertaining to the Project.

**RESPONSE: Please see ACS's response to RFP #3. Please also note that CNX was present at or conducted certain pre-bid meetings and thus such information would already be in CNX's possession or control.**

30.     Any and all documents relating to or constituting notes of any phone conferences pertaining in any manner to the Project.

**RESPONSE: Please note that ACS states that certain emails or correspondence produced to CNX might reference certain phone calls or conferences. However, ACS states upon information and belief that no other such information exists after conducting a reasonable search.**

31. Any and all documents relating to or constituting daily logs, job diaries, foreman reports, or other records kept to document the day-to-day construction activities of ACS on the Project.

**RESPONSE: Any such responsive information was provided as invoice backup and also through the audit process and subsequent correspondence with CNX directly. All such responsive information is in the possession or control of CNX.**

32. Any and all documents relating to or constituting contracts entered into by ACS with any subcontractors and/or material suppliers and/or consultants for the Project.

**RESPONSE: Please see Request for Production #3.**

33. Any and all documents relating to or constituting documentation provided by ACS to any potential bidder for work or consultation to be performed on the Project.

**RESPONSE: Please see Request for Production #3.**

34. Any and all documents relating to or constituting communications regarding any quotes or bids from any subcontractor or material supplier whether such entity did work or supplied materials on the Project.

**RESPONSE: Please see Request for Production #3 and #5.**

35. Any and all documents relating to or constituting subcontracts, purchase orders, quotes, or change orders from any subcontractor or material supplier for work on the Project.

**RESPONSE: Please see Request for Production #3 and #5.**

36.     Any and all documents relating to or constituting payment applications submitted by ACS to CNX for the Project.

**RESPONSE: CNX would already be in the possession or control of information responsive to this request, by the very nature of the document this request seeks.**

37.     Any and all documents, including internal correspondence, emails and communications, regarding, relating or referring to invoices from ACS to CNX for the Project.

**RESPONSE: Applied Construction Solutions, Inc. objects to this Request in that it is overly broad and unduly burdensome and that it seeks information related to opinions mental impressions and work product of counsel. Information discoverable at this time is otherwise provided herein as responses to other discovery requests. See Request for Production Number 6.**

38.     Any and all documents, including internal correspondence, emails and communications, regarding, relating or referring to any payments from CNX to ACS for the Project.

**RESPONSE: Applied Construction Solutions, Inc. objects to this Request in that it is overly broad and unduly burdensome.  Such other responses may be protected by attorney-client privilege. Subject to and without waiver, please see the responses to RFP #3, 5, and 6.**

39.    Any and all documents relating to or constituting daily time sheets and foreman's daily reports for the Project.

**RESPONSE: Applied Construction Solutions, Inc. objects to this Request in that it is overly broad and unduly burdensome and that it seeks information related to opinions mental impressions and work product of counsel. In addition, it is vague and ambiguous with reference to "any and all documents relating, referring and/or supporting." Moreover, this Request as phrased would potentially encompass seeking documents protected by attorney-client communications and attorney work product. ACS further objects as this information is not directed towards performing discovery on contractual issues – as the parties agreed to this limited discovery window on such issues. ACS reserves the right to supplement this response if such information becomes related through the discovery process.**

40.    Any and all documents relating to or constituting project manager's, superintendent's, and foreman's daily diaries and/or notebooks for the Project.

**RESPONSE: Applied Construction Solutions, Inc. objects to this Request in that it is overly broad and unduly burdensome and that it seeks information related to opinions mental impressions and work product of counsel. In addition, it is vague and ambiguous with reference to "any and all documents relating, referring and/or supporting." Moreover, this Request as phrased would potentially encompass seeking documents protected by attorney-client communications and attorney work product. Please see ACS's response to RFP #39.**

41.	Any and all documents relating to or constituting payroll records for the Project.

**RESPONSE: Applied Construction Solutions, Inc. objects to this Request in that it is overly broad and unduly burdensome and that it seeks information related to opinions mental impressions and work product of counsel. In addition, it is vague and ambiguous with reference to "any and all documents relating, referring and/or supporting." Please see ACS's response to RFP #39.**

42.	Any and all documents relating to or constituting third party invoices and any canceled checks relating to the third party invoices for the Project.

**RESPONSE:  Please see ACS's response to RFP #39.**

43.	Any and all documents relating to or constituting correspondence between ACS and its subcontractors and material suppliers.

**RESPONSE:  Please see response to RFP #35 and other discovery responses herein.**

44.	Any and all documents relating to or constituting ACS' Project related meeting minutes.

**RESPONSE:  Please see response to RFP #28, 29, and 30.**

Dated: December 1, 2020	By:	_____

Christopher A. Brumley (WVSB #7697)
Evan S. Aldridge, Esq. (WVSB #13373)
FLAHERTY SENSABAUGH BONASSO PLLC
200 Capitol Street
P.O. Box 3843
Charleston, WV 25338
T: (304) 345-0200
F: (304) 345-0260

ealdridge@flahertylegal.com

and

Robert C. James, Esq. (WVSB #7651)
FLAHERTY SENSABAUGH BONASSO PLLC
1225 Market Street
P.O. Box 6545
Wheeling, WV 26003
T: (304) 230-6600
F: (304) 230-6610
rjames@flahertylegal.com
*Counsel for Applied Construction Solutions, Inc.*

# CERTIFICATE OF SERVICE

I, William D. Clifford, Esquire, hereby certify that a true and accurate copy of the foregoing ***Supplemental Appendix to Plaintiff's Motion for Partial Summary Judgment*** has been served this __26TH__ day of March, 2021, via electronic mail by the Court's CM/ECF System.

> Christopher A. Brumley, Esquire
> Evans S. Aldridge, Esquire
> Flaherty Sensabaugh Bonasso PLLC
> 200 Capital Street, P.O. Box 3843
> Charleston, WV 25338

> DICKIE, McCAMEY & CHILCOTE, P.C.

> By _/s/ William D. Clifford_____
>    William D. Clifford, Esquire
>    PA I.D. #34959
>    Gregory C. Michaels, Esquire
>    PA I.D. #205948

> Attorneys for Plaintiff
> CNX Midstream DEVCO I, LP

12188192.1